1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF HAWAII

3

4   YA-WEN HSIAO,                      )  CV 18-00502 JAO-KJM
                                       )
5            Plaintiff,                )  Honolulu, Hawaii
                                       )  June 7, 2019
6       vs.                            )  10:54 a.m.
                                       )
7   ALEXANDER ACOSTA, In his           )  [13] DEFENDANT'S MOTION TO
    capacity as the United States      )  DISMISS AND [23] PLAINTIFF'S
8   Secretary of Labor,                )  REQUEST FOR CENSURE AND
                                       )  ORDER TO SHOW CAUSE
9            Defendant.                )
    _____)

10

11                    TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE JILL A. OTAKE
                  UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15   For the Plaintiff:      YA-WEN HSIAO
                             1441 Hoolai Street
16                           Apartment 201
                             Honolulu, Hawaii 96814
17
     For the Defendant:      SAMUEL P. GO, ESQ.
18                           U.S. Department of Justice
                             450 5th Street, NW, Suite 2106
19                           Washington, D.C. 20001

20   ALSO PRESENT:           Bryan Feliciano

21

22   Official Court          ANN B. MATSUMOTO, RPR
     Reporter:               United States District Court
23                           300 Ala Moana Boulevard, C-338
                             Honolulu, Hawaii 96850
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

1  FRIDAY, JUNE 7, 2019                    10:54 O'CLOCK A.M.

2          COURTROOM MANAGER:  Civil Number 18-00502 JAO-KJM,

3  Ya-Wen Hsiao versus Alexander Acosta.

4          This case has been called for a hearing on

5  defendant's motion to dismiss and plaintiff's request for a

6  censure and order to show cause.

7          Please make your appearances for the record.

8          MS. HSIAO:  Good morning, Judge.  I'm Ya-Wen Hsiao.

9  I'm the plaintiff.

10         THE COURT:  Good morning.

11         MR. GO:  Good morning, Your Honor.  Samuel Go on

12  behalf of the defendant.

13         THE COURT:  Good morning.

14         And, sir, you are seated next to Ms. Hsiao.  If you

15  could identify yourself and tell me what role you are playing

16  today.

17         MR. FELICIANO:  Yes, Your Honor.  Bryan Feliciano,

18  I'm husband to the plaintiff, and I'm here to just -- because

19  Ya-Wen's language, second language is English.  So there might

20  be some terms that she might need help with, and I'm just here

21  to support her with that and try to explain things for her if

22  she has a hard time explaining.

23         THE COURT:  Okay.  Let me start off by asking some

24  questions with regard to language capability of both of you,

25  okay?  Because I'm guessing, Mr. Feliciano, that you're not a

1    court-certified interpreter; is that correct?

2              MR. FELICIANO:  No, I'm not.

3              THE COURT:  Okay.  Why don't you take a seat for a

4    moment.  And then let me just ask Ms. Hsiao some questions, and

5    then I'll ask you some questions.

6              MR. FELICIANO:  Yeah.

7              THE COURT:  Okay?

8              MR. FELICIANO:  Thank you, Your Honor.

9              THE COURT:  Thank you.

10             So, Ms. Hsiao, if you could tell me what your

11   original native language is.

12             MS. HSIAO:  My original native language is Mandarin.

13             THE COURT:  And when did you start studying English?

14             MS. HSIAO:  I started studying English, was age 16,

15   15 years old, back in Taiwan.

16             THE COURT:  And what kind of work do you do now?

17             MS. HSIAO:  I'm IT specialist for University of

18   Hawaii at the School of Medicine.

19             THE COURT:  Do you use English daily --

20             MS. HSIAO:  Yes.

21             THE COURT:  -- at work?  And you speak English at

22   home, obviously?

23             MS. HSIAO:  Yeah.

24             MR. FELICIANO:  (Nods.)

25             THE COURT:  And I assume you had to speak English to

1   go through the application process to work at the School of

2   Medicine, correct?

3           MS. HSIAO:  Yes, I did have to.

4           THE COURT:  And where did you go to college?

5           MS. HSIAO:  College, back in home in Taiwan.

6           THE COURT:  Okay.  And I apologize.  I don't think I

7   asked this question.  When did you start living in an

8   English -- primarily English-speaking country?

9           MS. HSIAO:  I came into the United States year 2003.

10          THE COURT:  2003.

11          MS. HSIAO:  I was a master student, for master

12  degree.

13          THE COURT:  And have you been here since then?

14          MS. HSIAO:  Yes, I've been here since then.

15          THE COURT:  Okay.  So for 13 years you've been

16  speaking English basically on a daily basis, both in a personal

17  and in a professional setting?

18          MS. HSIAO:  Yes.

19          THE COURT:  Okay.

20          MS. HSIAO:  But not in a law setting.

21          THE COURT:  Okay.  Understood, understood.

22          MS. HSIAO:  I'm sorry.

23          THE COURT:  Okay.  You may have a seat.

24          MS. HSIAO:  Thank you.

25          THE COURT:  Mr. Feliciano, if I could just ask you

1  some questions?

2          MR. FELICIANO:  Yes, ma'am.

3          THE COURT:  What training do you have as an

4  interpreter?

5          MR. FELICIANO:  I do not have any training as an

6  interpreter.

7          THE COURT:  Okay.  And are you a native English

8  speaker?

9          MR. FELICIANO:  Yes, ma'am.

10          THE COURT:  Okay.  Do you -- what's your familiarity

11  with Mandarin?

12          MR. FELICIANO:  It's my second language.

13          THE COURT:  Okay.  What does that -- tell me what

14  that means for you.

15          MR. FELICIANO:  My parents speak -- they speak

16  Chinese.  I studied Chinese since I was three years old, and

17  then I stopped using it after graduating from high school, and

18  then I started using it again after I met her.

19          THE COURT:  Okay.  And how -- when is the last time

20  you've served as an interpreter in any capacity?

21          MR. FELICIANO:  Never.

22          THE COURT:  Have you ever served as an interpreter

23  for your wife?

24          MR. FELICIANO:  In a casual setting, yes.

25          THE COURT:  Okay.  And it's fair to say, though,

1  right, that you do have a vested interest in the outcome of

2  this case because it's your wife's --

3          MR. FELICIANO:  Yes.

4          THE COURT:  -- case?

5          MR. FELICIANO:  And that's also the reason why I'm

6  here.  I mean, I helped her write the complaint.  These are her

7  words, both of our words, too.  So she agrees with it and

8  stuff.  So I just feel -- you know, I guess in the sense that

9  I'm here, I'm just here to support her.  If she cannot explain

10  her position properly in more of a legalese sense, then I'd be

11  able to help her out.

12          THE COURT:  Okay.

13          MR. FELICIANO:  And --

14          THE COURT:  All right.  So you can have a seat, and

15  I'll explain how we're going to handle this.

16          MR. FELICIANO:  Okay.

17          THE COURT:  And then I will give Mr. Go -- is it Go

18  or Yo?

19          MR. GO:  Yes, Go.

20          THE COURT:  -- Mr. Go an opportunity to offer his

21  thoughts on this topic.  So you may have a seat.

22          So Mr. Feliciano, we have a rule with regard to pro

23  se parties who represent themselves, that they cannot rely on

24  other non-lawyers to speak on their behalf because that's

25  basically the practice of law.

1          I assume you're not an attorney, correct?

2          MR. FELICIANO:  I'm not.

3          THE COURT:  Okay.  So I'm not going to let you speak

4    on your wife's behalf, and I'm also not going to allow you to

5    interpret for her when she's speaking to the Court.

6          Now, when Mr. Go is speaking, if while he and I are

7    discussing things related to the law, she doesn't understand

8    something, I will allow her to turn to you, and you can explain

9    it to her.  But when she is arguing on her behalf, I'm not

10   going to allow you to either interpret for her or allow you to

11   speak on her behalf.

12         Now, if it's clear to me that she and I are having a

13   communication problem or a language difficulty, I will try to

14   make it easier for her.  And if it reaches a point where that's

15   not working out, then we will recess the hearing, and we will

16   get a court-certified interpreter at that point.  Okay?

17         MR. FELICIANO:  (Nods.)

18         THE COURT:  Mr. Go, what do you think of that plan?

19         MR. GO:  I agree with the Court's position.  That's

20   fine.

21         THE COURT:  Okay.  And, Ms. Hsiao, are you

22   comfortable with that?

23         MS. HSIAO:  I'll try my best, yes.

24         THE COURT:  Okay.  Do you have any objection to that?

25         MS. HSIAO:  No.  We actually emailed the court

1   manager earlier this week regarding this topic, but all we got

2   is that we may bring interpreter, but there is no details

3   regards to --

4               THE COURT:  Right.

5               MS. HSIAO:  -- what's a criteria and what's needed to

6   be able to bring --

7               THE COURT:  Right.  And I directed her to do that.

8   So that's -- that's my direction to her.  So I suppose I could

9   have been clearer what I meant by an interpreter.  I just made

10  an assumption that you understood that your husband couldn't

11  interpret for you.  But that's -- that's my fault as well.

12              So we're going to try to accommodate this as best we

13  can today.  So again, if it reaches a point where the

14  communication isn't working, we'll deal with that.

15              Based on my interactions with you right now, I get a

16  pretty good sense that you can understand everything that's

17  been said so far; is that correct?

18              MS. HSIAO:  Yes, that's correct.

19              THE COURT:  Okay.  And I think the record's been made

20  clear that you've been in the United States for 13 years, you

21  have a job in a -- in the IT industry, which -- where you use

22  English every day, you use English at home every day.  And

23  while there may be certain legal terms that you're not familiar

24  with, honestly, you probably have as good English capabilities,

25  if not better English capabilities than a lot of pro se

1    defendants we see and hear, who might also not know some of the
2    legal terms.  Okay?
3              So I think with that, we'll proceed today.  Okay?
4              Anything else, Mr. Go?
5              MR. GO:  Nothing else, Your Honor.
6              THE COURT:  All right.  So we are here today on the
7    government's motion to dismiss.  I have read all of the
8    relevant pleadings with regard to that.  And I have obviously
9    read the operative complaint as well.
10             With that, let's hear first from Mr. Go, as this is
11   the government's motion.
12             MR. GO:  Thank you, Your Honor.  May I approach the
13   podium?
14             THE COURT:  Yes.  Please approach the podium.
15             MR. GO:  Good morning, Your Honor.
16             May it please the Court, my name is Samuel Go, and I
17   represent the defendant in this matter.
18             Your Honor, this case challenges the Department of
19   Labor's denial of the prospective employer's application for
20   permanent labor certification, which I'll refer to as the PERM
21   application.
22             THE COURT:  And I'm sorry, Mr. Go, I'll ask you to
23   slow down a little bit.
24             MR. GO:  Sure.
25             THE COURT:  I can tell that you're already ramping up

1  a bit, and it would be better for our court reporter and

2  probably for Ms. Hsiao as well.

3           MR. GO:  Sure.  Sure.

4           Your Honor, this denial of the PERM application was

5  based on two grounds:  One, that the prospective employer

6  failed to provide adequate documentation of the required steps

7  to recruit U.S. workers, and, two, that the prospective

8  employer provided documentation that offered employment terms

9  that were less favorable to a U.S. worker than a foreign

10 worker.

11          So because of those deficiencies, the Department of

12 Labor determined that the prospective employer failed to meet

13 the requirements of 8 U.S.C. 1182(a)(5).  And I believe the

14 language of that statute is particularly important.

15          The language of that statute says that:  Any alien is

16 inadmissible unless the Secretary of Labor has determined and

17 certified to the Secretary of State and the Attorney General

18 that, one, there are not sufficient U.S. workers who are able,

19 willing, qualified, and available basically to fill that

20 position that the employer -- that the prospective employer

21 filed the PERM application for, and two, that the employment of

22 such alien will not adversely affect the wages and working

23 conditions of the U.S. -- workers in the U.S. similarly

24 employed.  So --

25          THE COURT:  Let me kind of cut to the chase, counsel,

1  with regard to the cases.  Because I think everybody's in

2  agreement that there is no concrete Ninth Circuit case that

3  addresses this directly, correct?

4      MR. GO:  That's correct, Your Honor.

5      THE COURT:  So I looked at Footnote 1 on page 12 of

6  your memorandum, which distinguishes certain cases that would

7  seem to favor the plaintiff.  And those cases you distinguish

8  on the grounds that in those cases the applicants were at

9  Step 2 of the visa process as opposed to Step 1, which is where

10  you say Ms. Hsiao is now, correct?

11      MR. GO:  Yes, Your Honor.

12      THE COURT:  Do any of those cases specifically parse

13  out, or divide out, the difference between somebody who is at

14  Step 1 versus somebody who is at Step 2 versus somebody who is

15  at Step 3?

16      MR. GO:  Your Honor, I don't believe those cases

17  discuss Step 1 of the process because that is not an issue in

18  those cases.

19      THE COURT:  Right.  But I guess what I'm saying is

20  none of those cases say specifically it's because we are at

21  Step 2 of this process that we find in favor of plaintiff,

22  correct?

23      MR. GO:  That's correct, Your Honor.

24      THE COURT:  Okay.  And I'm not sure I'm getting this

25  acronym correct.  But is the PERM application specific to this

1  plaintiff?  In other words, does the employer file the

2  application identifying her as the worker, or is it a more

3  general application where the employer says:  We are in need of

4  workers that fit this particular description?

5        MR. GO:  Your Honor, the PERM application does

6  identify Ms. Hsiao as the intended beneficiary.  However, the

7  labor certification statute talks about any alien.  And the

8  reason why they now designate a sole -- you know, identify a

9  beneficiary is that before there were some instances where an

10  employer would substitute another beneficiary for -- you know,

11  for the first one they initially applied the application for.

12        THE COURT:  So why doesn't denial of it then create a

13  situation where the plaintiff loses a significant opportunity

14  to receive an immigrant visa?

15        MR. GO:  Your Honor, I think that what's here -- as I

16  referred to in our pleadings, there's the broad question of

17  whether the employer met these two requirements under the labor

18  certification statute, and then there's the specific question

19  of stage -- the Step 2 of whether this particular beneficiary

20  qualifies for this visa.

21        And what I did want to highlight is the difference in

22  the two statutes.  So with 1182, the labor certification

23  statute, it says any alien is -- shall be inadmissible.  So

24  that is the default.  That is the default status, unless the

25  Secretary of Labor determines and certifies that they meet the

1   requirements for labor certification.

2          Now, in contrast, 8 U.S.C. 1153, which talks about

3   visas, says a visa shall be available if the applicant and the

4   petitioner meet these certain requirements.

5          So for that -- for the visa statute, the default is a

6   visa is available.  And if you've gotten to Step 2, you have a

7   right to that visa as long as you meet those requirements;

8   where with the labor certification statute, the default is the

9   alien is inadmissible unless, if and only if, the Secretary of

10  Labor certifies on the basis of the two requirements of 1182.

11         THE COURT:  Okay.  Regarding the question, though,

12  why doesn't she lose a significant opportunity if 1182 -- I

13  mean, I understand --

14         MR. GO:  Yeah.

15         THE COURT:  -- what you're saying about 1182.  But

16  why does she not lose a significant opportunity under either

17  1182 or 1153, understanding that in order to get to the

18  benefits of 1153 she has to get through 1182?

19         MR. GO:  I think what -- what it comes down to is the

20  direct relation.  And with these other cases, the question of

21  the visa was the direct issue, whether the -- you know, this

22  beneficiary would or would not have the visa.

23         Now, with the first step, we're talking about

24  something that's kind of a very preliminary step to, you know,

25  possibly filing a visa petition.  So different things could

1    happen during that time.

2    Even though they did a labor certification, we don't

3    know necessarily if they're going to file the (indiscernible)

4    for a petition.  Things may have changed.

5    I guess what I could kind of analogize it to is, you

6    know, say an employer files for a business license and gets

7    denied.  That would affect the -- and perhaps, you know,

8    because they were denied that business license they couldn't

9    hire the beneficiary.  So that beneficiary would be directly

10   affected and had that loss of opportunity, but at the same time

11   this is a preliminary step where:  Is the prospective employee

12   the right person to be suing perhaps the licensing agency for a

13   failure to issue any business license?

14   So I think it's kind of along the lines of this is

15   a -- this first step is -- is a very preliminary step between

16   the employer and the Department of Labor.

17   THE COURT:  The business license analogy is at least

18   distinguishable in the sense, though, right, that the business

19   license doesn't identify a particular person that they're going

20   to employ.

21   MR. GO:  Sure.

22   THE COURT:  Right?

23   MR. GO:  Sure.

24   THE COURT:  Okay.  Regarding the injury in fact, you

25   argue that the plaintiff alleges no concrete facts giving rise

1  to a reasonable inference that her alleged injuries were

2  affected by the government's conduct or the department's

3  conduct.

4          MR. GO:  Yes.

5          THE COURT:  What cases, I guess, or what sort of

6  facts do you think would satisfy that sort of requirement?

7          MR. GO:  Your Honor, I think that, you know, she

8  noted -- plaintiff did note some injuries in her opposition

9  that was not in her complaint.

10          THE COURT:  Right.

11          MR. GO:  I guess, you know, basically the lack of,

12  you know, employment with that prospective employer.  But

13  what's alleged in the complaint are the injuries that we had

14  listed, you know, the -- the lack of being able to pursue

15  higher employment opportunities with companies other than the

16  employer and other injuries that occurred to non-parties.

17          So with our -- it's our position that, you know, the

18  injury in fact has not been adequately alleged because, you

19  know, there hasn't been sufficient pleadings to address the

20  injury.

21          Now, if she -- I guess if she had raised some of the

22  injuries in her opposition, in her complaint, maybe we would

23  have a different story.  But the fact of the matter is -- and

24  we point out in the reply that some of those injuries that she

25  noted in her opposition were not in the complaint.

1          THE COURT:  Right.  And kind of to that question,

2     why -- if I were to grant the motion to dismiss, why should I

3     grant it without leave to amend?

4          MR. GO:  Your Honor, you know, I'm not sure if we've

5     actually taken that position.

6          THE COURT:  Okay.

7          MR. GO:  The position that we've taken is --

8     primarily is that it's the employer that's the proper party

9     here.  And I think the lack of case law in this area is because

10    most oftentimes the employer is the one that, you know,

11    challenges these steps.  And during those times, we don't file

12    motions to dismiss because in that case, you know, there's a

13    proper party involved in the complaint.

14         THE COURT:  Is it your position that -- and I don't

15    know if it is or not.  Is it your position that she could not

16    possibly amend the complaint in a fashion where she would have

17    standing?

18         MR. GO:  Currently as constructed, where she is the

19    sole party, I don't believe that she could amend the complaint

20    in a form that would --

21         THE COURT:  Okay.

22         MR. GO:  -- that requires --

23         THE COURT:  Kind of returning back to the --

24    I'm sorry.

25         MR. GO:  I'm sorry.  I just wanted to finish.  We

1  don't believe that plaintiff could amend the complaint where

2  she's the sole party where the court would have jurisdiction.

3          THE COURT:  Okay.  Is there a case law on whether

4  past injuries are redressable in terms of, you know, what sort

5  of injuries would be redressable?

6          So one of the things that I'm trying to determine

7  here is, so, for example, she lists -- I think it's in

8  paragraph 116, if I'm remembering correctly.  But she lists the

9  injuries to herself as being stress-induced problems with her

10  pregnancy, the likely early birth of her child due to the

11  stress.  So are those injuries that are even possibly

12  redressable in the sense that they've occurred, the child has

13  been born, she's no longer pregnant with that child?

14          MR. GO:  Your Honor, I don't know, because those

15  facts aren't before us.  I think there could be a situation

16  where if a person was continually stressed and --

17          THE COURT:  So the facts that are before us, at least

18  that are alleged in the complaint, right, are that because of

19  the stress that resulted from the ongoing issues with the

20  Department of Labor, because of that stress, at least as

21  alleged -- I think it's in paragraph 116, if I remember

22  correctly -- and I will pull out the complaint to make sure

23  that I'm getting that right.

24          Yes, paragraph 116 she alleges that it caused undue

25  stress to her and risked the life of her then unborn child.

1    The child's now been born.

2              MR. GO:  Yeah.  Yes.

3              THE COURT:  So is that an injury that is redressable
4    or not?

5              MR. GO:  For that particular instance, I don't
6    believe so because, as you said, the child has been born.

7              THE COURT:  Are any of these injuries redressable,
8    injuries that are listed in paragraph 116?

9              MR. GO:  Your Honor, I don't believe so, but that's
10   also because I don't have -- we don't have sufficient facts in
11   this complaint to know.

12             So there are sufficient facts where we can point out
13   while, okay, the distress was caused by this particular facet
14   of defendant's conduct and there should have been a reasonable
15   inference or a likelihood that this conduct would result in the
16   stress complained about by the -- by the plaintiff.

17             THE COURT:  Okay.  All right.  And turning finally to
18   the FOIA --

19             MR. GO:  Sure.

20             THE COURT:  -- claim, are you stating that she also
21   doesn't have standing to raise FOIA, or are you simply saying
22   the FOIA claim's moot?

23             MR. GO:  We're saying the FOIA claim is moot.

24             THE COURT:  Okay.  Thank you.

25             MR. GO:  Thank you, Your Honor.

1          THE COURT:  Ms. Hsiao --

2          MS. HSIAO:  Yes.

3          THE COURT:  -- if you could come to the podium,

4    please.  Thank you.

5          Ms. Hsiao, before we begin -- and I will definitely

6    allow you an opportunity to say whatever it is you want to say

7    to me -- what is your position on the FOIA claim?

8          I understand the government is saying that they have

9    provided you with everything at this point.  What is your

10   position on that?

11         MS. HSIAO:  Your Honor, actually, for the FOIA

12   questions, we never asked for any prayers in the complaint.

13         THE COURT:  I did notice that.

14         MS. HSIAO:  And it was actually brought by the

15   defendant on their reply in regards to this issue.  All we want

16   to say is the documents were then released on time for us, and

17   they start making up different dates on their website,

18   pretending that they actually already send the documents.  But

19   the truth is we didn't receive them.

20         THE COURT:  Have you received them now, though?

21         MS. HSIAO:  I have received them and the last

22   document was released.  It was on the day before defendant's

23   due date to file their answer.

24         THE COURT:  Okay.  So that to me, and you tell me if

25   I'm wrong about this, that to me means that what you're saying

1   is you have everything now and so your FOIA claim is no longer

2   needed, correct?

3           MS. HSIAO:  You can say so.  But I will just want to

4   bring up the idea that the defendant didn't be honest to the

5   Court and to me as who is the person request the FOIA request.

6           All they need to do is actually just release the

7   document to us, but doesn't have to hide the dates or change

8   dates on the website.

9           THE COURT:  Okay.  But they have given you everything

10  now, correct?

11          MS. HSIAO:  Yes.

12          THE COURT:  Okay.  Thank you.

13          And so I'm going to ask you to speak slowly as well,

14  just as I did with Mr. Go.

15          MS. HSIAO:  Okay.

16          THE COURT:  Okay?  So go ahead, Ms. Hsiao, and tell

17  me what it is that you want me to know.

18          MS. HSIAO:  It's a lot to say.  But I will try to

19  minimize it.  I've been in the country for 13 years working as

20  an IT professions (sic) for the medical school.

21          As an H-1B holder, the only requirement back then for

22  me is to understanding how to perform my professional (sic) as

23  properly at my job as my duty.  I didn't realize I have to come

24  beyond this interesting journey, to go this far, to have to

25  fight one of the most powerful government in this world, to

1    fight for my status to be simply fairly educated for what I
2    actually asking for.
3         My employer has been super supportive for 13 years.
4    I don't know who else can find an employer to support you for
5    13 years, dragging on and on yearly and yearly for renewal,
6    cost a lot of money, as the price for H-1B renewal continue
7    goes up every year, without knowing if they can continue have
8    me for the next year to help them out.
9         I really appreciate the Judge read through the
10   complaint to understand how difficult it is to go through the
11   pregnancy with all of this.
12        As you ask Mr. Go that, if it's possible to redress
13   if anything can be done through this lawsuit for helping me and
14   my child, the fact the child was born ten weeks early as a
15   premature, the damage on him, it's going to be there forever.
16   He is a premie.  He has to go through a lot of different extra
17   medical help to be able to survive up to today.  On the same
18   time, I still going through this lawsuit fighting for what I'm
19   fighting for.  And we're simply asking a fair judgment.  And
20   that's all we're asking for, for all those 13 years.
21        THE COURT:  Okay.  Let me ask you a little bit about
22   your child.
23        So are you saying now that he continues to suffer
24   medical issues related to being born ten weeks early?
25        MS. HSIAO:  Well, ten weeks early is quite a delay.

1  Basically he was born at the seven months (indiscernible).  So
2  there's some development delay at the moment.
3            THE COURT:  Okay.
4            MS. HSIAO:  Particularly for the physical part.  So
5  he has to go through some therapies here and there.  Depends on
6  the situation.
7            THE COURT:  Okay.  Your complaint doesn't talk about
8  that, though, right?
9            MS. HSIAO:  No, because it's a very personal thing.
10            THE COURT:  Okay.
11            MS. HSIAO:  The complaint mainly is for what my
12  employer help to put in the PERM applications in order for me
13  to apply for the permanent residency to stay in the United
14  States.
15            THE COURT:  Okay.  So it seems to me that, you know,
16  one of the questions here is whether or not the injuries are
17  redressable, right?  And I think you understand what that term
18  means.
19            MS. HSIAO:  Mm-hmm.
20            THE COURT:  I see you nodding your head.  And -- but
21  the complaint doesn't allege, doesn't say that your son has
22  continuing problems, right?
23            MS. HSIAO:  (Nods.)
24            THE COURT:  So one of my options as a judge -- and
25  I'm not saying I'm going to do this, but I could do this -- is

1   I could dismiss the complaint with leave to amend, which means

2   that it would give you the opportunity to change the complaint

3   in some fashion.

4         At this point what all I'm doing is just looking at

5   the complaint and looking at the law.  I can't take into

6   account things that you say today.

7         MS. HSIAO:  Mm-hmm.

8         THE COURT:  Right?

9         MS. HSIAO:  I understand.

10        THE COURT:  And that aren't in the complaint, okay?

11        The -- one of the questions I have is did you have a

12   -- and I think you must have, just because you seem very

13   prepared.  But did you have the opportunity to read their reply

14   brief?

15        MS. HSIAO:  Yes, I did.

16        THE COURT:  Okay.  So did you see in it that one of

17   their arguments is that you're not within the zone of

18   interests --

19        MS. HSIAO:  (Nods.)

20        THE COURT:  -- as an American worker because you're

21   here on a non-immigrant visa?  Did you see that argument?

22        MS. HSIAO:  Yes, I did.

23        THE COURT:  Okay.  I wanted to give you the

24   opportunity to respond to that argument.

25        So how do you respond to that argument?

1          MS. HSIAO:  Thank you, Judge.

2          So in regards to I'm not part of the zone of

3    interests as a U.S. worker, it is correct I'm currently

4    entering United States holding H-1B non-immigrant working visa.

5    However, regular H-1B working visa is only valid for six years.

6    Anytime you enter the country with holding that particular

7    interim visa is because you have a pending immigrant petition

8    in the process.  And so even though I'm holding H-1B, it's

9    because my petition filed by the employer is currently still in

10   the process, and that's why I was granted to be able to hold

11   H-1B visa, renewable annually.

12         So to -- to the defendant's reply to say I'm not part

13   of the U.S. worker, that's actually really not the truths.

14         THE COURT:  How often has your H-1B visa been renewed

15   so far?  How many times?

16         MS. HSIAO:  This is on the 13th year.

17         THE COURT:  Okay.  Because it's annual, like you

18   said?

19         MS. HSIAO:  Yeah.

20         THE COURT:  And you've had the same employer that

21   whole time?

22         MS. HSIAO:  Yes, that's correct.

23         THE COURT:  Okay.

24         MS. HSIAO:  I did change job roughly about eight

25   years ago, but just moved to different position.

1          THE COURT:  Okay.  The one question I had for you

2   about Lexmark, which I know you attached the Lexmark opinion

3   to -- as something for me to read as an authority, if you look

4   at Lexmark at Footnote 3, it says, quote:  This case does not

5   present any issue of third-party standing.

6          And I'll give you a chance to get Lexmark from your

7   table there.

8          MR. FELICIANO:  (Hands document to plaintiff.)

9          MS. HSIAO:  Thank you, Your Honor.  And so I make

10  this one --

11         THE COURT:  Okay.

12         MS. HSIAO:  -- to explain regards to this third-party

13  issues.  Can you see?

14         THE COURT:  I can see it.

15         MS. HSIAO:  Yeah, so --

16         THE COURT:  And let me ask.  Has Mr. Go had an

17  opportunity to see that yet?

18         MS. HSIAO:  No.

19         THE COURT:  If you could show that to him before you

20  show it to me.

21         And, Mr. Go, if you want, you can come stand here --

22         MR. GO:  Okay.

23         THE COURT:  -- and watch it while she describes

24  what's happening.

25         MS. HSIAO:  So Aranas is one of the cases that Mr. Go

1    -- I'm sorry -- the defendant brought up in their reply and on

2    our motions.

3          So the defendant keeps saying I'm not -- I'm a third

4    party because I'm Aranas (indicates).  But the truth is in this

5    whole case, I'm not Aranas; I'm actually DeLeon, which is the

6    direct beneficiary.

7          There are three plaintiffs in this case.

8          THE COURT:  So I'm sorry.  I'm going to say what I

9    think you just said, in part to make sure that I got it right

10   and to make sure the court reporter got it right.

11         What you're saying is that you're not like the

12   petitioner in Aranas; you're rather like the petitioner in

13   DeLeon?

14         MS. HSIAO:  Yeah.

15         THE COURT:  Because you are a direct beneficiary is

16   what you're saying?

17         MS. HSIAO:  Yep.

18         THE COURT:  Okay.  You are not saying that Aranas was

19   decided wrongly.  You're just saying it's distinguishable, it's

20   very different from your situation, correct?

21         MS. HSIAO:  No.  Actually, let me rephrase that.

22         So in this case, because there are three

23   plaintiffs --

24         THE COURT:  I'm sorry.  In this case because what?

25         MS. HSIAO:  There are three different plaintiffs in

1    the Aranas case.

2              THE COURT:  Oh, okay.

3              MS. HSIAO:  Yeah.  These three are.

4              THE COURT:  I see what you're saying.  Okay.

5              MS. HSIAO:  And then so as Rodriquez, she's actually

6    a U.S. citizen.  She filed a petition for DeLeon, which is

7    their -- her wife.

8              THE COURT:  That's right.

9              MS. HSIAO:  Yeah.  And so DeLeon is actually the

10   direct beneficiary because they are married.

11             THE COURT:  Okay.

12             MS. HSIAO:  Then DeLeon filed petition for her son

13   (indicates) --

14             THE COURT:  Right.

15             MS. HSIAO:  -- who is also an undocumented immigrant.

16             THE COURT:  Right.

17             MS. HSIAO:  And then the court find Aranas doesn't

18   have the standing because she is not a direct beneficiary.

19             THE COURT:  Right.

20             MS. HSIAO:  And so what I'm trying to say here is

21   University of Hawaii is the petitioner, which is as a U.S.

22   citizen, and then I am the direct beneficiary for the PERM

23   application.

24             THE COURT:  Okay.

25             MS. HSIAO:  And there is no this part (indicates).

1          THE COURT:  I understand that.  Okay, I understand
2     that.  And I did read the Aranas opinion.
3          So what is clear to me, though, is that in Aranas it
4     was -- that case, and correct me if I'm wrong, had nothing to
5     do with the Department of Labor certification --
6          MS. HSIAO:  That's correct.
7          THE COURT:  -- correct?  Okay.  All right.
8          MS. HSIAO:  And that's also one thing that majority
9     of the cases defendant cited are against USCIS but not with
10    against Department of Labor.
11         THE COURT:  Yeah, and, I mean, I think one of the
12    things that's obvious to me is that there's no Ninth Circuit
13    case law on this exact scenario.  So we're kind of entering new
14    legal ground also.
15         Okay.  So, you know, one thing that I wanted to
16    return to was the Lexmark case.  So do you have the Lexmark
17    case in front of you?
18         MS. HSIAO:  Yes, I do.
19         THE COURT:  So do you have a chance to look at
20    Footnote 3 of Lexmark?
21         And let me know once you've had that chance.
22         MS. HSIAO:  Okay.  I found it.
23         THE COURT:  Okay.  So do you see how it says that --
24    that this case does not present any issue of third-party
25    standing?

1          MS. HSIAO:  (Nods.)

2          THE COURT:  Yes?  Okay, you're -- I have to say for

3     the record you're nodding your head, right?

4          MS. HSIAO:  Mm-hmm.

5          THE COURT:  Okay.  How do you respond to that then if

6     Lexmark itself says this case doesn't present an issue of

7     third-party standing?

8          MS. HSIAO:  I am not a third party.

9          THE COURT:  Okay.  So you're a direct beneficiary is

10    what you're saying?

11         MS. HSIAO:  (Nods.)

12         THE COURT:  So that any case that talks about a third

13    party's standing does not apply to you is what you're saying?

14         MS. HSIAO:  (Nods.)

15         THE COURT REPORTER:  For the record.

16         THE COURT:  I'm sorry.  If you could say yes or no.

17    The only reason why I'm asking is because the court reporter

18    can't write down that you're nodding your head.

19         MS. HSIAO:  May I ask you to clarify that a little

20    bit?

21         THE COURT:  Sure.  So what you're saying is that when

22    Lexmark says this opinion is taking no position or doesn't

23    apply to arguments related to third-party standing, it sounds

24    to me like what you're saying -- you can tell me if I'm wrong.

25    It's totally fine to do that.

1          But it sounds to me like what you're saying is that

2     you're not a third party to this; is that right?

3          MS. HSIAO:  That's correct.

4          THE COURT:  Okay.  All right.

5          You can go on and say anything else you want to say.

6     I've finished all my questions.

7          MS. HSIAO:  Okay.  (Inaudible.)

8          THE COURT REPORTER:  Speak into the microphone,

9     please.

10          MS. HSIAO:  I'm sorry.  I'm so sorry.

11          The reason I say I'm not third party is because of

12     multiple different emails requests I sent to Department of

13     Labor, particularly BALCA.  And also the last order from Chief

14     Judge Henry from BALCA is addressed to me.

15          THE COURT:  Okay.  So --

16          MS. HSIAO:  And I have the printout here as the

17     evidence.

18          THE COURT:  Okay.  So what you're saying is that

19     BALCA -- which is B-A-L-C-A?

20          MS. HSIAO:  That's correct.

21          THE COURT:  -- is -- you've had communication

22     regarding that, direct communication with the judge in the --

23          MS. HSIAO:  Regards to the case.

24          THE COURT:  In regarding the case?

25          MS. HSIAO:  Only request.

1         THE COURT:  Which would be evidence, you're saying,

2   that you are not a third party, right?

3         MS. HSIAO:  (Nods.)

4         THE COURT:  Sorry.  You have to say yes or no.

5         MS. HSIAO:  Yes.

6         THE COURT:  Okay.  Okay, I understand your argument.

7         MS. HSIAO:  Thank you.

8         THE COURT:  Okay.  Thank you.

9         Anything else?

10        MS. HSIAO:  No, I think that's all I have.

11        THE COURT:  Okay.  Thank you.  You may have a seat.

12        MS. HSIAO:  Thank you.

13        THE COURT:  Thank you.

14        So Mr. Go has another opportunity because he's the

15  moving party.  I will say for the record that I did not feel

16  like I had any problems understanding Ms. Hsiao.  I don't think

17  she had any problems understanding me.  Am I correct,

18  Ms. Hsiao?

19        MS. HSIAO:  Yes.

20        THE COURT:  Okay.  All right.  And that her husband

21  did not need to assist her while she was at the podium.

22        Okay.  All right.  Mr. Go?

23        MR. GO:  Thank you, Your Honor.

24        I don't have too much to add aside from, you know,

25  what we said in our pleadings and what I've said initially at

1    this hearing.

2            I think that, you know, as you said, there is no

3    direct case law on this issue in this circuit.

4            So I think the most important thing is to -- with

5    respect to this particular issue is to look at the relevant

6    statute.

7            So it's --

8            THE COURT:  I'm sorry.  To look at what?

9            MR. GO:  To look at the relevant statute, to look at

10   8 U.S.C. 1182(a)(5) and to -- I believe a reading of that

11   statute determines that the proper parties, or the zone of

12   interests, are the U.S. workers and the employer.

13           And I think that provides the guidance.  I have

14   nothing else to add for the Court unless the Court would like

15   to ask any more questions.

16           THE COURT:  I could conclude, right, that with regard

17   to standing that if she doesn't meet any of the requirements of

18   constitutional standing, I don't need to address some of the

19   other elements, right?

20           MR. GO:  That's correct, Your Honor.  And that

21   applies with the prudential standing for the zone interests as

22   well.  If the Court doesn't find prudential standing here, it

23   need not go into the other issues.

24           THE COURT:  All right.  Okay.  Thank you.

25           MR. GO:  Thank you, Your Honor.

1              THE COURT:  Ms. Hsiao, I don't usually do this.  But
2    because you're here pro se and you're very earnest, is there
3    anything else you want me to hear from you, or no?
4              MR. FELICIANO:  (Confers off the record.)
5              MS. HSIAO:  Yes, Your Honor.
6              THE COURT:  If you could come to the podium, please.
7              MS. HSIAO:  I thank you for the -- for the
8    opportunities for me to speak for myself.  After this hearing
9    we are planning to file a temporary injunction simply because I
10   have a time crunch right now, and my current visa only allow me
11   to work until November.
12             THE COURT:  You have a time crunch?  Is that what you
13   said?
14             MS. HSIAO:  Yeah.
15             THE COURT:  Okay.
16             MS. HSIAO:  So after November of this year, if my
17   working visa can't get renewed, I won't be able to stay in this
18   country and continue working.  So we're planning to file a
19   temporary injunction to request the Court to work with the
20   defendant to reopen the case so that they can show to the USCIS
21   that the case is still pending, that I will be able -- my
22   employer will be able to help me to file another year of
23   extension until the case has been decide or settled or however
24   the outcome is.
25             THE COURT:  Okay.  Thanks for the heads-up.  That's

1   good for us to know.

2        MS. HSIAO:  And can I say a little bit more in

3   regards to the case if that's okay with you?

4        THE COURT:  Sure.  I will let Mr. Go have the final

5   say, just because he's -- he bears the burden.  So whatever you

6   say, I'm going to give him an opportunity to respond if he

7   wants to.

8        MS. HSIAO:  Okay.

9        So regards to the zone of interests, I want to bring

10  up this clause here to present it to you.

11       It clearly says that the Attorney General will still

12  extend my working visa status if the -- if there is still a

13  permanent application continued and pending.

14       THE COURT:  Okay.  I'm sorry, what is it that you

15  want to bring to my attention?  Did you say a case or?

16       MS. HSIAO:  No, this is 1182 -- it's 1182(5)(A) one,

17  four.

18       THE COURT:  Okay.  We will take a look at that.

19       MS. HSIAO:  Thank you.

20       THE COURT:  Okay.

21       MS. HSIAO:  And then also on paragraph 41, the

22  defendant only mentioned that I said I request an update.  But

23  that's not the truth.  The entire paragraph on 41 of the

24  complaint, I'm not only asking for an update, I'm asking for

25  the update simply because I need my working status to continue

1    and renewed.  And that's the reason why I'm asking for the

2    update.  As part of injury if they don't provide updates to me

3    and my employer, I won't be able to continue to work.

4              THE COURT:  Okay.  Thank you.

5              MS. HSIAO:  Thank you so much.

6              THE COURT:  Okay.  Mr. Go, anything else?

7              MR. GO:  Your Honor, if I could address from -- I'll

8    come.

9              THE COURT:  Yeah, if you could come to the podium,

10   it's just easier for everybody.

11             MR. GO:  Sure.

12             THE COURT:  The acoustics in this room are very poor.

13   I practiced in this room and did not realize how bad it is to

14   hear things from the bench.  I always thought a lot of the

15   judges just had bad hearing, but, yeah, I can tell you that

16   that's not the case.  It's just from here the acoustics are

17   very bad.

18             MR. GO:  I understand.

19             I would just like to say that in the event that the

20   plaintiff files a temporary injunction, we would just like to

21   have adequate time to respond and to -- to -- for me to be

22   available to appear at the hearing.

23             THE COURT:  Right.  And I don't know mechanically how

24   this works yet.  But if a temporary injunction is filed,

25   hopefully whichever judge it's assigned to, because it won't

1   automatically be assigned to me, will notice that there's this

2   case.  And so it's -- in my opinion it's a related case.

3              MR. GO:  Sure.

4              THE COURT:  And that might make things more efficient

5   for everybody.  But we'll cross that bridge when we get there.

6   And I can't guarantee that another judge is going to seek

7   reassignment.

8              MR. GO:  I understand, Your Honor.

9              THE COURT:  Okay, but thank you.

10             MR. GO:  Thank you.

11             THE COURT:  All right.  Thank you, everyone, for your

12  participation.  As I said, you know, this is a new area of law,

13  relatively uncharted territory in the Ninth Circuit.  So I

14  appreciate the briefing.  I appreciate the argument.  We will

15  endeavor to issue an order in a timely fashion.

16             Thank you.  We are in recess.

17             (The proceedings concluded at 11:37 a.m., on June 7,

18  2019.)

19

20

21

22

23

24

25

1          COURT REPORTER'S CERTIFICATE

2          I, Ann B. Matsumoto, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. Sec. 753 the foregoing is a

5    complete, true, and correct transcript of the stenographically

6    recorded proceedings held in the above-entitled matter and that

7    the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9          DATED at Honolulu, Hawaii, August 9, 2019.

10

11

12
                    */s/ Ann B. Matsumoto*
13                  ANN B. MATSUMOTO, RPR

14

15

16

17

18

19

20

21

22

23

24

25