Ya-Wen Hsiao

1141 Hoolai St. Apt 201

Honolulu HI 96814

808-728-2646

rabbityhsiao@gmail.com

*Pro Se*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YA-WEN HSIAO,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PATRICK PIZZELLA, in his capacity as the United States Acting Secretary of Labor,<br><br>　　　　　Defendant. | CIVIL NO. 1:18-CV-00502-JAO-KJM<br><br>**MEMORADUM IN SUPPORT OF PLAINTIFF'S OPPOSITION ON DEFENDANTS MOTION TO DISMISS AND DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

# **PROLOGUE**

The Plaintiff is a legal immigrant. The Defendant has unlawfully and unfairly denied an application that directly and solely benefits her. The Defendant in an incompetent, unfair and corrupt manner, has stolen ten years of her life and now threatens her with losing the life that she has built and continues to build. This reply was written in haste to accommodate the Courts expedited calendar to which is the Plaintiff is grateful for. The Plaintiff apologizes for a less than perfect form of this reply, however, the Plaintiff makes every effort to present her arguments properly albeit in a less "lawyer-ly" way.

The Plaintiff proceeding as *Pro Se,* is still learning the nuances of litigation. For example, the Plaintiff still finds it odd that she needs to address herself in the third-person. It is important to point out that the Plaintiff proceeding Pro Se is not of choice but of necessity. The Plaintiff has contacted numerous attorneys and even the elected representatives of the State of Hawaii in an effort to secure justice. As mentioned, the Plaintiff is not familiar with the unwritten rules of litigation, but in her perspective, the very <u>Department of Justice</u> is now defending the alleged, corrupt and unlawful actions of the Defendant. Who then can the Plaintiff turn to but this Court?

The Plaintiff has tried to be a "good" pro-se litigant. The Plaintiff has been respectful of deadlines and rules and procedures both to the Court and the Defendant. The Plaintiff has filed legible briefings attacking the Defendants arguments honestly and directly no matter how difficult. However, the arguments that the Defendants has posited has shown how "dishonorable" and "dirty" this process can be. From the very beginning, the Defendant has accused the Plaintiff of filing frivolous papers at the first conference meeting, to still being called an "illegal immigrant", to delaying the court proceedings in filing frivolous motions such as this one, to flat out lies and misrepresentation of even the caselaw that they cite, to threatening the Plaintiff with denials of her H1-B extensions. The Defendant may attempt to "bully" and "threaten" the Plaintiff or embarrass her for not knowing the correct legal terms, but the attempt is futile. The Plaintiff has gone through five miscarriages, is a caretaker to a sick husband, a mother to a prematurely born child working full time and a Pro Se Plaintiff challenging the corruption and illegality that the Defendant has perpetuated. Actions that likely affected thousands of legal immigrants. Of course, the Plaintiff does not expect the Defendant to just say "OK, you are right!". But the Plaintiff expected more integrity and civility.

The Plaintiff realizes that people in the "law industry" rolls their eyes as soon as they see the words "Pro Se". However, the Plaintiff is left with no choice with time against her. The Plaintiff with observing numerous hearings in court has noticed that Court seems to be a lawyer's playground. The Plaintiff's arguments should not carry less weight than that of someone with a law degree. At the end of the day, everyone from the court reporter to the Defendant will all go home to their families and earn their keep. At the end of the day, I could lose everything that I have worked for.

## INTRODUCTION

The Plaintiff has both Constitutional and Prudential Standing to bring this action pursuant to the Administrative Procedure Act and 28 USC § 1331. Denial of the Labor Certification strips the Plaintiff of the opportunity to apply for Permanent Residence. The Plaintiff has an economic interest in the application because it either allows her or bars her from working. More fundamental is, her ability to stay in the country. The INA prescribes the 3 step process to achieve permanent residence status to the alien, not to the Employer.

> *"Petitioners clearly have a strong liberty interest in remaining in this country. Am.– Arab Anti–Discrimination Comm. v. Reno, 70 F.3d 1045, 1068–69 (9th Cir. 1995) ("Aliens who have resided for more than a decade in this country ... have a strong liberty interest in remaining in their homes.")."* Chhoeun v. Marin, 306 F. Supp. 3d 1147 (C.D. Cal., 2018)

## ISSUES PRESENTED

The Plaintiff agrees that the issues presented deal with the alien's standing to challenge the DOL's denial of the alien labor certification and whether the Plaintiff has met the standard for a preliminary injunction.

The Plaintiff disagrees if the Court needs to address whether the Plaintiff fails to state a Fifth Amendment due process claim upon which relief can be granted.

## STATEMENT OF THE CASE

The Plaintiff agrees with the general timeline that the Defendants presents. However, as pointed out again, the Plaintiff is currently legally employed by the Employer.

## STATUTORY AND REGULATORY BACKGROUND

Parties are by now familiar with the three-step process to grant legal permanent residence to an alien through an Employment petition.

Prior to the current regulatory framework, the Labor Certification statute was under 8 USC § 1182(a)(14) and "Labor Certification" was called "Alien Employment Certificate". The Board of Alien Labor Certification Appeals (BALCA) did not come into existence until around 1987. Prior to that, Labor Certifications were adjudicated by the State Employment Service or the Regional Manpower Administration. Suits against the Department of Labor dramatically fell after the establishment of BALCA because the administrative rulings were more consistent. The fact that actions against the Defendant has dropped significantly does not mean that it also stripped standing from aliens challenging the Defendant's decision in Court.

Congress has vested the Defendant with broad discretionary power to interpret and apply the able, willing, qualified and available standard. However, Congress did not provide specificity as to meaningful guidelines to interpret this standard. The current framework is entirely a creation of the Defendant, which was promulgated through the APA.

The reason why this history is important is, caselaw search on Labor Certification came out so scarce was because the Plaintiff was not searching for "Alien Employment Certificate" nor "1182(a)(14)". There are hundreds of caselaw prior to PERM finding standing for the alien in the context of labor certification for the alien. A case that illustrates this clearly is Rumahorbo v. Secretary of Labor, 390 F.Supp. 208 (D. D.C., 1975)

Prior to the current Labor Certification Regulations (PERM), the alien was administratively allowed to appeal the denial of labor certification provided that the Employer join in the appeal. https://oalj.dol.gov/PUBLIC/INA/REFERENCES/REFERENCE_WORKS/DBCH24.HTM#IB

The current PERM regulations disallow the alien beneficiary from filing an administrative appeal. However, 8 USC § 1182(a)(5) has no preclusive intent whatsoever against the alien to bring an action to district court.

## SUMMARY OF THE ARGUMENT

The Defendant's attempt to again, dismiss the instant case pursuant to Rule 12(b)(1) due to allegedly not *sufficiently* pleading an injury-in-fact is without merit and must be denied. The Amended complaint has met this standard with painstaking detail. The factual time-line supplies

the relevant material facts wherein the Court need not even construe the pleadings liberally. The allegations in the Complaint are supported by the exhibits. Therefore, if the Court construes the pleadings liberally, there are even more ample factual allegations that sustains the injury-in-fact requirement. In fact, the Plaintiff repeats them multiple times to show causality.

The second argument stating that the Plaintiff has no constitutional standing because she is merely a beneficiary is a brazen attempt by the Defendant to be "kings" rather than a member of the Executive branch of this country.

The Defendant has waived their objections to dismissal of the due process claims.

The Plaintiff has met the requirement for a preliminary injunction. As much as the Defendant tries to paint that the Plaintiff as asking for the entire Department of Labor to shut down, the temporary relief she asks is the Department of Labor re-classify the case as open. The Plaintiff does not and do not ask for the Defendant to reverse their decision, that is up to this Court. Additionally, the nexus between the relief asked for in the injunction is demonstrated in that without this relief, there would be no way to get the relief asked for in the complaint.

## ARGUMENT
### Standard of Review – Constitutional and Prudential Standing

The Plaintiff may be a non-citizen, but she has lived in the United States long enough to know that this country was built on the idea of separation of powers.

The APA already vests the executive, legislative and judiciary powers to the Defendant, but that power is limited to their "castle". The DOL manages all the programs it administers (executive). The DOL of labor promulgates the rules of its programs (legislative). The DOL adjudicates appeals to those programs though the Office of Administrative Law Judges (judiciary).

The Defendant essentially argues that the only entities who can bring him to Court are those who he invites into their castle. This is an attempt to subvert the Judiciary. They may be "kings" of their castle, but that authority does not extend to the country. This Court is a court of limited jurisdiction, but there is a virtually unflagging obligation to exercise jurisdiction over actions seeking legal relief.

It is only statutes that convey or withhold standing in Court, not regulations. Whether a litigant has standing to sue in federal court, is not dependent on any agency regulation. Instead, the Supreme Court has established a three-factor test for standing, requiring (1) injury in fact, (2) a causal

connection between the injury and the conduct complained of, and (3) a substantial likelihood that the requested relief will remedy the injury in fact. As the person who stands to benefit from being permitted to work and stay in the United States, the Plaintiff clearly has suffered an injury caused by the Defendant's action, which this Court has the power to set aside pursuant to the APA.

Further, the Ninth Circuit has reviewed at least two cases wherein the alien was not joined by the employer. See Seo v. U.S. Dept. of Labor, 523 F.2d 10 (9th Cir., 1975) and Kwan v. Donovan, 777 F.2d 479 (9th Cir., 1985). The detailed review in these cases plainly shows that aliens have independent standing to sue in District Court. As with other Circuit Courts, the alien has standing to sue even without Employer joining. See De Jesus Ramirez v. Reich, 156 F.3d 1273 (D.C. Cir., 1998), Stenographic Machines, Inc. v. Regional Administrator, 577 F.2d 521, 527-28 (7th Cir.1978); Reddy, Inc. v. United States Dep't of Labor, 492 F.2d 538, 544 (5th Cir.1974)

The Defendant further states that the Labor Certification Statute protects U.S. Workers. For the proposition that the Plaintiff is not in a technical sense, a U.S. Worker, the Defendant is wrong. The Plaintiff has been part of the U.S. Workforce despite being on a "non-immigrant" visa because her H1-B approvals have been predicated on the intent of being granted permanent residence.

For the proposition that she is not part of the protected class of people protected by 1182(a)(5), the Defendant is wrong again. The plain language of the statute clearly and unambiguously state "workers in the United States similarly employed". Defendant's contention conflicts with the plain language of the statute.

This is an important distinction because the Defendant attempts to paint a picture that the Plaintiff is an "unadmitted" foreign worker. She is, in the sense that she is not a citizen. However, she is a legally admitted resident alien legally allowed to work. In fact, courts have actually found that the *employer* did not have standing if the alien did not join in the lawsuit.

> *"Not only is he, unlike the alien in Cobb, a party to the action, but also, he was, unlike the alien in Cobb, already lawfully present in the United States when he sought certification under § 1182(a) (14). The relevance of these differences is, in brief, that in Cobb neither the alien nor the employer had legal standing to attack the decision, while in the present case it is clear that at least Dhekney has such standing."* Reddy, Inc. v. United States Department of Labor, 492 F.2d 538 (5th Cir., 1974)
>
> *"Since Dhekney is a party, we need not address the question whether Reddy, Inc., his employer, has independent standing to seek review."* Reddy, Inc. v. United States

Department of Labor, 492 F.2d 538 (5th Cir., 1974)

See also Braude v. Wirtz, 350 F.2d 702 (9th Cir., 1965), (non-resident aliens do not have the right to judicial review because they were not admitted into the country yet.)

The Defendant also contends that this is "merely" the first step in a three-step process. This Court at the hearing aptly asked the Defendant, why would the step matter having established that to get to step two, the Plaintiff would have to get through step one. The INA basically says: "If you want to be a legal permanent resident, then you need to find an Employer willing to sponsor you for your Labor Certification, if that gets approved, you need to make sure they apply for the I-140 for you, after that, then you can apply for the permanent resident visa." The Defendant however states: "But, YOU have to find that Employer willing to sponsor you and go through the hell that we prescribe to get to that goal within the time frame that we give you. And it does not matter what reason we give to deny your employer that Labor Certification, we can tell your employer that we just don't like your name as a reason to deny the application and you as the alien do not have a say in this because we are denying your Employer, not you, even if the permanent visa is for you."

The absolutely ridiculous contention is that "I could not have harmed the Plaintiff because, I harmed her Employer, not her. And everything that flows from that is not my fault."

This is similar to saying the beneficiary of a life insurance does not have standing in court because the deceased needs to be party to the case in the situation where the insurance company refuses to pay the benefit.

An even simpler picture: Pass the baton race, someone trips the first runner preventing him to pass the baton to his teammate to cross the finish line. The offender then says: "Not my fault you did not cross the finish line because it was not you who I tripped, how do we know you would not have tripped by yourself on the way to the finish line anyway?"

The Defendant is again wrong and attempts to strip well established jurisdiction from this court. The Defendant is correct that Courts have typically remanded agency actions and have the agency adjudicate the case consistent with the Court's orders. However, there also has been cases such as the Seo case where the Court may find, as justice and fairness dictates, to order a reversal of the administrative action.

In this case, the following facts are clear from the Amended Complaint. These are more than "allegations", the *Factual* Background at paragraphs 1 – 56 of the Amended Complaint are supported by evidence presented in the corresponding exhibits referred to and publicly published

opinions and rulings by the Department of Labor through their website.

1. The Defendant took almost 10 years to adjudicate this case.
2. The lawyer for the Certifying Officer participated in a case wherein he was a direct party to.
3. The adjudicators used the same evidence as a sword in one hand and a shield in another
4. There was no notice given on changes in substantive procedures
5. The adjudicators *refused* to correct the record which was plainly erroneous.
6. The last appeal was decided on incomplete facts.

> *If at that time the decision is found to be "arbitrary, capricious, or an abuse of discretion," then the district court should "**compel** agency action unlawfully withheld" by ordering the issuance of the certificate. Administrative Procedure Act, § 10(e).* SECRETARY OF LABOR OF UNITED STATES v. Farino, 490 F.2d 885 (7th Cir., 1973)

The Plaintiff also has prudential standing to challenge the rules improperly adopted by the Defendant.

> *In addition, "a party within the zone of interests of any substantive authority generally will be within the zone of interests of any procedural requirement governing exercise of that authority." Int'l Bhd. of Teamsters v. Pena, 17 F.3d 1478, 1484 (D.C. Cir. 1994). This is particularly true for claims brought under the APA's notice-and-comment provisions. See id. ; see also Mendoza v. Perez, 754 F.3d 1002, 1016 (D.C. Cir. 2014) (looking to the "zone of interests" of the underlying statute to determine ability to bring a notice-and-comment claim). As explained above, the Organizations are within the zone of interests protected by the INA and thus may challenge the absence of notice-and-comment procedures in addition to the Rule's substantive validity.* Covenant v. Trump, 909 F.3d 1219 (9th Cir., 2018)

### Defendants motion to dismiss Due Process claim based on Rule 12(b)6)

1. Defendant has waived this argument

The claim that the Defendant attempts to attack was in the original complaint. The Amended Complaint did not add a different "Due Process Claim" from what was in the Original Complaint. In fact, the number of claims went down because the FOIA issue was dismissed with prejudice. The Defendant did not bring up a motion to dismiss based on Rule 12(b)(6) which was the same claims on the Original Complaint. It would be patently unfair to consider this motion.

The Defendant clearly stated that if Constitutional Standing and Prudential Standing would be found. "It need not go into the other issues" See transcript of June 7, 2019 hearing.

2. Even if the Court, considers the Motion to Dismiss based on Rule 12(b)(6). The Defendant would fail using the very criteria that they state.
3. Plaintiff alleges both procedural due process claim and substantive due process claim
    a. Deprivation of constitutionally protected liberty or property interest – Am.– Arab Anti–Discrimination Comm. v. Reno, 70 F.3d 1045, 1068–69 (9th Cir. 1995) ("Aliens who have resided for more than a decade in this country ... have a strong liberty interest in remaining in their homes.")
    b. Property interest – Earning a living to keep her job and feed her family. The approval of the labor certification is a requirement to be able to have this property interest.
    c. Denial of adequate procedural protection –
        i. How did the Defendant lose the initial application which resulted in delayed adjudication?
        ii. With 3 Judges on the panel and 9 Judges on the En Banc panel, how can BALCA consider the wrong facts of the case? Why was the record not corrected after this error was pointed out?
        iii. BALCA failing to give notice of changes to procedures which is a basic requirement of due process, procedural or substantive.
        iv. Defendant failing to adhere to the APA requirements of going through notice and comment on substantive procedures that the Defendant was clearly aware of.
        v. Why did the Defendant hire Harry Shienfeld and pay him $300,000 of tax-payer money for two years to deprive immigrants of their due process rights to be afforded an impartial tribunal in adjudicative proceedings? What other cases did he provide BALCA advice to, cases wherein he served as counsel to the Certifying Officer? Procedural protection against a biased tribunal.
        vi. The Plaintiff is a party to this case, to say that she was just sitting on her ass waiting for mana to fall from the sky with regards to this application is nonsensical. See Paragraph 17, 22, 27, 31, 32, 44 and Exhibit 1 of this reply.
    d. Shocks the conscience? Hold my beer. Let's say you were accused of murder; you get convicted in trial court and the accused goes to the appeals court. When you get to the

appeals court, you find out, that the law clerk for the Judge is the same prosecutor you had in trial court. Normal people would say, "well, that would NEVER happen". Shocking to the conscience would be actually getting proof that it actually happened which is the case here. Even more shocking material, the prosecutor got paid double of what he was earning at the behest of the judge on the appeals court.

What is dishonest with the Defendant's arguments is that the Defendant seem to imply that Labor Certification is "discretionary". Aliens subject to deportation are ultimately at the mercy of the Attorney General, which supervises the Defendants counsel. The REAL ID Act strips the District Court of Jurisdiction over deportation actions.

However, the labor certification process is ***not*** discretionary. The discretion afforded to the Secretary of Labor is in promulgating the regulations. The PERM regulations are in fact designed to accommodate a large number of applicants so that the Certifying Officer does not have to process applications one by one. PERM is an attestation-based application program. Put simply, there is a clear quid-pro-quo in the process. Department of Labor says: "You do the market test for the labor market, you show that you did the market test in the way we say you do it, then we give you the Labor Certification"

### Allegation that Relief Requested is a "circuitous" way of extending employment.

The Defendant again muddies the waters in his argument. The Defendant claims that the request for Preliminary Injunction is a "circuitous way to pursue a one-year H1-B extension". This is false, there is no "circuitous" attempt here. The Plaintiff, because of the delay due to the Defendant losing the application, the Plaintiff was eligible and renewed her visa pursuant to AC 21 even before the Certifying Officer finished adjudicating the application. It makes no sense that the Defendant accuses the Plaintiff of being "circuitous".

Additionally, it is also incorrect that the requested relief has no "relationship or nexus to the claims set forth in the underlying complaint". One of the core remedies that is asked for in the complaint is a reversal of the Denial of Certification so the Plaintiff may stay and work legally to pursue permanent legal residency. The injunctive relief asked for is the only thing that would prevent her from losing her legal status, which if lost, she would lose her employment and would essentially moot her ability to pursue permanent legal residency. The injunctive relief asked for is necessary to make her claims for relief not moot.

The test for whether an injunction is prohibitory or mandatory can be found in its effect on the "*status quo ante litem*" which means "the last, uncontested status which preceded the pending controversy" Marlyn Nutraceuticals, Inc., 571 F.3d at 879 (quoting Regents of the Univ. of Cal. v. Am. Broad. Cos., 747 F.2d 511, 514 (9th Cir. 1984)). Here, the last uncontested status was when the Certifying Officer was still adjudicating the Employer's application. At that time, the Plaintiff was already eligible for the extension based on lengthy adjudication pursuant to AC 21. The relief asked for does not "alter the status quo" nor does it "micro-manage" the agency. The Plaintiff did not ask the Defendant to stop processing PERM applications until they can assure the public that applications will not be lost or mishandled. The Plaintiff did not ask for a nationwide injunction on processing En Banc appeals before BALCA because they violated the APA or never gave notice to the parties with cases before them. Neither did the Plaintiff ask for all the ALJ's involved in the case to be temporarily dis-barred from adjudicating cases because they have shown they were not impartial. Nor did the Plaintiff ask for the Defendant to stop hiring until they can prove that they are not committing any more Prohibited Personnel Practices. The Plaintiff did not ask for the Defendants to shoulder the costs for the renewals. The Plaintiff did not ask for the Defendant to "re-open and approve" the application. The relief asked for is the narrowest injunction that the Plaintiff proposed to preserve the status quo. If the Plaintiff can wait 9 years for the Defendant to adjudicate a single case, it surely is not much to have them *administratively classify* a case as open pending litigation. There is no prejudice against the Defendants, even if this injunction was granted and Plaintiff was able to extend her H1-B. That H1-B extension is limited to one year. This is the "delay" that the Defendant cited in 5 USC § 705. So while it is technically correct that the injunction ordering the Defendant to do something is a "Mandatory Injunction", it does not alter the "status quo ante litem", it in fact preserves it.

As the Defendant stated, after deciding on the merits, the Court may remand the case back to the agency for certification. In this sense, it would mean the same as reopening the case to approve it.

### Defendant's contentions on Maintaining the "status quo"

The contention that the allegations made by the Plaintiff are "conclusory" is nonsensical. The Plaintiff has *quoted* the published opinion directly and attached the written decision of the Certifying Officer to the complaint. See Paragraph 9 – 15 of the Amended Complaint. The argument that the evidence "fall well short" is even more problematic. Let us go back to the murder

example, the prosecutor gets the gun thrown out as evidence for whatever reason, then coming back and saying "Ms Hsiao used *this* gun to kill the victim!" The Plaintiff takes it a step further, the Judge then convicts the accused based on the excluded gun because the prosecutor is apparently also the law clerk to the judge presiding over the case. See Paragraph 86 – 91 with support in Exhibits. The evidence presented in this case makes these allegations undisputable. The question left perhaps would be "why?". Whether or not this happened is not debatable, it's clear from the record it did. The evidence presented in the Amended Complaint which came directly from the Defendant does not merely meet the "high threshold" or "likely standard" nor are they "conclusory", they are in fact "conclusive".

Judge Almanza also unequivocally stated that En Banc Procedures are NOT published and, in this case, it was also clear that no notice was given. Therefore, the argument that this Court needs to give deference to the questioned rules does not apply.

> *"Administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of such authority."* U.S. v Mead Corporation, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)

The Defendant did not go through the correct procedures in promulgating or changing the rules, therefore, no deference, be it Auer, Seminole or Chevron is due.

Again, the Defendant conflates the relief asked for, the Plaintiff is not asking for the Department of Labor to shut down its operations with regards to any applications or adjudications as what the cases the Defendant cites to was asking for.

### **Irreparable Harm**

The Plaintiff's harm is already ongoing. Because of the unbelievably delayed and incompetent and illegal adjudication of the application. The Plaintiff has already lost years. The worst part of the Defendants argument here is, the Defendant's has painted a picture wherein they have loaded a gun, pointed it at her, cocked the gun with their finger on the trigger, then saying, "I have not pulled the trigger yet, so it would be wrong for the Court to tell me to put the gun away." The Defendant is suggesting that until October 31, 2019 arrives, there is no "imminent harm".

> *"The Government asserts that Petitioners' liberty interest is weak, because Petitioners*

*knew they were subject to removal orders and should have expected to be deported at any instant. The Government's argument is insensitive and ignores the strong ties that Petitioners have developed over the years in this country." "It is disingenuous for the Government to claim that throughout the many years that Petitioners were permitted to live and work on supervised release, they should not have built up any expectation that they would be permitted to remain in the country. Petitioners should instead be commended for investing in and becoming productive members of our communities notwithstanding their removal orders. Because Petitioners did so, instead of wallowing in limbo while waiting to be deported, they have deepened their interest in remaining in this country. For the Government now to ignore Petitioners' strong ties and commitment to this country is deeply troubling."* Chhoeun v. Marin, 306 F. Supp. 3d 1147 (C.D. Cal., 2018)

## **Allegedly Speculative relief**

The argument here goes beyond an argument against the Plaintiff. The Plaintiff finds it important to memorialize the threats of the Defendant here through this brief.

The Plaintiff has shown a letter from the Dean of the School of Medicine that absent any legal means, they cannot renew her visa.

To further prove that it is only the Defendant's actions that are preventing the Employer from renewing her visa. The Plaintiff introduces a Declaration from Jill Omori, her supervisor and the signatory for her Employer Support Letter in applying for the extension.

The H1-B extension has been applied for and approved since 2012 by the USCIS. There has been no change in the Plaintiff's labor conditions nor has there been any changes with the publicly funded University of Hawaii, a *state university.* Simply put, the Employer is not in any perceivable danger of closing down. The "requirements for eligibility" have been met for the past nine renewals totaling thirteen years. There is no reason for a denial of extension save for an "intervention" by the Defendant.

It is important then to note, that the DOJ-OIL also represents USCIS and obviously has connections to the department.

It is also important to note again, the Defendant is not the agency that approves visa extensions, USCIS work closely with the DOL as they are represented by the same counsel's office. The Plaintiff obviously cannot ask USCIS to approve the extension because they are not a party to this

case and it would be unfair because they have not done anything wrong, but it seems like the Defendant is bringing USCIS as a party to this litigation by alleging the Plaintiff is cheating them out of a visa extension.

The most troubling line is, despite the Defendants knowledge of the fact that the Plaintiff's renewal has been approved for 13 years and Exhibit 16 of the Amended complaint shows that the Employer affirmatively stating they will sponsor her, the Defendant states "Any such conclusion is, at best, speculative." without any reason aside from stating that the Employer must meet requirements (which it has done for more than a decade).

Clearly, this is an attempt to threaten retaliation against the Plaintiff for bringing them into this Court and exposing the corruption and impropriety that happened here.

Now, the Plaintiff is even further threatened by the fact, that her future applications with USCIS are in danger. The Plaintiff has already shown that the presumption of regularity and honesty is not applicable in this case. This threat, more so reinforces that fact.

### The APA does provide the basis for requested relief

The contention that the APA does not provide the basis for Plaintiff's requested relief is not true. Again, the Plaintiff will keep her integrity and state that the Defendant is correct in stating that §705 does not state anything about injunctions. However, § 705 from the very first line is aimed primarily at the "Reviewing agency". It of course applies to the reviewing court which is where this action is brought right now, but the language uses the word "may", which affords a flexibility towards "preserving the status or rights pending conclusion of the review proceedings"

> *"Flexibility is a hallmark of equity jurisdiction. "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." Weinberger v. Romero–Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (quoting Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944) ). Consistent with equity's character, courts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief. Instead, courts have evaluated claims for equitable relief on a "sliding scale," sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.3, p.*

*195 (2d ed.1995). This Court has never rejected that formulation, and I do not believe it does so today."* Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 172 L.Ed.2d 249, 555 U.S. 7 (2008)

The Defendant conveniently misses § 703 of the APA which states the *form* of relief that may be given. In other words, "the form of relief" (§ 703) to "postpone" and to "preserve status or rights pending conclusion of the review proceedings" (§ 705)

> *"The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or <u>writs of prohibitory or mandatory injunction</u> or habeas corpus, in a court of competent jurisdiction."* 5 USC § 703

The Defendant also states that the normal review of an APA case is based on the Administrative Record. *Normally*, the Defendant would be correct. But Courts may look outside the Administrative Record if there is a showing of bad faith.

> *"documents reflecting an agency's internal deliberations may on occasion be made part of the record, but only if the challengers make "a strong showing of bad faith or improper behavior" on the part of agency decision-makers."* Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), abrogated on other grounds by Califano v. Sanders, 430" United States v. U.S. Dist. Court for N. Dist. of Cal. (In re United States) (9th Cir., 2017)

### **Balance of Hardships and Public Interest**

The two remaining factors merge when the government is the opposing party.

It is a grave exaggeration that the relief asked for by the Plaintiff enjoins the governmental entity from administering the statute it is charged with. Again, the Plaintiff is not asking Defendant to stop the PERM program. The purpose of the injunction asked for is to simply classify her case as open so the Employer may extend her visa pending resolution of this case. A process that she was entitled to and applied for even before the Certifying Officer adjudicated the case.

Put simply:

Signing a piece of paper that says case is open, business as usual **VS** Loss of job of 13 years and all the consequences of that, permanent loss of ability to apply for permanent residence, threat of

deportation, loss of the ability to stay in her home.

> *"The Court acknowledges that there is a strong interest to be found in the effective and efficient enforcement of the nation's immigration laws, as Defendants assert in this case. Dkt. # 123 at 12. However, the Court should not conclude that this interest outweighs the ongoing harm that Plaintiff is experiencing as a result of losing his DACA and EAD, ... Furthermore, public interest exists in ensuring that the government complies with its obligations under the law and follows its own procedures. Melendres v. Arpaio , 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").* Medina v. U.S. Dep't of Homeland Sec., 313 F.Supp.3d 1237 (W.D. Wash., 2018)

## Conclusion

For these reasons, the Court should deny Defendants Motion to Dismiss and grant the Plaintiff's Motion for Preliminary Injunction. The Plaintiff plainly has standing as a beneficiary of a Labor Certification as illustrated by numerous Ninth Circuit precedent as well as other Circuits nationwide. The "status quo ante litem" allowed the Plaintiff for an extension of her status. This Court has the authority to issue the relief requested as 5 USC § 703 clearly articulates. The Defendant has issued a threat in conclusory statements that the approval of her extension is "at best, speculative". A nexus exists in granting the relief will not moot the relief asked for in the Amended Complaint. The relief asked for is extremely narrow in scope. The balance of equities is not even close in favor of the Plaintiff. The Plaintiff though the exhibits in the Amended Complaint have shown conclusive evidence that she will win on the merits.

Respectfully submitted
Dated August 12, 2019 at Honolulu, HI

Ya-Wen Hsiao
1141 Hoolai St. Apt 201
Honolulu, HI 96814
(808) 728-2646
rabbityhsiao@gmail.com