1                   IN  STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3

4   YA-WEN HSIAO,                ) CV 18-00502 JAO-KJM
                                 )
5            Plaintiff,          ) Honolulu, Hawaii
                                 ) September 6, 2019
6        vs.                     ) 9:02 a.m.
                                 )
7   PATRICK PIZZELLA, in his     ) [34] PLAINTIFF'S MOTION FOR
    capacity as the United States ) TEMPORARY INJUNCTION AND
8   Secretary of Labor,          ) [41] DEFENDANT'S MOTION TO
                                 ) DISMISS AMENDED COMPLAINT
9             Defendant.         )
    _____)

10

11

                    TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE JILL A. OTAKE
                 UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15   For the Plaintiff:      YA-WEN HSIAO
                             1141 Hoolai Street
16                           Apartment 201
                             Honolulu, Hawaii 96814
17
     For the Defendant:      SAMUEL P. GO, ESQ.
18                           U.S. Department of Justice
                             450 5th Street, NW, Suite 2106
19                           Washington, D.C. 20001

20   ALSO PRESENT:           Bryan Feliciano

21

22   Official Court          ANN B. MATSUMOTO, RPR
     Reporter:               United States District Court
23                           300 Ala Moana Boulevard, C-338
                             Honolulu, Hawaii 96850
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).

```
 1   FRIDAY, SEPTEMBER 6, 2019                9:02 O'CLOCK A.M.
 2              COURTROOM MANAGER:  Civil Number 18-00502 JAO-KJM.
 3   Ya-Wen Hsiao versus Patrick Pizzella.
 4              This case has been called for hearing on plaintiff's
 5   motion for preliminary injunction and defendant's motion to
 6   dismiss amended complaint.
 7              Plaintiff and counsel, please make your appearances
 8   for the record.
 9              MS. HSIAO:  Good morning, Your Honor.  I'm Plaintiff
10   Ya-Wen Hsiao.
11              THE COURT:  Good morning.
12              MR. FELICIANO:  Bryan Feliciano, husband to the
13   plaintiff.
14              THE COURT:  Okay.
15              MR. GO:  Good morning, Your Honor.  Samuel Go on
16   behalf of the defendant.
17              THE COURT:  Good morning.
18              MR. YEE:  Good morning, Your Honor.  Assistant United
19   States Attorney Harry Yee for the United States.
20              THE COURT:  Good morning, everyone.  You may be
21   seated.
22              And, I'm sorry, I missed your name again, sir, if you
23   could state it again?
24              MR. FELICIANO:  Your Honor, Bryan Feliciano.
25              THE COURT:  Bryan Feliciano.  Okay, thank you.
```

1           And I'll just remind -- you can have a seat.

2           MR. FELICIANO:  Okay.  I'm not going to talk.

3           THE COURT:  Right.  Yes.  Okay.

4           MR. FELICIANO:  That's right.

5           THE COURT:  So you can have a seat.  So I just want

6    to make sure it's on the record, and I don't think Mr. Yee was

7    here the last time, that I'm allowing Mr. Feliciano to sit with

8    his wife during this hearing.  He's not to going to talk on her

9    behalf since she is pro se.  All right.

10          Okay.  We are here for two different motions, a

11   motion brought by the government to dismiss and a motion

12   brought by Ms. Hsiao for what was entitled Temporary

13   Injunction.  Actually, the temporary injunction motion was

14   brought first, followed by the motion to dismiss.

15          I have reviewed the first amended complaint, the

16   motion for temporary injunction, the motion to dismiss, the

17   plaintiff's opposition to the motion to dismiss, defendant's

18   reply, as well as the list of uncited authorities that were

19   submitted by Ms. Hsiao.

20          And with that, I will hear first, this time, I think

21   from Mr. Go.  I'd like to hear from the government first.

22          MR. GO:  Sure, Your Honor.

23          THE COURT:  Thank you.

24          MR. GO:  May I approach the podium?

25          THE COURT:  Yes.  And because both parties have

1    motions here, what I intend to do is to allow you to proceed,

2    Mr. Go.  Ms. Hsiao can respond.  You can have a rebuttal, and

3    then I'll allow her some additional time.

4                MR. GO:  All right.

5                THE COURT:  All right.  Okay.  You may proceed.

6                MR. GO:  Your Honor, I would like to address the

7    issue of standing, which I think pertains to both the motion to

8    dismiss and plaintiff's motion for temporary injunction.

9                Your Honor, the labor certification process is a test

10   of the U.S. labor market.  It's created by Congress to serve

11   the interests of the U.S. employers and the U.S. workforce.  As

12   governed by 8 U.S.C. 1182(a)(5), the process was created to

13   protect U.S. workers from being adversely affected by the

14   employment of foreign workers.

15               If the employment -- if the employer could show that

16   the hiring of a foreign worker would not adversely affect the

17   U.S. workforce, the employer could then hire the foreign

18   worker.  This process allows U.S. employers the benefit of

19   hiring a foreign worker while ensuring that the hire would not

20   be detrimental to the U.S. workforce.  It is the interest of

21   the U.S. -- the U.S. employer and the U.S. workforce that

22   comprises a zone of interest protected by the labor

23   certification process.

24               THE COURT:  How do you respond to her uncited

25   authority, Gladysz versus Donovan, as well as the Stenograph

1  case, both of which suggest that the zone of interest is rather

2  broad?

3         The Gladysz versus Donovan case says, quote, "As the

4  secretary concedes, Stenographic Machines reads the 'zone of

5  interests' tests expansively, and, indeed, the plain language

6  of the test is broad, requiring only that the interest fall,"

7  quote, "arguably within the zone of interests regulated by the

8  statute."

9         MR. GO:  Your Honor, I think this falls in the cases

10  along the lines that we replied to in our reply for Seo, in

11  that these cases were based on the previous statute.  There was

12  a change.  Prior -- well, prior to, you know, when Seo was

13  decided, as I believe as well as these other cases, it was

14  based on the prior statute and regulations which allowed a

15  foreign national to join an employer in filing an appeal of a

16  denial for a labor certification application.  That was

17  changed, as we pointed out with -- that change was noted in the

18  2002 NPRM, the Notice of Proposed Rule Making, which stated

19  that only the -- that went along with the lines of the creation

20  of BALCA.  And along those lines, it said only the employer

21  could request review of a labor certification denial, with

22  BALCA.

23         And so that extends to the -- to showing the purpose

24  that the interest, the zone of interest, comprised of the U.S.

25  employer and the U.S. workforce.

1        So there has been historical change in terms of the

2   prior statute and regulations that allowed a foreign national

3   to enjoy (sic) employer -- to join an employer is no longer in

4   effect.

5        THE COURT:  Okay.  And --

6        MR. GO:  And that's in page 5 of our reply.

7        THE COURT:  And how do you square the Ninth Circuit

8   case of Ray Charles Foundation versus Robinson, which we cited

9   to in our last order, at 795 F.3d 1109, which seems to hold

10  that the Ninth Circuit hasn't adopted the position that the

11  zone of interest test is a prudential standing or

12  jurisdictional test?

13       MR. GO:  Your Honor, unfortunately -- I would be

14  happy to brief that --

15       THE COURT:  Okay.

16       MR. GO:  -- case, if -- if necessary.  But I can't

17  speak to that right now.

18       THE COURT:  That's fine.  I'll give you until noon on

19  Wednesday of next week.

20       MR. GO:  Okay.

21       THE COURT:  Actually, scratch that.  I'll give you

22  until 4:00 p.m. on Tuesday of next week --

23       MR. GO:  Okay.

24       THE COURT:  -- to address how the following case is

25  distinguishable.

1          MR. GO:  Okay.

2          THE COURT:  Ray Charles Foundation versus Robinson,

3  795 F.3d 1109, Ninth Circuit, 2015.

4          MR. GO:  Okay.

5          THE COURT:  And, Ms. Hsiao, I'm sure it's obvious to

6  you, but in case it isn't, this only requires the government to

7  file something.  I don't need any pleading from you on this.

8  So this would be due, Mr. Go, on Thursday at 4:00 p.m.

9          MR. GO:  Okay.  Yes, Your Honor.

10          THE COURT:  Thank you.

11          MR. GO:  Your Honor, so to continue on, I understand

12  Ms. Hsiao -- Ms. Hsiao's frustration.  You know, she's not the

13  one that submitted the labor certification application and, in

14  the government's view, failed to show that the applicant

15  employer took sufficient steps to recruit U.S. workers and

16  failed to show U.S. workers were offered equal employment

17  terms.  She's not the one that purportedly advertised her

18  position.

19          And, you know, she didn't control how the applicant

20  employer recruited for the position and under what terms

21  recruitment took place.  But that is exactly why she's not the

22  proper party to this action, both based on prudential standing

23  and based on constitutional standing as well.

24          THE COURT:  If we could walk through constitutional

25  standing a bit, I think that would be helpful to me.

1          Do you at all contest that she has adequately pled an

2     injury in fact?

3          MR. GO:  Your Honor, as we state in our papers, we

4     don't believe that -- we don't believe that -- okay.

5          THE COURT:  The impression I got from reading your

6     papers is really you focused more on causation and

7     redressability.  So I want to start at Square 1 --

8          MR. GO:  Sure.

9          THE COURT:  -- and determine, are you claiming that

10    she did not adequately plead an injury in fact, or are you

11    conceding that she's adequately pled an injury in fact?

12         MR. GO:  Your Honor, we don't dispute whether she has

13    pled an injury, a sufficient injury in fact.

14         THE COURT:  Okay.

15         MR. GO:  Our dispute is with the causation/

16    redressability elements of that.

17         THE COURT:  Okay.  All right.  And then, in terms of

18    the second prong of the injury being fairly traceable to the

19    challenged actions of the government, one of the things that is

20    not clear to me from the pleadings, and Ms. Hsiao states this,

21    although there is not citation to it, is, you know, she says

22    that she can't get another job.  There were -- everything

23    basically shut down for her in terms of opportunities once

24    BALCA denied the en banc review.

25         We looked at the regulations and the statute.  It

```
 1    looked to us as if the employer could have taken the case
 2    further after BALCA denied en banc review.  Is that your
 3    understanding?  Or what's your understanding?
 4              MR. GO:  Could or could not?
 5              THE COURT:  Could.
 6              MR. GO:  Could?
 7              THE COURT:  Could.  Are you familiar at all with kind
 8    of the process that could have happened after that point?
 9              MR. GO:  Your Honor, I do believe that there were
10    steps that the employer could have taken aside from that.  I'm
11    not sure if I can delineate, like, all the steps --
12              THE COURT:  Okay.
13              MR. GO:  -- that could have been taken.
14              THE COURT:  And are there other avenues plaintiff
15    could have pursued regarding her status?
16              MR. GO:  Your Honor, with respect to this labor
17    certification application, no, because this is between the
18    employer and DOL.
19              THE COURT:  Right, but in terms of her actual
20    immigration status.  Because, you know, the injury, obviously,
21    that she is claiming is, among other things, not just losing
22    this job opportunity but losing the opportunity to work
23    elsewhere as well as possible deportation.
24              So are there other things she could have done after
25    the denial of en banc review that would have avoided those
```

1   potential injuries?

2           MR. GO:  Your Honor, I mean, the -- there were many

3   things that could be done that's separate and apart from, you

4   know, the labor certification application.  I mean, she could

5   obtain another, you know, H-1B visa with another employer, you

6   know --

7           THE COURT:  Okay.

8           MR. GO:  -- other avenues.  I mean there are

9   employment ways to get immigration visas or family ways of

10  getting immigration visas.  So all of those were available,

11  are -- are possibilities.

12          THE COURT:  Okay.  So is she incorrect in her

13  briefing when she says that once the en banc review was denied

14  that basically shut down her opportunity to seek employment

15  with other organizations, agencies, or businesses in the United

16  States?

17          MR. GO:  Yes.  I believe that's incorrect.

18          THE COURT:  Okay.  Thank you.

19          MR. GO:  Yes, Your Honor.

20          Your Honor, aside from the fact of standing, yeah,

21  we -- and as we said, we did talk about her -- her allegations

22  for injury.  And as I said, we dispute the causation and

23  redressability.  From our standpoint, this test of the labor

24  market, which is between the U.S. worker and DOL, does not

25  plausibly result in the injuries that she's alleged.  It -- as

1    we -- as I said, it didn't cause -- it doesn't prevent her

2    from, you know, seeking another job with another employer.

3           It doesn't separate her from, you know, her husband

4    or child.  It doesn't cause these physical consequences.  It's

5    just a test of the U.S. labor market to see -- the U.S.

6    employer's requested the privilege of hiring a foreign worker,

7    and it needs to show that the labor market -- that the hiring

8    of that foreign worker will not adversely affect the U.S.

9    workforce and U.S. working conditions.

10          So we believe that, you know, the -- this complaint

11   fails in showing alleged -- an injury in fact that has been

12   caused by defendant's conduct, and also is redressable by -- by

13   a favorable decision.  As we said, this is one step in a

14   multi-step process and there are things that cannot be

15   controlled.

16          Aside from the labor certification application, you

17   know, we -- in order to get a visa that goes through the

18   Department of State, this is just one example.  And there

19   are -- we don't know whether she would necessarily obtain a

20   visa because there are other elements out there which the state

21   has to analyze, but it's not present here, to see whether she

22   would actually ultimately get a visa.

23          THE COURT:  And that is after Step 2 or Step 3?

24          MR. GO:  That is Step 3.  Step 2 would be the other

25   parts of the immigration petition.

1          THE COURT:  Okay.

2          MR. GO:  Aside from labor -- labor certification

3     application.

4          THE COURT:  And if the proper remedy is remand here,

5     what would remand do?  One of the things that I'm a little bit

6     unclear on is if remand is a proper remedy, if I were to remand

7     this case, what direction would I give to the BALCA regarding

8     remand?

9          MR. GO:  I guess it would just be to reanalyze this

10    case, if there were some things that you thought were improper.

11         THE COURT:  Okay.

12         MR. GO:  Without engaging in the improper conduct.

13    So BALCA would again review the case.

14         THE COURT:  It would basically --

15         MR. GO:  With your order that not to engage in

16    whatever you thought was --

17         THE COURT:  Was --

18         MR. GO:  -- improper.

19         THE COURT:  Okay.  If I conclude that she doesn't

20    have constitutional standing, can't -- I can't consider the

21    motion for preliminary injunction, right?  Or the 12(b)(6)

22    motion?

23         MR. GO:  Your Honor, as to -- for the 12(b)(6) motion

24    is just with regards to the due process claim.

25         THE COURT:  Right.

1          MR. GO:  The stand -- so the standing issue encom --
2   would encompass the entire complaint.  I'm sorry if I'm not
3   clear on that.
4          THE COURT:  Right.  So --
5          MR. GO:  Yeah, she would not need to consider the
6   12(b)(6) issue.
7          THE COURT:  Right.  Okay.
8          MR. GO:  Okay.  With regards to the motion for
9   preliminary injunction -- or temporary injunction -- you would
10  not be able to consider that as well because -- if you found
11  that plaintiff did not have standing, because you would not
12  have jurisdiction over that motion.  Aside from that, you know,
13  plaintiff needs to meet, as we said in our papers, a heightened
14  standard for the mandatory injunction she seeks.  And that
15  would definitely be a case against her showing that the law and
16  facts clearly favor her position.
17         THE COURT:  Well, let me turn now to the preliminary
18  injunction, or mandatory injunction.
19         MR. GO:  Sure.
20         THE COURT:  How do you respond to her assertion that
21  the BALCA issued inherently contradictory findings in terms of
22  the website posting?
23         MR. GO:  Your Honor, I mean, that's just an
24  allegation that she has made.  We don't think that the
25  allegations as they stand show -- meet her standard of

1   likelihood of success on the merits or, you know, even the

2   heightened standard of clearly favoring -- the law and facts

3   clearly favoring her position.  She's just made the allegation.

4   The allegation is that BALCA didn't consider the proof

5   sufficient but yet used that proof to -- as evidence for a

6   basis of another denial.

7           THE COURT:  Right.

8           MR. GO:  And I think that that is entirely within the

9   jurisdiction of BALCA to analyze the evidence there and to -- I

10  don't think that it is contradictory to say the evidence that

11  you've given us is not enough, and the evidence that you

12  give -- that you've given to us contradicts other parts of our

13  ruling or --

14          THE COURT:  The way I interpret her argument on this

15  front is the BALCA said there's not evidence that you posted

16  this to a website --

17          MR. GO:  Yes.

18          THE COURT:  -- number one.  And number two, the

19  evidence that you posted to the website didn't meet the

20  requirements with regard to U.S. workers.  So --

21          MR. GO:  See, I don't think that's contradictory

22  because, I mean, I guess -- I guess what I interpret is, you

23  know, their finding the evidence wasn't posted to the website,

24  and even if it were, like the evidence isn't sufficient.  So --

25          THE COURT:  Do you see it as an even if --

1          MR. GO:  Yeah.  Yes.

2          THE COURT:  -- position?  Okay.

3          With regard to the second element of preliminary

4   injunction, that the plaintiff is likely to suffer irreparable

5   harm in the absence of preliminary relief, how do you respond

6   to her argument that through the preliminary injunction she's

7   only asking to preserve her status by allowing her to remain

8   employed?

9          MR. GO:  Yes.  Well, Your Honor, her status is as a

10  temporary non-immigrant employee pursuant to H-1B.  And she's

11  had that status, but it is temporary.  And one of the points

12  that we do raise is that, you know, throughout this process her

13  status has not changed.  It hasn't changed with the denial of

14  the labor certification application.

15         However, she -- in her injunction she's asking for an

16  affirmative step, and that affirmative step is for DOL to

17  reopen an already adjudicated labor certification application.

18  You know, which we believe -- under AC21, which is unrelated to

19  this case.  So it is not preserving the status quo because it

20  is taking -- asking for an affirmative step.  There -- the

21  current status quo is that the labor certification application

22  has been adjudicated and denied.  And what plaintiff is asking

23  for is for that already adjudicated labor certification

24  application to be reopened.

25         THE COURT:  Okay.  Thank you.

1          I have no further questions, but I'm happy to hear

2    more argument if you have any additional.

3          MR. GO:  Your Honor, I just want to raise, you know,

4    I think a primary issue of the motion for temporary injunction

5    is that it asks for relief that the Court lacks authority to

6    give.  And the reason the Court lacks authority to give it is

7    because it's unrelated to the -- it is unrelated to the

8    complaint.  So as we state in our papers, AC21 is specifically

9    for labor certification applications and immigration petitions

10   that are pending due to an immigration visa quota backlog.  And

11   that is not the case here.

12         So if the Court were to grant plaintiff's motion and

13   order that request, they would eventually -- they would -- the

14   Court would be ordering DOL to act contrary to its authority.

15   You know, the regulations say that this is for an immigration

16   visa quota backlog or, you know, that purpose is for an

17   immigration quota visa backlog, and Mrs. Hsiao is asking it to

18   be used for something else.

19         THE COURT:  All right.

20         MR. GO:  Thank you, Your Honor.

21         THE COURT:  Thank you, counsel.

22         And, Mr. Go, I didn't give you a page limit for your

23   brief.

24         MR. GO:  Okay.

25         THE COURT:  So I will ask you to keep your brief to

1   five pages, please.

2           MR. GO:  Yes, Your Honor.  Thank you.

3           THE COURT:  Ms. Hsiao?

4           MS. HSIAO:  Yes.

5           THE COURT:  Thank you.

6           MS. HSIAO:  Good morning, Your Honor.

7           THE COURT:  Good morning.

8           MS. HSIAO:  I would like to ask for your permission

9   that I have a short statement I would like to say it before I

10  start answering some questions that you ask and response to

11  some answers from Mr. Go.

12          THE COURT:  That's fine.  Absolutely.

13          MS. HSIAO:  Thank you, so much.

14          (Court and law clerk confer.)

15          THE COURT:  Go ahead.

16          MS. HSIAO:  I am a legal immigrant.  To most people

17  within the sound of my voice, that may not mean much.  Perhaps

18  because most of people in this courtroom and in this country

19  are citizen.  But this is my life, a immigrant, a legal

20  immigrant who has follow every law and have tried to overcome

21  every hurdle that the government has placed before me to

22  achieve the American dream.

23          A legal immigrant who within the last two weeks has

24  been seeing headlines such as American citizens brings passport

25  with them every day, American citizen hold in custody

1    mistakenly believe they are illegal immigrant.

2            This is the uncertainty that I face.  I pray that the

3    Court understands under this current climate the ramifications

4    of even being suspected as an undocument immigrant.

5            I play by rules.  I am legally here.  I have paid my

6    tax.  I have work hard.  I have helped to train more than 800

7    American doctors to serve this country.  I have worked myself

8    indispensable to my employer, yet I am, in the words of the

9    Department of Labor of the United States, not a U.S. worker.

10           I did not and do not ask for any special treatment.

11   What I ask for is fairness.  The government has not been fair.

12   In fact, I will go beyond that and state that the defendant has

13   been unlawful, corrupt, and dishonest.

14           For all the talks about illegal immigrants' right,

15   here I am more than ten years legally fighting for what it is

16   fair, facing a defendant who has shown contempt to this Court,

17   who basically say there's no harm to her, because she's not

18   part of the party.  I will say it again.  I do not believe that

19   this Court should be a lawyer's playground.  This is my life.

20           Since filing the complaint in December of 2018, every

21   benefits of the doubt has been offered to the defendant despite

22   the evidence provided in the very first complaint.  The

23   goalpost has been moved and a standard expect of me raise to

24   the bar of as a person who has a law degree.

25           The last briefing has allowed the defendant to have

1    the last word of my motion.  I keep my head up.  I have been

2    nothing but patient, honest, and straightforward.  However, I'm

3    literally seven weeks away from having my world turn inside

4    down.

5             As I say, I do not know the nuances and the dynamics

6    of regulations (phonetic) in the court.  But my limited

7    experience tells me this cannot be healthy forum.  An argument

8    must be advanced by keeping an open mind, taking the other

9    side's honest argument and building on an understanding of

10   that.  The discussion will not progress if one does not.  And

11   then this is precisely what I have done.

12            I have taken every case law, and I read every single

13   one as clear as possible, as my second language is English, to

14   understand it before it was cite on my briefing, on my

15   complaints.

16            And neither did I minimize it as the defendant state.

17   In fact, the defendant is the one who was silent to the case I

18   have brought up in my first opposition.  As a person who work

19   in the IT industry, it seems like the cases cited by the

20   defendant are merely doing some keyword search through their

21   spreadsheet or database, because they don't take the case in

22   content.  They -- they just take certain words from the case

23   and not really understand fully of entire case what it was

24   talking about before citing.

25            Repeating the different arguments I have already

1    addressed does not advance the discussion.  And, in fact, none

2    of the cases that defendant cite talks about labor

3    certification.

4            That's the short statement I would like to put on the

5    record, and I'll thank you so much for letting me have the

6    opportunity to talk about it.

7            THE COURT:  Okay.  Thank you.

8            MS. HSIAO:  Thank you.

9            MR. YEE:  Your Honor, if I may interrupt, I just have

10   to point out to the Court, even though the plaintiff is pro se,

11   she's brought her cellphone up to the podium.  I don't know if

12   it's on.  There is a rule within the court that she has to ask

13   permission to have it in the courtroom, and certainly it

14   shouldn't be on the podium.

15           THE COURT:  Thank you for pointing that out, Mr. Yee.

16           Ma'am, is your cellphone recording this in any

17   fashion?

18           MS. HSIAO:  I'm sorry?

19           THE COURT:  Is your cellphone that you have with you

20   recording this hearing --

21           MS. HSIAO:  No, it's not.

22           THE COURT:  -- in any fashion?  Okay.

23           MS. HSIAO:  It's not.

24           THE COURT:  Okay.  I'll ask you to just return it to

25   the table, please.

1          MS. HSIAO:  Okay.

2          THE COURT:  Thank you.

3          Thank you, Mr. Yee, for pointing that out.  Thank

4     you.

5          That is a frequent concern of the Court because we

6     have very strict rules about what sort of recording can happen

7     in court.

8          MS. HSIAO:  I understand.  No, it's not recording.

9          THE COURT:  So thank you so much for your speech.

10    It's very eloquent.  I want you to know as well that as far as

11    pro se parties go, you're definitely on the far more

12    sophisticated end of the spectrum --

13         MS. HSIAO:  Thank you.

14         THE COURT:  -- of the pro se parties who appear in

15    front of me.  So I appreciate that you have done a lot of very

16    deep research.  You've spent a lot of time.  And I also want

17    you to understand that I -- although I am not in your situation

18    and I cannot tell you that I understand what it feels like to

19    be in your shoes, that I want you to know that I -- I am

20    sympathetic to the situation you find yourself in.  Okay?

21         MS. HSIAO:  (Nods.)

22         THE COURT:  With that, I want to ask you some

23    questions, though, and --

24         MS. HSIAO:  (Nods.)

25         THE COURT:  -- because at the end of the day, my job

1   is to do what the law tells me to do, right?

2        MS. HSIAO:  (Nods.)

3        THE COURT:  If I did everything based on sympathy,

4   then there would be no rule of law.

5        MS. HSIAO:  I understand.

6        THE COURT:  Right.  The first question I have is:

7   How do you respond to the government's position that you or

8   your employer could have taken other avenues, other steps after

9   the en banc petition was denied, to either keep you employed or

10  to keep your status here in the United States?  Because that

11  goes directly to the question of whether or not the injury is

12  traceable to the challenged action of the defendant.

13       MS. HSIAO:  Thank you, Your Honor.

14       So in the administrative BALCA steps, after the

15  employer petition to send the appeal to BALCA, generally that's

16  the final answer from the agency.  However, my employer go

17  beyond that and actually went to Judge Henry in DOL and ALJ,

18  asking for her -- his reconsideration for reopen and consider

19  the case because of all the facts that would point out that the

20  considering to make a decision on my case was based on the

21  wrong facts.  But Judge Henry didn't really consider it.  And

22  so for my employer, they have been gone beyond and above.

23       THE COURT:  Am I right that after what I'll

24  characterize as the defeat in front of the BALCA, that your

25  employer -- or even prior to that, even before you reached the

1 BALCA, that your employer could have submitted another labor
2 certification application that corrected the errors that were
3 found by the Department of Labor?

4      MS. HSIAO:  No, Your Honor, they cannot.

5      THE COURT:  Okay.

6      MS. HSIAO:  First of all, this job position I'm in
7 right now, it's a state position.  As Mr. Go mentioned many
8 times during his talk, generally speaking, labor certification
9 is done for market testing.  But in my case, this is a bona
10 fide position.  This is not a market testing.  And I had been
11 point out this many, many times, both in different documents
12 pertaining to BALCA and also to the Court here.

13     THE COURT:  Okay.  And the term "bona fide" position,
14 is that a term within the statute or the regulations?

15     MS. HSIAO:  I believe it's in regulation.

16     THE COURT:  Okay.  So you're saying that there's a
17 difference between your type of labor certification than
18 others, which are market testing?

19     MS. HSIAO:  No, that's not what I mean.  What I mean
20 is labor certification generally is done for market testing,
21 which means the employee is already in the position and they
22 want to apply for permanent residency for the employee.

23     So Department of Labor prescribed this rule that
24 says, okay, you want this -- your employee to be able to become
25 U.S. citizen, you have to post out a (gestures), kind of like

1  fake job posting to do market testing to see if there is any

2  other available, willing, and can do this job and available

3  from the United States American citizen.

4         THE COURT:  Right.

5         MS. HSIAO:  And then from there, they move on to

6  provide different documents to Department of Labor.

7         THE COURT:  Right.

8         MS. HSIAO:  However, for my position, it's not a

9  market testing.

10        THE COURT:  Why isn't it for your position?

11        MS. HSIAO:  Because I -- it's a brand-new position

12  that time, and I have to apply as a real applicant.  I wasn't

13  sit in that position.

14        THE COURT:  Okay.  I think I understand.

15        MS. HSIAO:  Yeah.

16        THE COURT:  And let me tell you what I think my

17  understanding is.  And you tell me if it is on point with what

18  you're saying.  What I hear you saying is that the position

19  that they applied for, or related to your labor certification

20  application, was a position that you weren't in at that time.

21        MS. HSIAO:  That's correct.

22        THE COURT:  Okay.  It was a brand-new position.

23        MS. HSIAO:  (Nods.)

24        THE COURT:  Right?

25        MS. HSIAO:  That's correct.

1           THE COURT:  Okay.  Even assuming that that's true --
2  and I have no reason to not assume it's true --
3           MS. HSIAO:  Mm-hmm.
4           THE COURT:  -- why isn't the same market testing
5  process required, or why isn't what they -- the steps they went
6  through part of a market testing process?
7           MS. HSIAO:  The step the employer went through is
8  exactly as market testing, but the big difference is for market
9  testing, the beneficiary for the application is already there
10  in the petition.  So even the market testing fail, they
11  basically just finish their H-1B visa appeal whenever it's
12  finished and then leave the country, because H-1B visa only
13  allows you to work six years here in the United States.
14           But for my situation, if I didn't receive the job, I
15  didn't really lose anything at that moment because I was on a
16  different position back then.  But I lose opportunity for
17  pursue to be American citizen and apply for permanent
18  residency.
19           THE COURT:  Okay.  Okay, I understand.  I understand
20  what you're saying.  Okay, thank you.
21           MS. HSIAO:  Thank you.
22           THE COURT:  Is Mr. Go correct that after the BALCA
23  decision came down that you could have pursued other avenues
24  regarding your status in the United States?
25           MS. HSIAO:  That's not true.

1          THE COURT:  Okay.

2          MS. HSIAO:  Simply because once the denial from the

3   BALCA, and that's the end from the agency, that's the final

4   decision, employer generally will just tell the employee that

5   until your visa is done, then you have to leave the country.

6          THE COURT:  Okay.

7          MS. HSIAO:  I cannot move my job to a different

8   employer because I'm not on a regular H-1B six years limited.

9   I'm on the 13th year right now.  Any -- any visa allocated to

10  me after six years or seven, eight, nine, ten, eleven, twelve,

11  this is because I'm in the process with my employer that I have

12  a permanent labor cert -- the permanent residency application

13  going on in Department of Labor, and that's why it allows me to

14  renew the visa one year.

15         THE COURT:  Okay.

16         MS. HSIAO:  And one year based on the annual.

17         THE COURT:  Okay.  In terms of the question of

18  whether or not the injury will be redressed by a favorable

19  decision or that it's likely that the injury will be redressed

20  by a favorable decision, if I remand to the BALCA, what exactly

21  is it that you want me to direct them to do?

22         I understand that you are -- one of the things is to

23  direct them to reopen the case, right?

24         MS. HSIAO:  Administratively, yes.

25         THE COURT:  Administratively open the case.

1           Isn't that really functionally -- you're asking me to

2   direct them to reopen the case and issue the labor

3   certification, reverse --

4           MS. HSIAO:  No -- I'm sorry.  I'm sorry, Your Honor.

5           THE COURT:  Reversing its decision?

6           MS. HSIAO:  That would be the best option.  However,

7   in my injunction what I'm asking for is for Department of Labor

8   or ALJ to classify my case as opened until my case here in this

9   court is being able to resolve.  Because without -- without me

10  to be able to stay in this country, this case will be

11  dismissed.  It will be nowhere to go.  And it will also moot

12  my -- it will also moot my prayers in my amended complaint.

13          THE COURT:  Okay.  And unless I actually direct it to

14  reverse its decision, reopening the case doesn't necessarily

15  mean that you get a favorable outcome, right?

16          MS. HSIAO:  I'm sorry?

17          THE COURT:  Unless I direct the BALCA to reverse its

18  decision and direct the Department of Labor to reopen the case,

19  that doesn't automatically mean that you're going to get a

20  favorable outcome, correct?

21          MS. HSIAO:  That's correct.

22          THE COURT:  Okay.  One of the things that you say in

23  your pleadings is that the -- quote, "the labor certification

24  process is not discretionary."  And I'm wondering what you base

25  that statement on.

1          MS. HSIAO:  Thank you, Your Honor, for that question.

2     Prior to PERM from 2002, the labor certification is

3     case-by-case based.  So certifying officer or the government

4     agency, they have to go read the case one by one, decided if

5     this is the situation fit in the country's need.  And so it

6     depends on how they feel at that moment.

7          But because of the numbers of labor certificate

8     application goes up, to the point that is so overwhelming to

9     the agency, and that's why they start creating the PERM

10    process, to create these specific rules that if you fit in the

11    rule one by one electronically --

12         THE COURT:  I'm sorry.  If you fit in the what?  In

13    the law?  Is that what you said?

14         MS. HSIAO:  In the regulations.

15         THE COURT:  In the regulations.

16         MS. HSIAO:  Yeah, because it was a creation by

17    Department of Labor.

18         THE COURT:  Okay.  So -- sorry, so you were saying

19    that if you fit in the regulation?

20         MS. HSIAO:  (Nods.)

21         THE COURT:  One by one?

22         MS. HSIAO:  And if the employers follow all the rules

23    and regulations prescribed by the Department of Labor, then

24    they will provide the labor certification to the -- application

25    to the beneficiary you are looking for.

1                THE COURT:  Okay.

2                MS. HSIAO:  And so that's why, because it's very

3       specific rule written down by the defendant Department of Labor

4       needs not discretionary.

5                THE COURT:  Okay.

6                MS. HSIAO:  There is no generally human thoughts are

7       involve in the decision.  It's basically processed by rules

8       that if you meet this, you meet this one, two, three, four,

9       five, okay, then you are good to go.

10               THE COURT:  Okay.  With regard to that, I understand

11      your argument with regard to the inconsistency between the two

12      findings regarding the website and the inadequacy of what was

13      posted on the website.  Let's -- assuming that that is

14      inconsistent, isn't it -- doesn't that mean that there's a real

15      possibility that at least one of those is correct?

16               MS. HSIAO:  Don't you -- I'm sorry.  Thank you, Your

17      Honor.

18               Don't you find it interesting that Mr. Go didn't

19      respond to your question regards to website posting directly?

20               THE COURT:  Well, I'm the one asking the questions.

21               MS. HSIAO:  I'm sorry.

22               THE COURT:  You don't get to ask me questions.

23               MS. HSIAO:  Yeah, I'm sorry.

24               THE COURT:  That's fine.  But I mean that's one of

25      the concerns I have here, is, okay, let's even assume it's

1    inconsistent, that those are two inconsistent findings.

2    Doesn't -- isn't there a reasonable interpretation that at

3    least one of those findings is correct?

4                 MS. HSIAO:  Yes.

5                 THE COURT:  Okay.  Thank you.

6                 With regard to the position that you're not an

7    American worker -- and I read your briefing on that, that

8    you're saying I am an American worker, I've been here for so

9    long, I've trained so many doctors.  I think a moment ago you

10   said it was 800 doctors to serve this country?

11                MS. HSIAO:  (Nods.)

12                THE COURT:  But isn't there in the regulations or in

13   the rules the definition of an American worker?  Am I right

14   about that?

15                MS. HSIAO:  Yes.

16                THE COURT:  Okay.  And do you agree that you fall

17   outside that definition?

18                MS. HSIAO:  No, I do not.

19                THE COURT:  Okay.

20                MS. HSIAO:  On the last point bullet on that

21   regulation it clearly said that a non-immigrant have a status

22   can stay here by applying to the Attorney General.  Which means

23   the Attorney General provide me the H-1B working visa, I'm

24   considered part of the U.S. worker.

25                THE COURT:  Okay.  So you're -- but that requires

1   approval of the Attorney General, right?  Or --

2          MS. HSIAO:  Well, USCIS and Department of Labor both

3   work under Attorney General.  So he give the power to them

4   to --

5          THE COURT:  Right.  That's what I mean.

6          MS. HSIAO:  Yeah.

7          THE COURT:  Is that that requires a benefit to have

8   been conferred upon you by the USCIS or status to have been

9   conferred upon you --

10         MS. HSIAO:  Yes.

11         THE COURT:  -- right?  Okay.

12         And finally, how do you respond to the argument that

13   it was -- it's the expiration of your visa and not the

14   government's conduct that causes your injuries here, that

15   it's -- that, really, the visa expiration is what is causing

16   the injuries, not the government's conduct with regard to your

17   labor certification application.

18         MS. HSIAO:  I'm sorry.  Your Honor, can you --

19         THE COURT:  Sure.  So what I interpret the government

20   to be saying -- and Mr. Go can correct me if I'm wrong when he

21   steps up here next -- is that really the problem or the cause

22   of the injury isn't what happened in the labor certification

23   process; it's actually just the expiration of the visa.  So how

24   do you respond to that?

25         MS. HSIAO:  That's not true.  Without -- what the

1  whole situation is because of the misconduct, misconduct and

2  the denial for the labor certification, that I will not be able

3  to pursue for permanent residency application as well as losing

4  my job.

5          THE COURT:  Okay.

6          MS. HSIAO:  So just say because I do not go -- I'm

7  not going to have my visa will be the only injury, that's not

8  true.  It's because of the defendant's action to bring it to

9  this point.

10         THE COURT:  You're saying that you would have your

11 visa or you would have your status if the defendant had behaved

12 differently?

13         MS. HSIAO:  Exactly.

14         THE COURT:  Okay.  All right.  Thank you.

15         MS. HSIAO:  Thank you.

16         THE COURT:  I have no further questions.  You'll have

17 one more opportunity, Ms. Hsiao, to respond to whatever we

18 discuss.

19         MS. HSIAO:  Thank you so much, Your Honor.

20         THE COURT:  You don't need to take it.  But you may

21 have a seat.

22         MS. HSIAO:  Thank you.

23         MR. GO:  Your Honor, I'd like to make a few quick

24 points.

25         THE COURT:  Yes, please.  Thank you.

1    MR. GO:  Your Honor, just to clarify, so, you know,

2    DOL's not precluded from filing another labor certification

3    application.  I think that's something that you had mentioned.

4    THE COURT:  I'm sorry.  Could you say --

5    MR. GO:  DOL -- I'm sorry.  The employer is not

6    precluded from filing another labor certification application

7    just because, you know, they've -- they filed this one.

8    THE COURT:  You know, that -- because I'm hearing two

9    different positions by the parties on this as well as the

10   opportunity for other immigration status, I am going to ask the

11   parties to submit also by 4:00 p.m. on Tuesday, and this

12   relates to you as well, Ms. Hsiao, just a two-page brief

13   pointing me to the law in this arena.  So whatever immigration

14   law or labor certification law stands for the proposition that

15   you just said.

16   MR. GO:  Okay.

17   THE COURT:  That the employer could have issued

18   another application or tried to correct the errors in the

19   application.  Because she's -- Ms. Hsiao's saying that they

20   couldn't, right?

21   MR. GO:  Sure, Your Honor.

22   THE COURT:  And similarly, any immigration law that

23   would suggest that she had other avenues to maintain her status

24   or seek status in this country other than the labor

25   certification.

1          MR. GO:  Okay.

2          THE COURT:  I think that really goes to the question

3     of whether or not the injury is traceable to this event.

4     Because if there were decisions made along the way by her

5     employer, other than what's already been discussed, obviously,

6     that might be something else for the Court to consider.

7          MR. GO:  Sure.  Your Honor, I think -- I don't

8     think -- I think what you'll find is that there's not

9     necessarily a law that says, you know, if you have a labor

10    certification that's at issue you cannot file.  So without any

11    law restricting that, there's no law saying you cannot file

12    another labor certification application or you can.

13         THE COURT:  And that's fine.

14         MR. GO:  Okay.

15         THE COURT:  Yeah.

16         MR. GO:  So it might just well be a statement that

17    there's no law that, you know, restricts something.

18         THE COURT:  That's fine.

19         MR. GO:  Okay.

20         THE COURT:  I'm sure it's like any sort of

21    application where, you know, you can try as many times as you

22    want.

23         MR. GO:  Yes.

24         THE COURT:  Or it may or may not be.  I don't know.

25         MR. GO:  Sure.  Sure.  On that same token, I just

1  also want to point out that plaintiff is not precluded, you

2  know, from applying for any other avenues for immigration

3  relief.  And that would also be on the same token.  There's no

4  law saying that because you're pursuing this, you know, you

5  have this labor certification application issue, that doesn't

6  preclude you from doing anything else.

7            THE COURT:  Okay.

8            MR. GO:  So --

9            THE COURT:  And it may be fine if that's in the form

10  of a statement.

11            MR. GO:  Sure.

12            THE COURT:  Or declaration attached to this brief.

13            MR. GO:  Okay.

14            THE COURT:  And so, Ms. Hsiao, just so you

15  understand, what I'm expecting from you is the law that says

16  that -- the opposite, that basically you are precluded from

17  seeking other status or, alternatively, your employer is

18  precluded from applying again, or making an effort to correct

19  the claimed error in the application.

20            MS. HSIAO:  Okay.

21            THE COURT:  All right.  Okay.

22            MR. GO:  Sure.  Your Honor, I just also want to point

23  out that the request for relief in the motion for temporary

24  injunction would result -- if it was granted, it would result

25  in her obtaining the relief that she seeks under the APA.  So

1    she's asking for the labor certification application to be

2    reopened and the A -- her relief under the APA would be remand

3    to the agency, which would be reopening the labor certification

4    application.

5          THE COURT:  Okay.

6          MR. GO:  So in essence, she would be getting the

7    ultimate relief in the motion for temporary injunction.

8          THE COURT:  Okay.

9          MR. GO:  I also just want to raise the point that

10   there is a jurisdictional issue here by -- if her motion for

11   temporary injunction was granted, and the case was reopened,

12   there would be an administrative remedy there.  And so that

13   would take the case out of the Court's jurisdiction.  So I just

14   want to point that out as well; there is an issue there with

15   her request to relief and the Court's jurisdiction, you know,

16   moving forward.

17         THE COURT:  Okay.  Thank you.

18         MR. GO:  The other point I did want to say was that,

19   you know, the -- the basis of Ms. Hsiao not being a U.S. worker

20   is, as you mentioned, based on the statute.

21         She is currently here on an H-1B temporary

22   non-immigrant visa.  And so that is why she is not considered

23   to be a U.S. worker under that definition.

24         THE COURT:  Okay.  Thank you.

25         MR. GO:  Okay.

1          THE COURT:  Sorry, if I could ask just one more
2    question.

3          MR. GO:  Sure.

4          THE COURT:  How do you respond to her statement that
5    the labor certification process is not discretionary, that
6    after PERM, it was really kind of a pro forma check-the-box
7    sort of process, where if you checked all these boxes then the
8    labor certification would issue?

9          MR. GO:  Well, Your Honor, I think that this is --
10   along the lines of what defendant said, if the -- or what
11   plaintiff has said, if the employer meets all the requirement
12   to the labor certification process, you know, checks the --
13   checks the boxes of meeting the requirements, then they will
14   get a labor certification application.

15         So if all those boxes are checked, there's not an
16   instance where DOL would say, you know, even though these boxes
17   are checked, you don't get the labor certification application.

18         So in that sense, I think that perhaps the parties
19   may be in agreement.

20         THE COURT:  Okay.  And how do you respond to her
21   statement that if it weren't for the defendant's actions then
22   she would have status, would have the labor certification,
23   would have the ability to stay in this country?

24         MR. GO:  I -- I think that is the avenue of
25   disagreement.  Because as -- as you had mentioned, and our

1    position -- you are correct on our position.  Our position

2    was -- is that it's the expiration of the visa that is the

3    source of the injuries, not this denial of a labor

4    certification application.

5              THE COURT:  Right.  Her response to that --

6              MR. GO:  Yeah.

7              THE COURT:  -- would be, well, it's because of the

8    government's action that my visa's expiring, right?

9              MR. GO:  But not only that, like if the labor -- also

10   if the labor certification application was approved, that

11   doesn't mean that she's going to get her ultimate relief.  And

12   we explain that in our papers.

13             The -- that does not mean that her -- her petition

14   will be approved.  That will not mean -- that does not

15   necessarily mean that she will get the visa.  Those require

16   additional steps and requirements that need to be fulfilled,

17   and we have no idea whether the employer or -- or the plaintiff

18   would be able to fill those requirements.

19             THE COURT:  So Steps 2 and 3 are not -- excuse me.

20   Steps 2 and 3 are discretionary?  Or are they similar box-

21   checking steps?

22             MR. GO:  I believe there is some discretion there.

23   Yes.  I mean especially in terms of the visa, that is -- that

24   is discretionary.

25             THE COURT:  Right.  And that's within the State

1    Department?

2              MR. GO:  Yes.

3              THE COURT:  Okay.  And that's the third step?

4              MR. GO:  Yes.

5              THE COURT:  Okay.  Thank you.

6              MR. GO:  All right.  Thank you, Your Honor.

7              THE COURT:  Ms. Hsiao?

8              MS. HSIAO:  May I bring my laptop with me?

9              THE COURT:  Sure.

10             MS. HSIAO:  Thank you.

11      Thank you.

12             THE COURT:  Okay.  You may proceed.

13             MS. HSIAO:  The APA 703 allows this Court --

14             THE COURT:  If you could slow down --

15             MS. HSIAO:  Okay.

16             THE COURT:  -- as you read.  It's a natural tendency

17      for everybody to read quickly.  So when you're reading, if you

18      could just slow down, please.

19             MS. HSIAO:  Thank you.

20             THE COURT:  Thank you.

21             MS. HSIAO:  The APA 703 allows this Court to issue

22      prohibitory or mandatory injunctions.  I ask for the defendant

23      to administratively reopen the case because I was trying to ask

24      for the minimum that I can to preserve the status quo and to

25      prevent irreparable harm from me being deported and being fired

1   from my job.

2          In every count, in every step in my complaint, I was

3   allowed to extend my work permit one year.  I was able to

4   extend before the original certifying officer denied

5   application.  I was able to extend when BALCA was deciding the

6   initial appeal.  And I was able to extend when BALCA was

7   deciding the en banc petition.

8          I was also able to extend when Judge Henry was

9   deciding the motion to reopen.

10          I know that I could have asked the court to vacate

11   their decision, but in my own non-lawyer-way mind, this was

12   sort of prejudice to the defendant in saying all the

13   adjudications that they have made are unfilled.

14          Reopening the case simply means they are keeping it

15   open while waiting for the judgment of this Court on the

16   merits.  If the Court feels more comfortable with the word

17   "vacate," then new certain -- the Court will certainly have the

18   power to modify the requested relief to tailor to is the most

19   needs.

20          At this point, the nexus of what I am asking for is

21   simple.  Without a legal way for me to extend my legal status,

22   the reliefs No. 1 and 2 will be moot, and the ultimate goal of

23   being able to apply for permanent residency through my

24   employment will be lost.

25          This is comparison to the defendant continuous in

1   their business of adjudicating the applications.  My request

2   for relief does not impede their responsibilities.

3           I'm concerned that what the USCIS lawyer and the

4   defendant lawyers have state, my employer's sponsorship of

5   extending my visa has had no problems for the past 13 years,

6   for the people representing the same agency that rejects or

7   approves extension of visa to state that it is productive

8   (phonetic) and it will be approved makes me fearful of what

9   could be going on behind the thing.

10          I therefore find it is important to at that very last

11  state that for the record it seems like defendant is

12  representing the interest of parties not before this Court.

13          Further, theirs is a textbook case where serious

14  questions exist as to the merits because a defendant do not

15  have any case remotely on point.

16          THE COURT:  Which parties do you think they're

17  representing?

18          MS. HSIAO:  USCIS, which is the agency approve or

19  deny the visa.

20          THE COURT:  Okay.

21          MS. HSIAO:  And on different briefings throughout

22  this entire case, there are actually some mistakes they put

23  defendant as US -- USCIS on the paper.

24          THE COURT:  Okay.

25          MS. HSIAO:  Thank you, Your Honor.

1          THE COURT:  All right.  Thank you.

2          MS. HSIAO:  I want to respond to one thing that

3    Mr. Go brought up, if that's okay.

4          THE COURT:  Sure.

5          MS. HSIAO:  Again, back to the U.S. worker, yes, I am

6    the H-1B visa, which is for non-immigrant.  However, as have

7    been explained previously, H-1B visa is only for six years.  A

8    person who has -- can extend it beyond the six years is the

9    person has application in place with Department of Labor for

10   labor certification and waiting for the decision from them.

11         Without this labor certification application to be

12   presumed that I want to be American citizen in the future, I

13   will already out of this country and not be able to hold my

14   current position at the university as well.

15         THE COURT:  Okay.

16         MS. HSIAO:  So for them to say I do not have the

17   standing and also not a U.S. worker, this is really unfair.

18         THE COURT:  Okay.  Thank you.

19         MS. HSIAO:  Thank you.

20         THE COURT:  All right.

21         Thank you, everyone, for your briefing and your

22   arguments today.  I will endeavor to issue an order within the

23   next two weeks.  Today is September 6th.  We will have an order

24   issued by September 20th.  I understand the urgency of the

25   matter.

1          MS. HSIAO:  Thank you.

2          THE COURT:  And so that's why we want to act quickly.

3          All right.  Thank you, everyone.

4          MS. HSIAO:  Thank you so much.

5          THE COURT:  We are adjourned.

6          (The proceedings concluded at 10:00 a.m., on

7   September 6, 2019.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              COURT REPORTER'S CERTIFICATE

2           I, Ann B. Matsumoto, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. Sec. 753 the foregoing is a

5    complete, true, and correct transcript of the stenographically

6    recorded proceedings held in the above-entitled matter and that

7    the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9           DATED at Honolulu, Hawaii, September 13, 2019.

10

11

12
                       /s/ Ann B. Matsumoto
13                     ANN B. MATSUMOTO, RPR

14

15

16

17

18

19

20

21

22

23

24

25