Ya-Wen Hsiao
1141 Hoolai St. Apt 201
Honolulu HI 96814
808-728-2646
rabbityhsiao@gmail.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YA-WEN HSIAO,<br><br>               Plaintiff,<br><br>    vs.<br><br>AL STEWART, in his capacity as the United States Acting Secretary of Labor,<br><br>             Defendant. | CIVIL NO. 1:18-cv-00502 JAO-KJM<br><br>**SECOND AMENDED COMPLAINT**<br><br>**COMPLAINT FOR REVIEW OF ADMINISTRATIVE DECISION**<br><br>**Exhibits Attached:**<br><br>Exhibit 1 – Appeal File<br>Exhibit 2 – Email correspondence from BALCA<br>Exhibit 3 – Notice of Docketing<br>Exhibit 4 – Legal Brief Submitted to BALCA<br>Exhibit 5 – Employer Pro Se En Banc Petition<br>Exhibit 6 – First Letter from Associate Chief Judge<br>Exhibit 7 – Employer Pro Se Motion for Relief<br>Exhibit 8 – Second Letter from Associate Chief Judge<br>Exhibit 9 – Third Letter from Associate Chief Judge<br>Exhibit 10 – Internal Email Changing Substantive Rules<br>Exhibit 11 – Call to vote on instant case<br>Exhibit 12 – BALCA counsel opinion on appeals<br>Exhibit 13 – BALCA counsel opinion on H1-B holders<br>Exhibit 14 – Chief Judge to Sheinfeld regarding employment<br>Exhibit 15 – Dual Compensation Waiver approval from HR<br>Exhibit 16 – Letter from Employer regarding employment<br>Exhibit 17 – E-mail from Immigration Office of Employer |

# Table of Contents

**PARTIES** ..........................................................................................................................6

**JURISDICTIONAL STATEMENT** ........................................................................................6

**STATUTORY AND REGULATORY BACKGROUND** .........................................................7

**STANDING** ......................................................................................................................11

**FACTUAL BACKGROUND**................................................................................................14

**CLAIMS FOR RELIEF**........................................................................................................23

> **COUNT 1** - The Department of Labor, Employment and Training Agency's decision to deny and BALCA's decision to affirm the denial is an abuse of discretion in violation of the APA that has caused the Plaintiff to be deprived the opportunity to apply for permanent residence, face the imminent threat of losing her employment and becoming out-of-status...................................................................................23

> **COUNT 2** - The En Banc denial by the BALCA was in bad faith.  The procedures used were arbitrary, capricious and not in accordance with applicable laws.  The substantive En Banc procedures were changed without notice which caused an unfair and "stacked" appeals process ..............................................27

> **COUNT 3**- Violations of the Fifth Amendment. Plaintiff was denied due process when notice on substantive changes to the procedures were withheld, the case was adjudicated by a biased tribunal......32

> **COUNT 4**- The Chief Judge and chair of BALCA engaged in abusive behavior towards Plaintiff and Employer misrepresenting arguments made in the "Pro Se Motion for Relief from Order and Judgement". The order by the Chief Judge is arbitrary, capricious and an abuse of discretion which could have corrected the unlawful denial. ......................................................................................................................45

> **COUNT 5**- The multiple injustices at the hands of the Department of Labor has caused irreparable harm to Plaintiff. .........................................................................................................................50

> **COUNT 6**- The second reason for denial by the CO is not supported by the regulations as articulated by BALCA on numerous prior cases...........................................................................................52

**PRAYER**...........................................................................................................................52

**CERTIFICATION AND CLOSING** .......................................................................................54

**CERTIFICATE OF SERVICE** ............................................................................................55

# Table of Authorities

## Cases

Abboud v. I.N.S.,
   140 F.3d 843, 847 (9th Cir., 1998) ................................................................................. 12

Chang v. United States,
   327 F.3d 911, 925 (9th Cir. 2003) .................................................................................. 24

De Jesus Ramirez v. Reich,
   156 F.3d 1273 (D.C. Cir. 1998) ...................................................................................... 12

George v Napolitano,
   693 F. Supp. 2d 125, 131 (D.D.C. 2010) ......................................................................... 9

Lexmark Int'l, Inc. v. Static Control Components, Inc.,
   134 S. Ct. 1377 (2014) ............................................................................................. 11, 13

Mantena v. Johnson,
   809 F.3d 721, 731 (2d Cir. 2015) ............................................................................. 12, 13

Marshall v. Jerrico,
   446 U.S. 238, 242 (1980) .............................................................................................. 33

Mullane v. Central Hanover Bank & Trust Co.,
   339 U.S. 306, 314 (1950) .............................................................................................. 35

Patel v. U.S. Citizenship and Immigration Servs.,
   732 F.3d 633,638 (6th Cir., 2013) ................................................................................ 12

Perez v. Mortgage Bankers Ass'n,
   135 S. Ct. 1199 (2015) ............................................................................................. 27, 30

Pfaff v. United States Dep't of Housing & Urban Dev.,
   88 F.3d 739, 748 (9th Cir. 1996) ................................................................................... 38

Kurapati v. U.S. Bureau of Citizenship and Immigration Services,
   775 F.3d 1255, 1260 (11th Cir. 2014) ...................................................................... 12, 13

Rabkin v. Oregon Health Sciences Univ.,
   350 F.3d 967, 977 (9th Cir. 2003) ................................................................................. 24

Stenographic Machines, Inc. v. Regional Administrator for Employment and Training,
   577 F.2d 521 (7th Cir., 1978) ....................................................................................... 12

United States ex rel. Accardi v. Shaughnessy,
   347 U.S. 260, 268 (1954) .............................................................................................. 28

## Board of Alien Labor Certification Appeals (BALCA) Cases

Benish Corporation, 2011-PER-00510 (October 18, 2012) ........................................................ 39

CB & I, 2015-PER-00005 (December 30, 2016) ...................................................................20, 22, 40

IBM Corp, 2011-PER-01264 (August 23, 2012) ..................................................................... 24

DGN Technologies, Inc., 2012-PER-01991 (July 27, 2016) ........................................................ 44

JASS & ASSOCIATES, 2011-PER-01661 (January 16, 2015) ....................................................... 24

MSA Partners LLC, 2012-PER-01232 (November 30, 2016) ...................................................... 29

Symantec Corp., 2011-PER-01856 (July 30 2014) (En Banc) .................................................. 44

University of Hawaii, 2012-PER-02131 (November 16, 2016) .................................................. 17

University of Hawaii, 2012-PER-02131 (March 29, 2017) ........................................................ 18

University of Hawaii, 2012-PER-02131 (June 19, 2018) .......................................................... 21

University of Hawaii, 2012-PER-02131 (August 20, 2018) ...................................................... 21

## Board of Alien Labor Certification Appeals (BALCA) Memorandum

2019-MIS-00002 (December 12, 2018) .................................................................................. 29

## Statutes and Regulations

8 CFR § 204.5(d) ................................................................................................................ 7

8 CFR § 656.17 .................................................................................................................. 10

20 CFR § 18.90 – 18.95 ....................................................................................................... 31

20 CFR § 656.17(e)(1)(i) ..................................................................................................... 25

20 CFR § 656.17(e)(1)(ii) .................................................................................................... 25

20 CFR § 656.17(e)(1)(ii)(B) ................................................................................................ 15

20 CFR § 656.17(e)(1)(ii)(C) ................................................................................................ 24

20 CFR § 656.17(f)(7) .................................................................................................... 15, 44

20 CFR § 656.24(g)(2) ........................................................................................................ 16

20 CFR § 656.27 ................................................................................................................ 28

25 CFR § 700.563(a)(1) ................................................................ 34

25 CFR § 700.563(a)(2) ................................................................ 34

25 CFR § 700.563(b)(3) ................................................................ 34

29 CFR § 18.10(c) ................................................................ 27, 30

29 CFR § 18.93 ................................................................ 39

5 USC § 550 et seq. ................................................................ 11, 27, 29

5 USC § 554 (d)(2) ................................................................ 35

5 USC § 701-706 ................................................................ 7

5 USC § 702 ................................................................ 6, 13

5 USC § 706 ................................................................ 10, 13

5 USC § 2635.401 ................................................................ 34

5 USC § 2635.402 ................................................................ 34

5 USC § 2635.502 ................................................................ 34

8 USC §1182(a)(5) ................................................................ 13

8 USC § 1182 (a)(5)(A) ................................................................ 9

8 USC § 1182(a)(5)(iv) ................................................................ 13

8 USC § 1184 (b) ................................................................ 8

8 USC § 1255 (c) ................................................................ 8

18 USC § 207 (a)(1) ................................................................ 34

18 USC § 207 (a)(2) ................................................................ 34

18 USC § 207 (c) ................................................................ 34

18 USC § 208 (a) ................................................................ 34

28 USC § 1331 ................................................................ 6

28 USC § 2201-2202 ................................................................ 7

FRCP 60(b)(5) ................................................................ 40

## Federal Register Publications

80 Fed. Reg. 28767 ................................................................ 40

## PARTIES

Plaintiff Ya-Wen Hsiao is an individual domiciled in the city of Honolulu, Hawaii. Plaintiff resides at 1141 Hoolai Street, Apt. 201, Honolulu, Hawaii 96814. Plaintiff's telephone number is 808-728-2646 and her e-mail address is [rabbityhsiao@gmail.com](mailto:rabbityhsiao@gmail.com).

Plaintiff has been living in Hawaii for 15 years, since August of 2003.

Plaintiff Ya-Wen Hsiao is legally employed by the University of Hawaii (Employer) though an H1-B visa since 2006. The six-year limit for her H1-B expired in 2012 and an H1-B extension has since been granted by the USCIS on a yearly basis as opposed to the three-year basis because the Labor Certification before the DOL has been pending final agency action since 2011.

Plaintiff Ya-Wen Hsiao is the sole beneficiary specifically identified by the Labor Certification application by the Employer.

Plaintiff's current H1-B visa expires on November 1, 2019. After this date, she will be out-of-status and be considered an illegal immigrant, will be unemployed and be subject to deportation and a 10-year bar from the United States.

Defendant Al Stewart is sued in his capacity as the Acting Secretary of Labor for the United States of America.

## JURISDICTIONAL STATEMENT

The Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

The Court has personal jurisdiction over the Defendant because this lawsuit seeks review of an administrative decision by the United States Department of Labor.

This Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. § 701-706, 28 U.S.C. § 2201-2202

## STATUTORY AND REGULATORY BACKGROUND

The Immigration and Nationality Act provides a three-step process for aliens who are already admitted into the country to adjust their status to that of a lawful permanent resident. See https://www.uscis.gov/green-card/green-card-processes-and-procedures/adjustment-status

The INA grants Aliens who are on H1-B visas, 3 years of permission to work in the United States, which is renewable once, which extends the H1-B visa to a total of 6 years.

Granted by statutes in the INA, the Alien may adjust their status to that of a lawful permanent resident in a number of ways, one of which is an Employment based petition which starts with the Labor Certification application by the Employer. After the Labor Certification Application is approved by the DOL, the Employer then files a I-140 petition for the Alien. After approval of the I-140, the Alien then waits for her "priority date" to be current due to the limited number of immigrant visas available annually. When the non-citizen's "priority date" becomes current, the alien may then file an I-485 petition for adjustment of status to that of a lawful permanent resident. The priority date for the alien is determined by the date on which the Department of Labor accepts the filing of the Labor Certification Application. 8 C.F.R. § 204.5(d) The alien may then apply for citizenship 5 years after the approval of the I-485.

There is no specific visa for an alien who is in the process of gaining an immigrant petition. H1-B is considered a "dual-intent", precisely because aliens who are typically intending to permanently immigrate to the United States start with receiving their H1-B then parlaying it to the Labor Certification process. This intent has been long recognized by the Government and is clearly demonstrated at 8 USC § 1184 (b) which excludes H1-B holders from having a nonimmigrant "intent" in applying for non-immigrant status. The pertinent part of which partly states:

"Every alien (other than a nonimmigrant described in subparagraph (H)(i) or (L) of Section 101(a)(15)) shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 101(a)(15)."

At the end of the validity of the H1-B, the alien is required to leave the country for one year. If the alien does not, the alien will accrue "illegal presence" from the first day of expiration of status, which subjects her to among other things, deportation and a 10-year bar from entering the United States and the permanent ineligibility to apply for lawful permanent status. 8 U.S.C. § 1255(c).

The six-year limitation applies to the alien, not to the employer. The six-year validity of the H1-B does not reset when an alien changes employer. The alien is permitted to change jobs while on H1-B, but the alien will need to apply for the visa again, and the new employer will need to go through the regulatory process such as applying for a new "Labor Condition Application" (LCA) with the Department of Labor, wait for that to be approved, and as well as payment of fees.

If the alien is beyond the 6-year limit and is on an annual renewal with the USCIS, there is no conceivable way to move to another employer. The alien is tethered to the Employer who filed for the Labor Certification Application until she receives the approval for I–765 Application for Employment Authorization or the approval for the I-485 in changing her status to a lawful permanent resident (green card holder). Leaving the employer who filed the Labor Certification Application would mean the Labor Certification Application would be withdrawn and the employer certainly cannot move on to filing the I-140 for the alien because he/she is no longer employed with them. (George v Napolitano, 693 F. Supp. 2d 125, 131 (D.D.C. 2010)).

In October 17, 2000, Congress passed the American Competitiveness in the Twenty-first Century Act (AC21).

AC21 section 106 requires the Attorney General to extend the validity of aliens who are in H1-B status in one-year increments if more than 365 days have elapsed since the filing of a labor certification application on the alien's behalf.

AC21 section 106 also amended 8 USC § 1182(a)(5)(A) to add the following clause:

"(iv) LONG DELAYED ADJUSTMENT APPLICANTS- A certification made under clause (i) with respect to an individual whose petition is covered by section 204(j) shall remain valid with respect to a new job accepted by the individual after the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the certification was issued."

8 USC § 1182(a)(5)(A) states that the Secretary of Labor must certify that:

(I) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of an alien described in clause (ii)) and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and

(II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

The criteria that the Employer must meet to demonstrate that there are not sufficient workers able willing and qualified and that the employment of such alien will not adversely affect

the wages and conditions of workers in the United States similarly employed and the regulations governing them are not by statute but by regulations that are purely the creation of the DOL.

While visa requirements for issuance of other visas such as the H1-B visa is generally specified by statute and inadmissibility conditions are described with particularity, the determination of whether the Secretary of Labor issues a labor certification is governed by 8 C.F.R. § 656.17.

The Labor Certification regulations provide for an appeal process to the Board of Alien Labor Certification Appeals (BALCA) but there are no provisions for En Banc review by the BALCA in the regulations. By regulation, the decision by the BALCA is considered the final decision by the Secretary of Labor.

If the Labor Certification is denied by final agency action, the Employer is barred from filing an I-140 for the alien beneficiary. If the alien is already employed by the Employer and the alien is beyond the 6-year limit, this would also bar the Employer from extending the alien's H1-B status and would be essentially forced to lay off the Employee.

The Administrative Procedures Act ("APA") states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

The statute at 5 U.S.C. § 706 of the APA enumerates the legislatively conferred causes of action.

Federal government agencies are required to comply with the Administrative Procedure Act (APA), 5 U.S.C. § 550 et seq., when promulgating or changing legislative rules and regulations.

CIVIL NO. 1:18-cv-00502 JAO-KJM

## STANDING

Standing, in the APA context, is not an "especially demanding" test. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389, 188 L. Ed. 2d 392, 405, (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225, 132 S. Ct. 2199, 2210, 183 L. Ed. 2d 211, 225 (2012)). "The test forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225, 132 S. Ct. 2199, 2210, 183 L. Ed. 2d 211 (2012) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 757, 93 L. Ed. 2d 757 (1987)).

Plaintiff is the direct named beneficiary of a Labor Certification Application by the Employer. The unlawful denial of the Labor Certification Application has deprived her of the opportunity to apply for permanent residence status and even citizenship. The denial of the labor certification application also imminently threatens her employment and therefore her livelihood.

As the person who stands to benefit from being permitted to become a lawful permanent resident and to be able to work in the United States, the Plaintiff clearly has suffered and continues to suffer injuries caused by the actions of the DOL. This Court has the power to redress and stop these injuries through the APA.

Whether a litigant has standing to sue in federal court is not dependent on any agency regulation.

As the beneficiary of the regulations promulgated by the DOL, the Plaintiff also has constitutional standing to challenge these unlawful appeal procedures by the DOL as she is a non-

citizen and the regulations have a direct effect on her current and future employment.  As explained by the Ninth Circuit in *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998), an immigrant beneficiary has standing to challenge the denial of an immigration-related petition submitted by a petitioner when that beneficiary "is more than just a mere onlooker; it is her own status that is at stake when the agency takes action" on the petition.  Similarly, the Sixth Circuit explained that an immigrant beneficiary has standing under these circumstances because the loss of an opportunity to become a permanent resident is an injury traceable to the government.  *Patel v. U.S. Citizenship and Immigration Services*, 732 F.3d 633, 638 (6th Cir. 2013).  And as the Eleventh Circuit held, an immigrant beneficiary's loss of the ability to apply for adjustment of status due to the government's actions similarly confers constitutional standing upon that beneficiary.  *Kurapati v. U.S. Bureau of Citizenship and Immigration Services*, 775 F.3d 1255, 1260 (11th Cir. 2014).  *See also Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015). Finally, both the DC Circuit in *De Jesus Ramirez v. Reich,* 156 F.3d 1273 (D.C. Cir. 1998) and the Seventh Circuit in *Stenographic Machines, Inc. v. Regional Administrator for Employment and Training,* 577 F.2d 521 (7th Cir., 1978) both plainly found that alien beneficiaries for Labor Certification has standing.

Similarly, Plaintiff has prudential standing to bring this lawsuit, because she lies within the zone of interests of the applicable statutes.  The Labor Certification directly benefits her by allowing Plaintiff to continue her employment and by making her eligible to apply for permanent residence status and even citizenship.  *See, e.g.*, *Patel v. U.S. Citizenship and Immigration Services*, 732 F.3d 633, 636 (6th Cir. 2013); *Kurapati v. U.S. Bureau of Citizenship and Immigration Services*, 775 F.3d 1255, 1261 (11th Cir. 2014); *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015).

5 U.S.C § 706 of the APA provides the causes of action. A direct application of the zone-of-interest test on the legislatively conferred cause of action and the proximate-cause requirements supply the relevant limits on statutory standing. (*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377)

However, even considering 5 U.S.C. § 702 which in part says: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a *relevant statute*, is entitled to judicial review thereof.", the Labor Certification statute at 8 U.S.C. §1182(a)(5) protecting "workers in the United States similarly employed" shows that congress was not indifferent to the interests of qualified aliens who are already in the country.

In fact, the INA was amended in October of 2000 to add the following clause at 8 U.S.C. § 1182(a)(5)(iv):

(iv) Long delayed adjustment applicants

A certification made under clause (i) with respect to an individual whose petition is covered by section 1154(j) of this title shall remain valid with respect to a new job accepted by the individual after the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the certification was issued.

This plainly shows that the beneficiaries of an employment-based petitions are part of the interests that Congress considered as this provision solely protects beneficiaries of Labor Certification Applications.

Standing as to rights protecting due process and liberty interests is guaranteed to everyone in the United States.

## FACTUAL BACKGROUND

1.      Plaintiff Ya-Wen Hsiao (hereinafter, "Plaintiff") is an "alien" within the meaning of 8 U.S.C. § 1101(a)(3).

2.      On January 13, 2011, the Employment and Training Agency (ETA) for the US Department of Labor accepted the filing of Application for Permanent Employment Certification by the University of Hawaii John A. Burns School of Medicine (hereinafter, "Employer") on behalf of Plaintiff for the position of Educational Technology Specialist.  *See* Exhibit 1 – Appeal File (AF) 148

3.      On January 18, 2011, the Certifying Officer (hereinafter, "CO") issued an Audit Notification which instructed Employer to submit documentation supporting the attestations made in the application including, among other things, recruitment documentation. *See* AF 40

4.      Employer submitted the requested information on February 16, 2011. *See* AF 37 The submission was timely and fully complied with the requested documents.

5.      On February 1, 2012, Employer requested a status update because no decision has been made for almost a year from the submission of the audit response.

6.      On February 2, 2012, Employer received a boiler plate response from the ETA stating that the case is still in process and that official correspondence would follow.

7.      On February 28, 2012, Employer received another audit request from the ETA, asking for the original response sent on February 16, 2011. *See* AF 36

8.      On March 1, 2012, Employer re-submitted a copy of the original audit response. *See* AF 35

9.      On March 23, 2012, the CO denied the application on two grounds.  The first denial cited 20 CFR § 656.17(e)(1)(ii)(B) as authority and stated: "The employer provided a document

which looks to be a word document that is titled 'Work at UH Advertisement.'  The document does not appear to be from a website nor is there any proof that the documentation was posted to the employer's website."  The second denial reason cited 20 CFR § 656.17(f)(7) as authority and stated: "The documentation provided by the employer as proof of the employer's website offers terms and conditions of employment that are less favorable than those offered to the foreign worker.  Specifically, the advertisements contain a wage of $3,684 per month, $44,220.80 per year which is lower than the offered wage, $57,194.00 per year listed in section G.1 on the ETA Form 9089." *See* AF 32-33

10.     Employer requested reconsideration on April 19, 2012 and argued with respect to the first reason for denial, that as a matter of university policy, all recruited positions are advertised on the Work at UH website.  It also provided a printout which contains the URL and print date of the advertisement as proof that it was indeed posted on the University Website during the recruitment period. *See* AF 3-5

11.     With regards to the second reason for denial, Employer pointed out that the stated authority for denial by the CO only applies to advertisements placed in newspapers of general circulation or in professional journals.  Employer further contended that the advertisement stated that the offered wage would be the "minimum wage offered." *See* AF 3-5

12.     Employer also stated that there was no salary offered to Plaintiff until after she was selected for the position as this was a bona fide recruitment as opposed to a "market test". In support of this, Employer in its request for reconsideration also included documents that illustrated the process of determining the final wage offer to the applicant after he/she is selected for the position.

13.     On April 30, 2012, the CO notified Employer that they have not overcome the deficiencies citied in the original denial determination.  *See* AF 1

14.     The CO determined that the printout containing the URL and the print date that Employer submitted with its request for reconsideration were barred by 20 C.F.R. § 656.24(g)(2) because Employer had the opportunity to submit adequate proof of the website advertisement with its audit response and failed to do so.

15.     Regarding the second reason for denial, the CO stated in part: "However, the employer's website is one part of the recruitment effort *used* by the employer to test the labor market and must therefore contain the same information required of advertisements set forth in Departmental regulations…." (emphasis added)

16.     On the same date, the CO then forwarded the case to the Board of Alien Labor Certification Appeals ("BALCA") which includes the Appeal File, but which did not include the original February 16, 2011 response. *See* AF 1 (The CO inadvertently labeled two pages as page 1 in the Appeal File)

17.     On September 7, 2012, the BALCA issued a notice of docketing and required a statement of intent to proceed. Plaintiff was named in the Notice of Docketing. *See* Exhibit 3

18.     The order required that legal briefs must be submitted within 45 days of the notice and that service must be made to other parties including the lawyer for the CO, "Counsel for Litigation at Employment and Training Services" under the Office of the Solicitor of the United States Department of Labor.  Harry Sheinfeld was the "Counsel for Litigation" during this time.

19.     On October 18, 2012, Employer's counsel submitted a legal brief.  Service was fulfilled through FedEx sending the legal brief to BALCA as well as a copy to the "Counsel for Litigation." *See* Exhibit 4

20.     In the legal brief, it was argued that the CO actually considered and acknowledged that there was a website posting since it was the basis for the second reason for denial.  The brief also contended that the Appeal File contained other evidence in the appeal file to prove that there was indeed such a website posting.  Examples of these are attestations from the immigration coordinator of the school as well as the hiring manager, pages from other website posting referring back to Employer's website posting, as well as the newspaper ad that instructs applicants to visit Employer's website for more information. These were all submitted with the response to the original audit request from the CO.

21.     Regarding the second reason for denial, Employer again stated that this was a bona fide recruitment and as such, the advertisement did not offer any terms of employment that were more advantageous to Plaintiff.  The "Notice of Filing" stated the actual offered salary after the selection process.

22.     On November 16, 2016, a three-judge panel from BALCA published a Decision and Order ("DO") affirming the denial. The plaintiff was explicitly named as the beneficiary. *University of Hawaii*, 2012-PER-02131 (November 16, 2016)

23.     The DO affirmed the denial based on the first reason and stated that because they deny based on the first reason, it was unnecessary to address the CO's second denial reason.

24.     On December 1, 2016, Employer filed a Pro Se Request for En Banc review in light of contradictory cases that BALCA has adjudicated in the past which Employer claimed have identical factors.  Employer also pointed out that the 3-judge panel has considered facts which are false.  In particular, the administrative timeline the judges considered was inaccurate and that reading the DO shows that these were not typographical errors.  Employer contended that due

process demands that correct facts be considered in the case and that there are multiple falsehoods in the DO that can be easily proven by the Appeal File. *See* Exhibit 5

25.    In the petition for En Banc review, Employer also motioned for equitable remedy due to the bias that was lobbied against the Employer stemming from the due process violation by the panel.

26.    The petition for En Banc review finally pointed out that the CO simply cannot state there was no website posting and then say that there was an error in the posting as basis for denial.

27.    On March 29, 2017, BALCA issued an "Order Denying Petition for En Banc Review". Plaintiff was explicitly named as the beneficiary. *University of Hawaii*, 2012-PER-02131 (March 29, 2017)

28.    The order appeared to be boiler plate and did not state if the "Motion for Equitable Remedy" was denied or approved.

29.    The order also did not list the names of the ALJs on the En Banc panel.

30.    Plaintiff filed a Freedom Of Information Act (FOIA) request on May 1, 2017 because after calling the OALJ and requesting the names of the Judges on the En Banc panel, the receptionist informed Plaintiff that there were no En Banc judges and it was the "Secretary to the Board" who decided the case.

31.    In a letter dated June 6, 2017, Associate Chief ALJ Paul Almanza wrote a letter to Plaintiff in response to inquiries regarding the En Banc procedures that were used at the time the En Banc petition was adjudicated.  In the letter, Judge Almanza summarized the procedure that was used at that time.  He confirmed that in the past, ALJs on the En Banc panel used a vote sheet to record a "yes" or "no" vote.  He also noted that the Order Denying En Banc Review in Plaintiff's

case did not list the ALJs who reviewed the petition.  He also confirmed that the procedures for voting En Banc are not published. *See* Exhibit 6

32.     On July 14, 2017, Employer, citing several statues under Rule 60(b) of the Federal Rules of Civil Procedure, filed a "Pro Se Motion for Relief from Judgement and Order" directly to the Chief ALJ and Chair of BALCA.  Attached to the motion was also a personal letter from Plaintiff urging the Chief ALJ to review the case. *See* Exhibit 7

33.     In the motion, Employer argued that substantive En Banc Procedures were never published, nor was Employer notified of the changes to the En Banc procedures following the docketing of the case.

34.     Employer argued that if it knew that the En Banc Procedures has changed dramatically and that it was almost next to impossible that En Banc would be granted, Employer would have initially requested reconsideration of the original Decision and Order by the 3-judge panel.

35.     Employer also pointed out that it was a mistake that the En Banc Panel never considered, and there was no evidence of consideration of the motion for equitable remedy that was articulated in the En Banc Petition.

36.     Employer again pointed out that the threshold for En Banc Review was met and there were multiple factual errors on the original Decision and Order.

37.     Employer requested that the En Banc denial and original decision and order by the 3-judge panel be vacated and the case be re-heard by a non-biased tribunal, or in the alternative, what the Chief ALJ would deem fair to the issues that were presented.

38.     Employer cited a case, CB & I, 2015-PER-00005 which had an issue date of December 30, 2016 where the very same panel reversed a denial by the CO with similar circumstances and evidence.

39.     In a letter dated July 28, 2017, Associate Chief ALJ Paul Almanza answered Employer's request for a status update stating the motion is pending before Chief ALJ Henley. *See* Exhibit 8

40.     On April 24, 2018, Plaintiff checked the status of the case through the OALJ website and was surprised to see that the status says it was "closed."   Plaintiff's husband then called the OALJ and was informed by a man named Jason Nunez that the case was indeed closed and there were no files in OALJ's possession.   It was explained to him that there was still a motion pending and that Plaintiff had Judge Almanza's letter confirming this.   Mr. Nunez requested that Plaintiff forward the letter from Judge Almanza.   After receiving the letter, Mr. Nunez responded that they needed to request the case file back from the Atlanta Center because the letter Plaintiff forwarded to him was "literally the only document" they have with regards to the instant case.

41.     On May 11, 2018, Plaintiff again requested a status update because she was due for visa renewal and USCIS requires a status confirmation from OALJ to confirm she is eligible for extension of status to permit her to continue her employment.

42.     On June 19, 2018, Kevin Koll, one of the lawyers for OALJ responded to the status inquiry forwarding a letter from Associate Chief ALJ Almanza directly to the Plaintiff at her email address, stating that the motion is pending and responding to the inquiry of whether they lost the last motion that was filed on July 14, 2017.   He stated that the motion was not lost and enclosed a copy with the email.   He stated that while the motion was not lost, the physical case file, presumably the "administrative file," was inadvertently transferred over to the Atlanta National

Processing Center and BALCA has retained electronic copies of the case's substantive documents. In the interest of efficiency, Chief ALJ Henley would also issue an order affording Employer an opportunity to resubmit the October 19, 2012 brief.  It was not clear what these "substantive documents" were. *See* Exhibit 9

43.     Chief ALJ Henley issued the order on the same day stating that Employer may submit the October 19, 2012 brief if it would like the brief to be considered during the adjudication of its Pro Se Motion for Relief from Judgement and Order.  Plaintiff then emailed a copy of the requested brief as well as mailed a hardcopy to the Chief Judge. *University of Hawaii*, 2012-PER-02131 (June 19, 2018)

44.     On August 20, 2018, Chief ALJ Henley issued an order to the Plaintiff titled "Order Denying Employer's Pro Se Motion for Relief from Judgement and Order."  The order displayed the "Notice of Opportunity to Petition for Review" which can be also found on the original Decision and Order. *University of Hawaii,* 2012-PER-02131 (August 20, 2018)

45.     The order also stated for the first time the actual procedures used for hearing En Banc cases.  Chief ALJ named the judges on the En Banc panel and stated that the position of Associate Chief ALJ for immigration was vacant at that time and therefore he served as the ninth judge in his capacity as the chair of BALCA.  The order states that two judges voted in affirmation of the denial and the remaining seven did not record a vote.  Because En Banc review procedures at that time required an affirmative support of the majority of the panel, the En Banc petition was denied.

46.     Chief Judge Henley, in the order denying the motion to reopen, enumerated the arguments it characterized that Employer made in support of its motion.

47.     In the final analysis, Chief Judge stated that the arguments were unavailing. He opined that the new En Banc procedures were not so material as to alter Employer's whole strategy of appeal.  He states that the only strategy that Employer would have made was to file its petition within 10 days of the order and that filing the petition 10 days earlier than the allotted 20 days would have had no bearing on Employer's petition.

48.     The Chief ALJ also stated that there is no regulatory or procedural requirement that an order denying En Banc petition contain substantive analysis of an employer's arguments.

49.     Finally, the Chief ALJ pointed out that the same arguments were made on the En Banc petition and the arguments were presented to the 9-judge panel in accordance with BALCA's procedures.  And no judges voted in favor of En Banc review.

50.     There was no discussion on the request to re-open based on a judgement issued on December 30, 2016 in the case of CB & I, 2015-PER-00005.

51.     Chief ALJ Henley then barred Employer from raising issues further.

52.     On August 22, 2018, Plaintiff again initiated a Freedom of Information act request for the employment records of the then-Counsel for Litigation for ETLS, Harry L Sheinfeld as well as records and correspondence with regards to the requested Administrative File which was inadvertently sent to the Atlanta National Processing Center.

53.     On October 8, 2018, Plaintiff received partial responsive documents from OALJ. The email correspondence between Carla Thomas and Kenyon McWilliams indicate that the Administrative File was lost because McWilliams could not find the administrative file.  It is not clear where OALJ sent the file but the email thread which ended on May 18, 2018, suggests that it was sent to a wrong address and the package signed for by an unknown person.  *See* Exhibit 2

54.     On November 6, 2018, the Plaintiff received a letter from the Employer stating that because they are not able to renew her H1-B nor proceed with the Application for Labor Certification, her employment will be terminated at the end of her current visa expiration which is on November 1, 2019. *See* Exhibit 16

55.     This action was filed on December 26, 2018.

56.     The Defendant filed a Motion to Dismiss on March 4, 2019 and was granted without prejudice on June 28, 2019.

## CLAIMS FOR RELIEF

**COUNT 1** - The Department of Labor, Employment and Training Agency's decision to deny and BALCA's decision to affirm the denial is an abuse of discretion in violation of the APA that has caused the Plaintiff to be deprived the opportunity to apply for permanent residence, face the imminent threat of losing her employment and becoming out-of-status.

57.     Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

58.     It is contradictory for the certifying officer to state as a reason for denying Employer's Application for Labor Certification that that there was no proof of a website posting for a position of employment, while simultaneously using the rejected evidence as a basis for another reason for denial. *See* AF 1

59.     BALCA affirmed the Certifying Officer's denial despite finding that there was a website posting.

60.     In BALCA's initial order dated November 16, 2016 on page 4, it stated: "Since the advertisement on the Employer's website contained a wage less than the offered wage as listed on

the ETA Form 9089, the CO determined that Denial Reason #2 was valid pursuant to 20 C.P.R. § 656.17(£)(7). (*See* AF at pages 1-2)." [sic]

61.    BALCA found that the advertisement was posted on the Employer's website yet affirmed the CO's finding that there was no proof of the website posting.

62.    "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 977 (9th Cir. 2003).

63.    The BALCA panel acted in an irrational manner and therefore abused their discretion. See *Chang v. United States*, 327 F.3d 911, 925 (9th Cir. 2003)

64.    The Administrative File will prove that BALCA did not consider the full administrative file when adjudicating the case and only considered evidence that the Certifying Officer presented. BALCA ignored all other evidence that proves the existence of the website posting and all other attestations in the appeal file save for a "note" from the CO that was neither dated, signed nor does it appear to be officially from the ETA. *See* Exhibit 5

65.    BALCA has conceded that the regulation at 20 C.F.R. § 656.17(e)(1)(ii)(C) is permissive and that a printed and a dated copy of a website posting is not the exclusive way of documenting this. *JASS & ASSOCIATES,* 2011-PER-01661 (January 16, 2015)

66.    BALCA has also found that proof of a website posting is satisfied when a logical nexus exists within the appeal file to reasonably assume that there was a website posting. *See IBM Corp* 2011-PER-01264 (August 23, 2012)

67.    The Employment and Training Agency's misplacement of the audit file that they requested resulted in failing to process the application in a timely manner therefore depriving

Employer the possibility of correcting the alleged deficiencies or possibly submitting a new application.

68.     The required "prevailing wage determination" which is issued by the State Workforce Agency is only valid for 6 months. An employer's recruitment efforts "expire" if they were done more than 180 days prior to the filing of the labor certification application. 20 C.F.R. 656.17(e)(1)(i) and (ii).

69.     When a government agency holds the Employers to abide strictly to its time requirements and requires "letter perfect" applications, the principle of equity should demand the same of the agency.  It is unacceptable for the agency to lose Employer's documents of support for the application, require another copy of it more than one year after and still not admit irresponsibility on their part.  The unreasonable delay in processing the application is an abuse of discretion that has injured Plaintiff by depriving Employer of the ability to correct the alleged deficiencies causing the application to be denied.

70.     The Plaintiff's "priority date" is on January 13, 2011. The date when she would be permitted to file for adjustment of status to that of a permanent legal resident. *See* AF 1

71.     The Plaintiff's priority date became current on or around ***December of 2013***. *See* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2014/visa-bulletin-for-december-2013.html

72.     Had the Employer received a lawful decision from BALCA in a timely manner (which it did not due to BALCA's unlawful actions, as previously alleged in greater detail), Plaintiff would have applied for permanent residence status, if not citizenship.  But due to the unlawfully late decision, Plaintiff lost the opportunity to apply for either status.

73.     The Employer has no means to continue the Plaintiff's employment even though it has affirmatively shown that it intends to. *See* Exhibit 16.  This is because the DOL's denial of the Application for Labor Certification prevents the Employer from extending her visa further which is has been consistently doing for the last 13 years.

74.     Plaintiff has been injured by the unlawful acts of the DOL because she can no longer renew her employment with the Employer due to those acts, as previously alleged in greater detail.

75.     Plaintiff has been injured by the unlawful acts of the DOL because she cannot apply for any other job within the United States, let alone a job that would sponsor for an H1-B visa, due to those acts, as previously alleged in greater detail.  As previously alleged, Plaintiff is beyond the 6-year limit and is on an annual renewal with the USCIS, and therefore there is no conceivable way to move to another employer.

76.     Because of the unlawful denial by the DOL, the Plaintiff is in imminent danger of losing her legal status and start accruing illegal presence and being barred from being able to adjust her status to a lawful permanent resident.  As an illegal alien, Plaintiff would be forced to leave the United States and be separated from her husband and her child.

77.     As alleged in further detail in Count 5, the unlawful denial by the DOL, and in particular the prolonged tragi-comedy of errors perpetuated by its employees (e.g., losing Plaintiff's files, arbitrarily and capriciously refusing to evaluate their prior decisions despite the fact that those decisions were obviously based on plain errors) has perpetuated untold amounts of stress upon Plaintiff over these years, with attendant physical consequences to Plaintiff's well-being.

78.     The court can remedy all of these irreparable injuries by ordering the Defendant to issue an approved Labor Certification Application to the Employer.

**COUNT 2** – The En Banc denial by the BALCA was in bad faith.  The procedures used were arbitrary, capricious and not in accordance with applicable laws.  The substantive En Banc procedures were changed without notice which caused an unfair and "stacked" appeals process.

79.     Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

80.     The Administrative Procedure Act requires substantive procedures be subject to notice and comment. 5 U.S.C § 552 and 553.

81.     In changing the procedures in January of 2015, BALCA was aware that rules that were being changed were substantive.  *See* Exhibit 10

82.     In *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015), the Supreme Court directly addressed this issue: that one tell-tale sign of a substantive rule is the act of "amending" the rule.

83.     The Supreme Court also unanimously cautioned instances when an agency decides to hide substantive rules as interpretive rules, or try to skirt rulemaking requirements. The Court stated that the regulated entities in these situations are subject to, among other things, the arbitrary and capricious standard.

84.     Rules of Practice and Procedure for Administrative Hearings before the Office of Administrative Law Judges requires notice to parties of any changes to rules and procedures. 29 C.F.R. § 18.10(c).  One of the commenters in the preamble raised the issue about how the ability of judges to modify rules without an appeal process would be arbitrary.  The response was: "The Department disagrees. First, while the case is at the OALJ, no rule may be waived, modified or

suspended without notice to the parties.  Second, doing so requires the judge to make two determinations: That the specific alteration of the rule ''will not prejudice a party,'' and ''will serve the ends of justice.'' Finally, a party may raise before the appropriate appellate authority on direct review of the final order any error in modifying a rule."

85.     The *Accardi* doctrine also provides 'that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.' Slip op. at 25, quoting *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

86.     BALCA's counsel, Harry L. Sheinfeld, who wrote the recommendation to the judges has a direct conflict of interest in any immigration case and has demonstrated bias against employers applying for PERM and H1-B holders.  Neither BALCA nor Mr. Sheinfeld disclosed this conflict.

87.     Harry L Sheinfeld was the counsel who made the recommendation to the En Banc Panel on whether to grant or deny review. *See* Exhibit 11

88.     Harry L Shienfeld was a senior attorney at the DOL Office of the Solicitor, Employment and Training Legal Services (ETLS) for more than 30 years. The ETLS has represented the Certifying Officer in 100% of PERM cases heard before BALCA. See 20 C.F.R. § 656.27

89.     The 2012 brief from the employer was addressed to the "Counsel for Litigation" when it was filed in October of 2012. Mr. Shienfeld held the title of "Counsel for Litigation" among other years, in 2012 until 2015.  He was the senior attorney overseeing all immigration cases before BALCA.

90.     A conflict of interest exists for him to be involved in any immigration case before the OALJ that was pending when he was the Counsel for Litigation.

91.     Mr. Sheinfeld has demonstrated animus towards immigrants and employers in the past where he dismissed cases before BALCA as hopeless and claiming H1-B holders are not as talented as they are portrayed to be. *See* Exhibit 12 and Exhibit 13.

92.     BALCA attempted to hide the substantive procedural change to the En Banc process.

93.     The En Banc procedures were never previously published and no notice was given to employers nor aliens who had cases pending before BALCA.

94.     The En Banc denials by a nine-judge panel did not list any of the judge's names and BALCA only started publishing the judge's names in the En Banc panel after Plaintiff inquired about this.

95.     Since the En Banc procedural change, there was at least one En Banc petition granted and adjudicated which listed the names of the judges. *See MSA Partners LLC*, 2012-PER-01232 (November 30, 2016). This case was not published on the "En Banc" Section of the website until after this lawsuit was filed.

96.     On December 12, 2018, Chief ALJ Henley and Chair of BALCA issued and published a memorandum on the "BALCA" section of the "Contact Us" on the OALJ website. See 2019-MIS-00002

97.     In this memo, BALCA again changes substantive rules in contravention of 5 U.S.C § 552 and 553.

98.     While it possibly satisfies 29 C.F.R. § 18.10(c), the substantive changes again are irreconcilable with the comment and rulemaking requirements on substantive rules imposed by the APA.

99.     Furthermore, the issuance of this memo reeks of guilt and admission of BALCA that proper notice was denied to the Employer and Plaintiff in the instant case.

100.    The En Banc procedures adopted by BALCA are *de facto* Labor Certification regulations because En Banc procedures are only afforded to immigration cases who are heard by a panel of ALJ's and does not apply to all cases heard by the Office of the Administrative Law Judges under the DOL.

101.    The change is another example of BALCA arbitrarily changing substantive rules. Attempting to skirt the notice and rulemaking requirements under the guise of "internal procedures" is the very issue that the Supreme Court has warned about in *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015).

102.    Because there was no notice to the Employer nor to the Plaintiff of substantive changes to the En Banc Process, the Employer and the Plaintiff failed to ascertain the best course of appeal of the initial denial by the original 3 ALJ panel.

103.    The Plaintiff and Employer was not aware that the En Banc Panel was not only expanded from a five-judge panel to a nine-judge panel, but that the Administrative Law Judges were allowed to be silent on votes and that silent votes are considered a "No" in deciding whether or not to grant En Banc Review.

104.    The DOL unlawfully and unfairly applied a new substantive rule retroactively to a case that was docketed before the new procedures were adopted.

105.    The Plaintiff and Employer were unaware that the counsel for the Certifying Officer was then working for the ALJ's

106.    The lack of notice of substantive changes to the appeal procedures prevented the Employer from initially asking for reconsideration from the original three-judge panel.

107.    This purposeful concealment of Harry L. Sheinfeld's involvement also prevented the Employer or the Plaintiff from raising conflict of interest issues.

108.    This conflict of interest shows bias on the part of the DOL against employers and beneficiaries of Labor Certification applications. Therefore, it would have been unsurprising that the En Banc petition filed by the Employer was not properly and objectively considered resulting in the appeal's denial.

109.    The En Banc procedures is still currently in effect and in fact have had at least 2 substantive changes within the past 6 months.

110.    The DOL continues to violate the APA by adopting a de facto Labor Certification regulation without notice and comment.

111.    The Office of Administrative Law Judges (OALJ) at the Department of Labor acted *ultra vires* in creating the "En Banc Procedures" which is applied only to certain cases heard by the OALJ.

112.    En Banc procedures utilized by the OALJ is not part of the Labor Certification Regulations nor under the Rules of Practice and Procedure for Administrative Hearings before the Office of Administrative Law Judges. 20 C.F.R. § 18.90 - 18.95

113.    As a current non-citizen worker and potentially a future beneficiary of an Application for Labor Certification, and as a non-citizen, the Plaintiff will continue to be subjected to the results of the appeal procedures unlawfully adopted by the Defendant.

114.     As previously alleged in greater detail, Plaintiff has been injured by the unlawful acts of the DOL because she can no longer renew her employment with the Employer due to those acts, as previously alleged in greater detail.

115.     Plaintiff has been injured by the unlawful acts of the DOL because she cannot apply for any other job within the United States, let alone a job that would provide a sponsor for an H1-B visa, due to those acts, as previously alleged in greater detail.  As previously alleged, Plaintiff is beyond the 6-year limit and is on an annual renewal with the USCIS, and therefore there is no conceivable way to move to another employer.

116.     Because of the unlawful denial by the DOL, the Plaintiff is in imminent danger of losing her legal status and start accruing illegal presence and being barred from being able to adjust her status to a lawful permanent resident.  As an illegal alien, Plaintiff would be forced to leave the United States and be separated from her husband and her child.

117.     As alleged in further detail in Count 5, the unlawful denial by the DOL, and in particular the prolonged tragi-comedy of errors perpetuated by its employees (e.g., losing Plaintiff's files, arbitrarily and capriciously refusing to evaluate their prior decisions despite the fact that those decisions were obviously based on plain errors) has perpetuated untold amounts of stress upon Plaintiff over these years, with attendant physical consequences to Plaintiff's well-being.

**COUNT 3** – Violations of the Fifth Amendment. Plaintiff was denied due process when notice on substantive changes to the procedures were withheld and the case was adjudicated by a biased tribunal.

118.     Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

119.   Plaintiff is the sole beneficiary of the sponsorship.

120.   Plaintiff has been served with documents of the proceedings.

121.   Plaintiff's name is displayed on every single ruling by BALCA.

122.   Plaintiff was involved with the proceedings before BALCA. In particular, she wrote a personal letter attached to the 60(b) motion by the employer. (Exhibit 7)

123.   The ORDER DENYING EMPLOYER'S PRO SE MOTION FOR RELIEF FROM JUDGMENT AND ORDER dated August 20, 2018 as the docket indicates, was addressed to her.

124.   The Plaintiff's ability to work and her status as a legal immigrant is at stake when the DOL denies a Labor Certification Application by the Employer.

125.   For the proposition that this is a proceeding between the Employer and the DOL because the Alien is not allowed to participate, that regulation is unconstitutional.

126.   "The fundamental requirement of due process is the opportunity" for an individual "to be heard at a meaningful time and in a meaningful manner." King v. Garfield Cnty. Pub. Hosp. Dist. No. 1, Corp., 641 F. App'x 696, 4 (9th Cir. 2015)

127.   "…the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001)

128.   The Plaintiff is a member of Unit 8 of the Hawaii Government Employees Association and her employment is governed by a Collective Bargaining Agreement since November 2005.

129.   She is a full-time permanent employee.

130.    She is not an "at-will" employee. She may not be terminated without cause and she may not be discriminated upon by denying her the terms and conditions of her employment due to her "immigration status". 8 U.S.C. § 1324b

131.    Her employment contract includes, among other things, "Employment Security", "bumping rights", and non-discrimination clauses. See https://dhrd.hawaii.gov/wp-content/uploads/2012/12/2013-15-HGEA-Unit-8-Contract.pdf

132.    Her ability to legally work for the Employer has been part of the terms and conditions of her employment since she was hired.

133.    Her ability to legally work for the Employer requires the Employer to continue the immigration process to facilitate the sponsorship of her visa as long as they are legally able to.

134.    "And it is well-established that a property interest created by an employment contract requiring for-cause termination is an interest protected by the federal constitution." Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 476 (9th Cir. 1991)

135.    Her CBA that guarantees that the Employer will proceed with sponsorship, her adherence to the law and intent to follow the 3-step process creates a 'legitimate claim of entitlement' that is 'grounded in the statute defining eligibility,'.

136.    The Attorney General lacks the discretion to deny adjusting an alien's status if the eligibility requirements in 8 U.S.C. § 1255(a) were satisfied. *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995)

137.    The first of those requirements is the Labor Certificate. Which is a non-discretionary application that allows her to proceed to the next step of the process and allows her to be continually employed and remain in the country while she proceeds to the next steps.

138.    The next requirement is the I-140.

139.    The I-140 is also non-discretionary if the application for the I-140 is based on an approved Labor Certificate.

140.    The issuance of the I-140 is discretionary if the application is based on a "waiver" that is granted by the Attorney General. *Sadideen v. U.S. Citizenship & Immigration Servs.*, No. CV-19-05122-PHX-MTM, at *6 (D. Ariz. July 10, 2020)

141.    8 U.S.C. § 1153(b)(2)(B)(i) gives discretion to the Attorney General for a "National Interest Waiver" in issuing the I-140

142.    A "National Interest Waiver" is typically self-filed by an immigrant.

143.    The Attorney General has the discretion to "waive" the requirement of a Labor Certificate in issuing the I-140. See *Poursina v. U.S. Citizenship & Immigration Servs.*, 936 F.3d 868, 870 (9th Cir. 2019)

144.    In contrast, because of the Labor Certificate, 8 U.S.C. § 1153(b)(3) does not give the Attorney General discretion in issuing the I-140 and is filed by the sponsoring employer.

145.    8 U.S.C. § 1153(b)(3) states: "Visas ***shall*** be made available, in a number not to exceed 28.6 percent of such worldwide level, plus any visas not required for the classes specified in paragraphs (1) and (2), to the following classes of aliens who are not described in paragraph (2):"

146.    Plaintiff is a law-abiding immigrant who has not committed any violations or engaged in criminal activity that would make her inadmissible.

147.    Her adherence to the procedures pursuant to the INA and AC21 creates a legitimate claim of entitlement of being able to legally work and stay in the country that is grounded in the statute defining eligibility.

148.    To establish a substantive due process claim, a plaintiff must (1) show a government deprivation of life, liberty, or property, and (2) allege government conduct that "shock[s] the conscience and offend[s] the community's sense of fair play and decency."

149.    A procedural due process claim has two elements: deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection.

150.    The Plaintiff has established that the DOL's denial of the Labor Certificate deprives her of her protected property interest in continued employment because her CBA ensures the terms and conditions of her employment will not be denied without cause.

151.    Her continued employment and ability to stay in the US may only legally continue as long as the Employer proceeds with the 3-step process.

152.    As long as the Employer has the legal ability to do so, the Employer, pursuant to the employment contract, must proceed with the sponsorship.

153.    Ms. Hsiao is currently legally employed through her H1-B. She is not waiting for any visa afforded by the INA that allows her to work. She already has that visa and is currently legally able to work.

154.    AC21 confers her with the right to the extension of that H1-B ensuring continued employment and legal status as long as there is no final decision on the Labor Certificate, or the I-140 and while waiting for a visa to be available at the I-485 stage.

155.    "*the provisions contained in this rule reflect a clear congressional mandate with respect to H–1B beneficiaries who are pursuing LPR status, but face long waits due to backlogs resulting from the statutory limits on immigrant visas or certain other adjudication or processing delays.*" Retention of EB–1, EB–2, and EB–3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers (81 Fed. Reg. 82413)

156.    8 CFR 214.2(h)(13)(iii)(D)(3) that was promulgated based on AC21, states that as long as an appeal is pending or available, the decision to deny the Labor Certification is not considered final.

157.    Under the APA, this lawsuit *is* an appeal of an agency decision. 5 U.S.C. § 704

158.    Congress squarely had the interests of H1-B holders and their ability to continue working in passing AC21.

159.    The congressional report on AC21 cannot be any clearer: "*The bill addresses inordinate delays in labor certification and INS visa  processing by allowing an individual on an H-1B visa on whose  behalf an employer has taken steps to seek an immigrant visa to obtain an extension on that visa so the individual can stay in the United States until a decision is made on his or her case -- rather than forcing the person to leave the country*" US Senate Report, Committee on the Judiciary, AMERICAN COMPETITIVENESS IN THE TWENTY-FIRST CENTURY ACT, 106th Congress, Report Number 106-260, April 11, 2000, page 10.

160.    "The Court now holds that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." Williams v. Pennsylvania, 136 S. Ct. 1899, 1905 (2016)

161.    Harry Shienfeld was personally involved in the Plaintiff's case when he represented the Certifying Officer.

162.    The initial brief by the Employer to BALCA was addressed directly to him as the "Counsel for Litigation".

163.    It 'shocks the conscience' that the DOL personnel policies allows a lawyer directly involved in a case, advise judges who are presumed to be neutral.

164.     It 'shocks the conscience' that the Chief ALJ knows that Shienfeld represented the Certifying Officer for more than 30 years and offered to hire him. Exhibit 14 & 15

165.     "No attorney is more integral to the accusatory process than a prosecutor who participates in a major adversary decision." Williams v. Pennsylvania, 136 S. Ct. 1899, 1906 (2016)

166.     "A biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal." Clements v. Airport Authority of Washoe County, 69 F.3d 321, 333 (9th Cir. 1995)

167.     Sheinfeld's participation in adjudicating the Employer's application denied Ms. Hsiao's due process right to an impartial tribunal resulting in a denied application that directly affects her ability to continue her employment and legal ability to stay in the US, independent of her ability to pursue an adjustment of status to a lawful permanent resident.

168.     The BALCA allowing a conflicted attorney to participate in proceedings for two years wherein he was directly involved in and because he was a career lawyer in a prosecutorial capacity for decades shows a denial of adequate procedural protection.

169.     Sheinfeld never recused himself despite knowing of the conflict.

170.     "the Court holds that an unconstitutional failure to recuse constitutes structural error even if the judge in question did not cast a deciding vote." Williams v. Pennsylvania, 136 S. Ct. 1899, 1909 (2016)

171.     Actual bias is demonstrated when counsel for a presumably neutral court has public statements that are derogatory to H1-B holders. Exhibit 12 & 13

172.     Bias is demonstrated when BALCA engages in illegal behavior and encourages a career lawyer, who represented the "other side" in all immigration cases, to be put in the position of advising on immigration cases before a court who is expected to be impartial.  *See* Exhibit 14

173.     18 U.S.C. § 207(a)(1) mirrored at 25 C.F.R. § 700.563(a)(1) states that former employees are subject to a lifetime ban on communicating with or appearing before the Government on behalf of their new employer or anyone else regarding specific party matters in which they participated personally and substantially during their entire government service.

174.     Mr. Sheinfeld has gone from being a prosecutor in the instant case to becoming an adjudicator.

175.     18 U.S.C. § 207(a)(2) mirrored at 25 C.F.R. § 700.563(a)(2) states that for two years after leaving federal employment, former employees cannot make representational communications to or appearances before the Government regarding specific party matters that were pending under their official responsibility during their last year of government service. Exhibit 11

176.     18 U.S.C. § 207(c) mirrored at 25 C.F.R. § 700.563(b)(3) states that former employees cannot, for one year after completing service in a "senior" position, knowingly make, with the intent to influence, any communication to or appearance before any officer or employee of their former agency on behalf of anyone seeking official action. Exhibit 11

177.     18 U.S.C. § 208(a) mirrored at 5 U.S.C. § 2635.401 and 5 U.S.C. § 2635.402 prohibits an executive branch employee from participating personally and substantially in a particular Government matter that will affect his own financial interests. – Both BALCA and Mr. Sheinfeld discussing the terms of employment and asking for a dual compensation waiver while Mr. Sheinfeld is still under the umbrella of the DOL is highly inappropriate. *See* Exhibit 14 & 15

178.    5 U.S.C. § 2635.502 prohibits an executive branch employee from participating personally and substantially in a particular Government matter that will affect his own financial interests or if a reasonable person with knowledge of the relevant facts would question his/her impartiality in the matter. Exhibit 14 & 15

179.    The APA also forbids an employee or agent engaged in the prosecuting functions for an agency to participate or advise in agency reviews. 5 U.S.C. § 554 (d)(2). Exhibit 11

180.    DOL personnel policies that allow for the facilitation of breaking government employment laws and criminal statutes that resulted in unconstitutionally intolerable conflict of interest is not only shocking, but shows a lack of procedural protection. *See* Exhibit 14 & 15

181.    Harry Sheinfeld serving as senior counsel to the Board in cases wherein he was directly involved in has no rational purpose because the main mission of the Office of Administrative Law Judges is "to provide a neutral forum to resolve labor-related administrative disputes before the Department of Labor in a fair, transparent and accessible manner".

182.    Hiring an attorney that represented an opposing party in 100% of the PERM cases goes against the very purpose of a "neutral forum".

183.    Because a biased attorney was in a position of counsel for BALCA, the application was denied, foreclosing the ability of the Employer to continue employment for the Plaintiff.

184.    Because a biased and conflicted attorney was in a position of counsel for BALCA, the application was denied, completely foreclosing the ability of the Plaintiff to be able to pursue any chosen profession because she would not be able to renew her H1-B which allows her to work in the United States.

185.    She would also be forced to leave the country because without proper immigration status, she would accrue illegal presence, be deportable and forced to leave the country indefinitely due to the loss of her legal status.

186.    The denial of the currently denied Labor Certificate prevents her from moving on to the next step of the process towards permanent residence through the current sponsorship while being able to legally stay and work in a place she has called home for almost half her life.

187.    The 9th Circuit has noted, that the right to pursue any chosen profession all deal with a complete prohibition of the right to engage in a calling, and not a brief interruption. It also has recognized the liberty interest in pursuing an occupation of one's choice. The Court have held that a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis. Engquist v. Oregon Department of Agriculture, 478 F.3d 985, 997 (9th Cir. 2007)

188.    BALCA engaging Harry Shienfeld in violation of government employment laws and criminal laws are by definition arbitrary and lacks rational basis.

189.    Harry L. Sheinfeld is no longer with the OALJ; however, the people responsible for his hiring is still employed by the Defendant.

190.    "Notice that is reasonably calculated under the circumstances to notify interested parties of the pendency of an action and afford them the opportunity to present their objections is a fundamental requirement in any court proceeding that might result in the deprivation of life, liberty, or property. Peralta v. Heights Medical Center, Inc.,485 U.S. 80, 84, 108 S.Ct. 896, 899 (1988). Failure to give such notice violates the most rudimentary demands of due process. Id." *National Center for the Employment of Disabled v. Ross*, No. CV 05-2014-PHX-JAT, at *14 (D. Ariz. Mar. 24, 2006)

191.    When BALCA adopted the En Banc rules in 2015 without proper notice to Employer and the Plaintiff, they violated Plaintiff's due process rights under the Fifth Amendment because she is the direct and sole beneficiary of the Labor Certification Application that determines her ability to continue her employment with her employer and her ability to stay in the country independent of being able to adjust to permanent legal resident status.

192.    The failure to give notice to regulated and interested parties of changes to procedures shows a lack of procedural protection because the procedures was changed to disadvantage the Employer from being successful in having En Banc review granted.

193.    For example, in the most recent iteration of the En Banc Procedures by BALCA, the original panel adjudicating a denial by the Certifying Office is initially decided by 3 administrative law judges appointed to BALCA.

194.    Chief ALJ Henley in December of 2020 appointed only 5 ALJ's to hear PERM appeals.

195.    There were 20 judges appointed to hear PERM appeals in 2017.

196.    This means, if the Employer wanted to petition for En Banc review, the petition that is submitted by the employer would have to persuade 3 of the 5 total judges assigned to BALCA PERM review. Three of whom have already affirmed the denial of the Certifying Officer.

197.    It would be next to impossible that an En Banc review petition by the employer would be granted except for when BALCA judges themselves sua sponte rules for En Banc review.

198.    The Labor Certification statute vests authority to the Secretary to promulgate regulations that would govern the PERM process.

199.    BALCA does not have the statutory nor regulatory authority to issue programmatic rules and the Secretary never delegated authority to BALCA to engage in promulgating PERM rules.

200.    Therefore, not only was the en banc procedure itself adopted ultra vires, because it was adopted without notice, it is unconstitutional and violates the due process rights of the Plaintiff because BALCA En Banc proceedings could, and did, deprive her of her property interest in continued employment and ability to stay in the country and pursue any occupation independent of being able to apply for permanent residence.

201.    The fact that BALCA claims authority over implementing new regulations and changing the conditions of those rules arbitrarily without notice or explanation is shocking goes against the very notion of 'ordered liberty'.

202.    The failure of BALCA to give notice to the Employer and the Plaintiff, in fact, to any regulated party, prejudiced the application against the Plaintiff by "moving the goal posts" and goes against the very sense of 'fair play'.

203.    The purposeful failure to give notice of the procedures and adopt substantive rules without going through the required "notice and comment" serve no rational governmental purpose.

204.    The Secretary has issued rulemaking for the PERM regulations and the Rules of Practice before the OALJ as recent as February of 2020.

205.    However, the publications in the Federal Register are devoid of any reference nor procedural information about the "En Banc" procedures utilized by BALCA.

206.    The due process violations which caused the application to be denied forecloses the ability of the Employer to continue sponsorship of her Employment because an approved labor certificate is required for the USCIS to issue an I-140.

207.    The due process violations which caused the application to be denied forecloses the ability of her employer to extend her current H1-B visa to continue employment as the 3-step process proceeds. (see Section 106 of AC21 and 8 CFR 214.2(h)(13)(iii)(D))

208.    If the Employer is unable to renew her H1-B, she would be terminated from Employment because it would be illegal for her to work for the Employer without proper authorization.

209.    She would also be terminated because it would be illegal for the Employer to continue to employ her with the knowledge that she is not authorized to work.

210.    The Plaintiff's H1-B expiring would render her without proper documentation to remain in the country and she would be subject to deportation and a 3-year or 10-year ban from the United States from the day her status expires. 8 U.S.C. § 1182(8) and 8 U.S.C. § 1182(9)(B)

211.    This would force her to leave and not be able to work in the US indefinitely.

212.    The denial of due process by biased arbitrators and administrators led to the denial of the Labor Certification which caused and continues to cause injury to the Plaintiff by denying her constitutionally protected interests in continued employment and ability to stay in the place she has called home independent of her ability to adjust her status to a lawful permanent resident.

213.    As previously alleged in greater detail, Plaintiff has been injured by the unlawful acts of the DOL because she can no longer continue her employment with the Employer due to those acts, as previously alleged in greater detail.

214.    As alleged in further detail in Count 5, the unlawful denial by the DOL, and in particular the prolonged tragi-comedy of errors perpetuated by its employees (e.g., losing Plaintiff's files, arbitrarily and capriciously refusing to evaluate their prior decisions despite the fact that those decisions were obviously based on plain errors) has perpetuated untold amounts of

stress upon Plaintiff over these years, with attendant physical consequences to Plaintiff's well-being.

**COUNT 4** – The Chief Judge and chair of BALCA engaged in abusive behavior towards Plaintiff and Employer misrepresenting arguments made in the "Pro Se Motion for Relief from Order and Judgement". The order by the Chief Judge is arbitrary, capricious and an abuse of discretion which could have corrected the unlawful denial.

215.   Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

216.   Chief Judge Henley failed to acknowledge the substantive changes to the En Banc process.

217.   First, Chief ALJ stated that giving notice of the time requirement and stating the standard used for a case to be heard En Banc was enough notice to the employer.  But changes in substantive procedures are required to go through notice and comment, at the very least, notice must be provided to parties that rules and/or procedures are being changed.  The rules of practice and procedure states that notice must be given to parties in any rule change, not merely the "standard" used.

218.   The Chief ALJ opined that the change in procedure was not material to Employer's legal strategy.  Employer and Plaintiff, in good faith, relied on procedures that they assumed were in place from reading past En Banc panel decisions.  BALCA did not give notice of the changes and for more than two years, BALCA concealed this change from other employers who relied on this appellate process.  This "harmless error" analysis by the Chief ALJ is further evidence why procedural due process demands giving notice to all parties before changing substantive procedures.

219.    "Radically inconsistent interpretations of a statute by an agency, relied upon in good faith by the public, do not command the usual measure of deference to agency action." *Pfaff v. United States Dep't of Housing & Urban Dev.*, 88 F.3d 739, 748 (9th Cir. 1996).

220.    The amended En Banc procedure, *is* "material" when compared to past procedures. Chief ALJ, when describing the current procedures, did not contrast it to the past procedure that was used.  While it is accurate that the panel was expanded from 5 to 9 judges which is highly material of in itself, he failed to state that whereas the judges in past En Banc panels were required to record a "yes" or "no" vote, the new procedures allows the judges in the panel to be silent. Silence cannot be a vote, voting requires an affirmative action, which silence can never be.  Not only a party petitioning for an En Banc hearing bound to convince a majority of 9 as opposed to a majority of 5 to vote affirmatively, a party in a case would be required to convince the expanded panel of judges to actually "vote."  One does not need to be a statistician to know that the "standard" has changed. *See* Exhibit 6

221.    In fact, in the instant case, only two of the judges on the En Banc panel recorded a "No" vote.  One of those judges voted to deny in 20 minutes from the deputy secretary sending the request to vote.  While the rest including the Chief Judge remained silent. There were not even enough votes for a quorum based on the earlier procedures where five judges were serving on the panel. Thus, the changes adopted to the En Banc Procedures are plainly material. *See* Exhibit 11.

222.    In the December 12, 2018 memo, the issue of "quorum" was addressed in stating the En Banc Procedures.  It is important to note that this was explicitly mentioned by the plaintiff in her personal letter to the Chief Judge.

223.    The Chief ALJ misrepresents Employer's first argument by portraying an image that a "Motion for Reconsideration" is the same as an "En Banc petition."  It is difficult to believe

that the Chief ALJ does not know the difference between an En Banc Petition vs a Motion for Reconsideration.  His reasoning simply does not reflect the clear statement of Employer. Specifically, Employer would have requested a reconsideration first based on 29 C.F.R. § 18.93, rather than file the En Banc petition if it knew that the amended En Banc Procedures has dramatically changed.

224.    The Chief ALJ states that Employer claimed the ruling was a mistake was because the En Banc denial was on a "boiler plate" order.  This is a misrepresentation of the argument made.  Employer, on the motion addressed to Chief ALJ Henley stated that the mistake was the panel's failure to rule on the motion for equitable remedy that was articulated in the En Banc Petition.  When the panel on the order does not show any ruling on the requested motion, it is obviously a mistake.  BALCA has ruled on motions for equitable remedies in the past. *See Benish Corporation* 2011-PER-00510 (October 18, 2012)

225.    Had the panel properly and actually considered this motion for equitable remedy due to the alleged bias, the En Banc panel almost certainly would have reversed the CO's decision. The lack of ruling on this request demonstrates that the En Banc petition was not properly considered.

226.    Also, Employer pointed out that a case opinion issued after the initial denial was issued was analogous with Plaintiff's case.  Judge Henley incorrectly stated that the En Banc panel considered that argument.  Employer's motion to re-open the case based on FRCP 60(b)(5) citing *CB & I* 2015-PER-00005 (December 30, 2016) was addressed solely to Judge Henley and was dated July 14, 2017.  It is simply impossible the En Banc Panel considered this argument because the En Banc Denial was issued on March 29, 2017.

227.     The Chief Judge further misstates another inaccuracy. On the footnote on the final page of the "ORDER DENYING EMPLOYER'S PRO SE MOTION FOR RELIEF FROM JUDGMENT AND ORDER", it in part states: "The authority cited by the Employer is not relevant. The Federal Register entry at 80 Fed. Reg. 28767 is a request for information by the Internal Revenue Service regarding Form 5452, Corporate Report of Nondividend Distributions."

228.     "80 Fed Reg. 28767" is the first page of the "RULES OF PRACTICE AND PROCEDURE FOR ADMINISTRATIVE HEARINGS BEFORE THE OFFICE OF ADMINISTRATIVE LAW JUDGES". 80 Federal Register 28767 is not an IRS form as what the Chief Judge has stated.  It is not clear why this the Chief Judge would misrepresent this. The only assumption Plaintiff can make is that the Chief Judge engaged in such abusive and deceptive behavior is that this was an attempt to intimidate the Employer and Plaintiff.  Employer and Alien simply cited the regulation in 80 Federal Register 28767 to illustrate that the "Rules of Practice and Procedure" required the OALJ to give notice when changing procedures. This demonstrates a pattern of bad faith and abusive treatment towards the employer and immigrant.

229.     Chief Judge adjudicated the "PRO SE MOTION FOR RELIEF FROM JUDGMENT AND ORDER" without considering the complete Administrative File. Evidence received from FOIA request suggests that the OALJ lost the Administrative File for the instant case. *See* Exhibit 2

230.     Had the Chief Judge been honest and faithful to his duties, he would have either ordered a reversal of the denial by the CO or assigned the case to a different panel to ensure the integrity of BALCA as well as to address the due process violations that was pointed out.

231.    Chief Judge Henley still currently sits as the Chief ALJ for the Department of Labor, Office of Administrative Law Judges. He is also still currently the Chair for the Board of Alien Labor Certification Appeals (BALCA).

232.    As previously alleged in greater detail, Plaintiff has been injured by the unlawful acts of the DOL because she can no longer renew her employment with the Employer due to those acts, as previously alleged in greater detail.

233.    Plaintiff has been injured by the unlawful acts of the DOL because she cannot apply for any other job within the United States, let alone a job that would sponsor for an H1-B visa, due to those acts, as previously alleged in greater detail.  As previously alleged, Plaintiff is beyond the 6-year limit and is on an annual renewal with the USCIS, and therefore there is no conceivable way to move to another employer.

234.    Because of the unlawful denial by the DOL, the Plaintiff is in imminent danger of losing her legal status and start accruing illegal presence and being barred from being able to adjust her status to a lawful permanent resident.  As an illegal alien, Plaintiff would be forced to leave the United States and be separated from her husband and her child.

235.    As alleged in further detail in Count 5, the unlawful denial by the DOL, and in particular the prolonged tragi-comedy of errors perpetuated by its employees (e.g., losing Plaintiff's files, arbitrarily and capriciously refusing to evaluate their prior decisions despite the fact that those decisions were obviously based on plain errors) has perpetuated untold amounts of stress upon Plaintiff over these years, with attendant physical consequences to Plaintiff's well-being.

**COUNT 5** – The multiple injustices at the hands of the Department of Labor has caused irreparable harm to Plaintiff.

236.    Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

237.    The Plaintiff has had 5 miscarriages in the past.  Any carried pregnancy therefore is considered a high-risk pregnancy.

238.    Numerous medical studies and common knowledge show stress to be one of the main reasons for miscarriages and premature births.  The multiple injustices and the unlawful denial that Plaintiff has endured from the DOL has caused undue stress to her in addition to the already multiple hardships she is facing.  Such stress likely was a causal factor in at least some of Plaintiff's past miscarriages, and also the premature birth of her son (born 10 weeks early).

239.    Due to the abusive nature of the last order from Chief Judge Henley, the Employer immediately threatened to end the Plaintiff's employment two months after his order.  *See* Exhibit 17.  This act took place when she was caring for her prematurely-born baby, thereby causing even more stress upon her.  This added stress was a direct result of the unlawful denial and abusive nature of the order that Chief Judge issued to the Plaintiff.

240.    Employer was satisfied through seeking further legal advice, that her current visa allowed her to work and be employed until November of 2019.  The letter from the Employer then followed. *See* Exhibit 16.  The deprivation of a timely issued Labor Certification from the DOL has made Plaintiff unable to pursue several potential higher paying employment opportunities.

241.    Plaintiff's visa is renewed annually because her six-year limit has expired.  The beneficiary of a Labor Certification application is named and is non-transferable.  Therefore, she is not able to pursue other opportunities since 2011 because changing jobs would mean withdrawal of the Labor Certification Application.  Simply put, the current Employer cannot petition for her I-140 if she is not employed by them.

242.    If the labor certification had been justly and timely adjudicated at the processing time of a liberal time of 12 months, the I-140 would have been approved in January of 2012.  If the Labor Certification Application was adjudicated justly, she would be eligible and applying for US citizenship right now. That opportunity to apply for Citizenship has passed and continues to pass.

243.    Even if the Labor Certification Application is approved today. The five year wait to be eligible to apply for citizenship does not start until the I-485 is approved. This is a concrete, particularized and continuing irreparable injury that the stems directly from the unlawful conduct of the Defendant. The court may redress this injury by ordering the Defendant to approve the Labor Certification Application.

244.    The extended uncertainty arises from the fact that the DOL's demonstrated practices greatly deviates from the presumption of regularity and honesty from a government agency.

245.    The allegation against the Defendant is that the decision the Defendant made was an abuse of discretion and every appeal filed in good faith expecting a fair and just result resulted in the opposite.

246.    The presumed unbiased and appeals process would have corrected the mistake. The unlawfully adopted appeals process under the same biased adjudicators remain in effect.

247.    The issuance of the approved Labor Certification would allow the Plaintiff to continue working therefore providing healthcare for her family and her child.

248.    The issuance of the approved Labor Certification would give her the opportunity to pursue more economically advantageous employment opportunities.

249.    The issuance of the approved Labor Certification would remove the imminent threat of permanently losing the opportunity to apply for Lawful Permanent Resident Status and citizenship.

**COUNT 6** – The second reason for denial by the CO is not supported by the regulations as articulated by BALCA on numerous prior cases.

250.    In *Symantec Corp.*, 2011-PER-01856 (July 30, 2014) (*En Banc*) BALCA has stated that a CO may not deny an application based on a petitioning employer's failure to comply with an unwritten requirement that has no basis in the clear text of the regulations. The BALCA further held that 20 CFR § 656.17(f)(7), by its plain language, applies only to advertisements placed in newspapers of general circulation or in professional journals. *Also see DGN Technologies, Inc.,* 2012-PER-01991 (July 27, 2016)

## PRAYER

WHEREFORE, Plaintiff Ya-Wen Hsiao prays for the following relief.

1.    For review of the Department of Labor's denial of Employer's Application for Permanent Labor Certification by the University of Hawaii John A. Burns School of Medicine;

2.    For an order directing the Department of Labor to approve and certify Employer's Application for Permanent Labor Certification;

3.    A declaration that in changing substantive En Banc Procedures on January of 2015, BALCA violated the Administrative Procedure Act;

4.    A declaration that the En Banc Procedures used and is still used, by the Office of Administrative Law Judges of the Department of Labor are legislative rules that are required to go through notice and comment pursuant to the requirements of the APA.

5.      A declaration that BALCA has falsified facts of the case denying due process to the Plaintiff;

6.      A declaration that in adopting the En Banc Procedures without notice, the DOL has violated the Due Process Rights of the Plaintiff;

7.      A declaration that in employing Harry L. Sheinfeld to advice BALCA in immigration cases which was pending when he was the Counsel for Litigation for the ETLS and in which Sheinfeld participated substantially and personally in her case, the Plaintiff was prejudiced by BALCA in fact and appearance;

8.      For such other and further relief as the Court deems just and proper.

## <u>CERTIFICATION AND CLOSING</u>

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.  I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

<u>/s/ Ya-Wen Hsiao</u>

Ya-Wen Hsiao

Date: March 22, 2021 at Honolulu, HI

CIVIL NO. 1:18-cv-00502 JAO-KJM