IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| YA-WEN HSIAO,<br><br>       Plaintiff,<br><br>  vs.<br><br>AL STEWART, Acting Secretary of Labor,<br><br>       Defendant. | Civil No. 18-00502 JAO-KJM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This case concerns the Department of Labor's ("DOL") denial of an application for permanent employment certification, which pro se Plaintiff Ya-Wen Hsiao ("Plaintiff") challenges under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.  Plaintiff presently requests a preliminary injunction ordering Defendant Al Stewart ("Defendant") to administratively reopen her case and directing the Board of Alien Labor Certification Appeals ("BALCA") to immediately certify that *University of Hawaii on behalf of Ya-Wen Hsiao*, 2012-PER-02131, is open until this Court issues its final order.  For the following reasons, the Court GRANTS Plaintiff's Motion for Preliminary Injunction ("Motion").

<u>BACKGROUND</u>

I.  <u>Factual History</u>

Plaintiff is an "alien" who lives in Honolulu, Hawaiʻi.  ECF No. 35 at 6 & ¶ 1.  On January 13, 2011, her employer, the University of Hawaiʻi John A. Burns School of Medicine ("UH"), filed an Application for Permanent Employment Certification ("labor certification application") on her behalf with the Department of Labor ("DOL"), for an Educational Technology Specialist position.  *Id.* ¶ 2.

On March 23, 2012, the Certifying Officer ("CO") denied the application on the grounds that UH (1) provided inadequate proof that the job advertisement was posted on a website and (2) presented evidence showing the advertisement offered less favorable terms and conditions of employment to non-foreigners than to Plaintiff.  *Id.* ¶ 9.  UH requested reconsideration, which was denied on April 30, 2012.  *Id.* ¶¶ 10, 13.

The CO then forwarded the case and appeal file to BALCA.  *Id.* ¶ 16.  In its briefing to BALCA, UH argued that the second ground for denial undercut the first ground for denial and that the appeal file contained evidence to prove that it posted the job advertisement on a website.  *Id.* ¶ 20.  UH further argued that as a bona fide recruitment, the advertisement did not offer terms more favorable to Plaintiff.  *Id.* ¶ 21.

On November 16, 2016, a three-judge panel from BALCA affirmed the denial of the application based on the first ground and consequently declined to address the second ground. *Id.* ¶¶ 22–23. UH requested en banc review, which BALCA denied on March 29, 2017. *Id.* ¶¶ 24, 27.

Plaintiff filed a Freedom of Information Act ("FOIA") request on May 1, 2017, seeking information related to the en banc process. *Id.* ¶ 30. Administrative Law Judge ("ALJ") Paul Almanza responded, explaining that ALJs on the panel had previously used a vote sheet to record a "yes" or "no" vote; the order denying en banc review did not list the judges who reviewed the petition; and en banc voting procedures are not published. *Id.* ¶ 31.

The next month, UH filed a Pro Se Motion for Relief from Judgment and Order with the Chief ALJ and BALCA Chair, arguing that en banc procedures were not published and that it was not notified of changes to the en banc procedures. *Id.* ¶¶ 32–33. The Chief ALJ denied the Motion and barred UH from presenting further issues. *Id.* ¶¶ 44, 51.

On November 6, 2018, Plaintiff received notification from UH that her employment would terminate on November 1, 2019, the date her visa expired, because it could not renew her H1-B visa nor proceed with the labor certification. *Id.* ¶ 54.

3

II.    Procedural History

Plaintiff commenced this action on December 26, 2018.  On March 4, 2019, Defendant filed a Motion to Dismiss for Lack of Jurisdiction.  ECF No. 13.  On June 7, 2019, the same day as the hearing on the Motion to Dismiss, Plaintiff filed a Motion for Temporary Injunction.  ECF Nos. 28–29.  The Court deferred ruling on the Motion for Temporary Injunction until it ruled on the Motion to Dismiss. ECF No. 30.

On June 28, 2019, the Court granted the Motion to Dismiss, dismissing Plaintiff's claims with leave to amend.  ECF No. 31.

On July 19, 2019, Plaintiff filed another Motion for Temporary Injunction and a First Amended Complaint ("FAC").  ECF Nos. 34–35.  The FAC asserts the following claims:  Count 1 – the denial of the labor certification violated the APA and deprived Plaintiff of applying for permanent residence, which caused her to face the imminent threat of losing her employment and becoming out-of-status; Count 2 – the en banc denial was in bad faith because the procedures were arbitrary, capricious and failed to comply with applicable law; Count 3 – Plaintiff's Fifth Amendment due process rights were violated because notice of substantive changes to en banc procedures was not provided, the case was adjudicated by a

biased tribunal, and the facts were falsified;[1] Count 4 – the Chief ALJ and BALCA Chair engaged in abusive behavior toward Plaintiff and UH by misrepresenting arguments in the Pro Se Motion for Relief from Order and Judgment and the order denying the Motion was arbitrary, capricious and an abuse of discretion; Count 5 – the injustices caused by DOL irreparably harmed Plaintiff; and Count 6 – the CO's second basis for denial is not supported by the regulations articulated by BALCA in other cases.

Defendant filed a Motion to Dismiss Amended Complaint and Opposition to Plaintiff's Motion for Temporary Injunction on August 5, 2019.  ECF No. 41.

On September 23, 2019, the Court issued an Order Granting Defendant's Motion to Dismiss ("Dismissal Order"), concluding that Plaintiff lacked constitutional and prudential standing.  ECF No. 51.  Judgment entered the same day.  ECF No. 52.

Plaintiff appealed.  ECF No. 53.  During the pendency of the appeal, Plaintiff requested emergency injunctive relief from the Ninth Circuit.  The Ninth Circuit granted her request, ordering DOL to stay entry of its final judgment in BALCA case number 2012-PER-02131 so that the labor certification at issue remained pending until the issuance of the mandate for Plaintiff's appeal.  ECF No.

---

[1]  According to Plaintiff, BALCA misrepresented UH's response date to the audit requested by the CO.  ECF No. 35 ¶ 120.

60 at 1.  On July 13, 2020, the Ninth Circuit issued a memorandum vacating the Dismissal Order and remanding the case.  *See Hsiao v. Scalia*, 821 F. App'x 680, 683 (9th Cir. 2020); ECF No. 61 at 5.  It determined that Plaintiff has Article III and prudential standing.  *Id.*

Defendant filed a Partial Motion to Dismiss Amended Complaint on December 2, 2020.  ECF No. 73.  Shortly before the hearing on the Motion to Dismiss, Plaintiff filed the present Motion.  ECF No. 84.  The Court initially directed Defendant to file a memorandum addressing whether Plaintiff should receive the same injunctive relief granted by the Ninth Circuit and/or whether he would be agreeable to the same relief pending the resolution of this action.  ECF No. 86.  After reviewing Defendant's response, ECF No. 88, the Court scheduled a hearing.  ECF No. 89.  Plaintiff then filed a First Motion to Advance Motion for Preliminary Injunction Hearing, which the Court granted.  ECF Nos. 92, 93.

On March 3, 2021, the Court issued an Order Granting Defendant's Partial Motion to Dismiss Amended Complaint, dismissing Plaintiff's Fifth Amendment Claim with leave to amend.[2]  ECF No. 94.

Defendant filed his Opposition to the present Motion on March 3, 2021.  ECF No. 95.  Plaintiff filed her Reply on March 8, 2021.  ECF No. 97.  The Court

---

[2]  Notably, the APA claims at the core of this case remain regardless of whether Plaintiff successfully amends her due process claim.

held a hearing on March 19, 2021.  ECF No. 100.  On March 22, 2021, Plaintiff filed a Second Amended Complaint.  ECF No. 102.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 65(a) allows courts to issue preliminary injunctions.  "[The] purpose of a preliminary injunction . . . is to preserve the status quo and the rights of the parties until a final judgment issues in the cause."  *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (alterations in original) (internal quotation marks and citation omitted).

To obtain preliminary injunctive relief, a plaintiff must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  Where, as here, the government is a party, the last two factors merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this "serious questions" standard, the preliminary injunction factors

are weighed "on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Ramos*, 975 F.3d at 887–88 (some internal quotation marks and citation omitted).

Independently, the APA authorizes the reviewing court, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury . . . [to] issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705; *see also Bakersfield City Sch. Dist. v. Boyer*, 610 F.2d 621, 624 (9th Cir. 1979) ("The agency or the court may postpone or stay agency action pending such judicial review." (citing 5 U.S.C. § 705)).

## DISCUSSION

 Plaintiff asks the Court for a preliminary injunction ordering (1) Defendant to administratively reopen the labor certification application and (2) BALCA to immediately issue her and UH a certification that BALCA case 2012-PER-02131 is open until this Court issues its final order.[3]  ECF No. 84 at 9.

---

[3]  This is the same relief she previously requested from the Ninth Circuit pending her appeal.  Although the Ninth Circuit granted her relief, it came in the form of a

(continued . . .)

I.    Effect of Injunctive Relief on Jurisdiction

As a preliminary matter, the Court addresses Defendant's contention that should Plaintiff's requested relief be granted, jurisdiction would be lacking — and that it was likely lost when the Ninth Circuit granted such relief[4] — because BALCA's decision would lose its finality.  ECF No. 95 at 21–23.  "Under the APA, agency action is subject to judicial review only when it is either:  (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy in a court.'"  *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010) (quoting 5 U.S.C. § 704)).  To be final, an agency action must "(1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citation omitted); *see Cabaccang*, 627 F.3d at 1315 ("The imposition of an obligation or the fixing of a legal relationship is the

---

(. . . continued)
stay of the entry of final judgment so that her labor certification application remained pending until the issuance of the mandate for her appeal.  ECF No. 60 at 1.  For the purposes of this Order, the Court references the requested relief in the same terms granted by the Ninth Circuit, as a stay is in accord with 5 U.S.C. § 705.

[4]  Notably, Defendant did not raise this argument in opposing Plaintiff's request for emergency injunctive relief before the Ninth Circuit, nor at any time during the pendency of the appeal.

indicium of finality in the administrative process." (citation omitted)).  The primary "question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Or. Nat. Desert*, 465 F.3d at 982 (internal quotation marks and citation omitted).  Interpreting the finality element pragmatically and with flexibility, courts consider whether the action (1) "amounts to a definitive statement of the agency's position," (2) "has a direct and immediate effect on the day-to-day operations of the subject party," or (3) requires immediate compliance with its terms. *Id.* (internal quotation marks and citations omitted).

Here, the Court finds that ordering DOL to stay entry of its final judgment so that the labor certification at issue remains pending would not cause the DOL's decision to lose its finality.  The decision still consummates DOL's decisionmaking process, in which the parties' rights were determined and from which legal consequences flow.  And even if the entry of the final judgment is stayed, DOL already completed its decisionmaking process, the outcome of which directly affected the parties.  The DOL's denial is the "last word on the matter," *id.* at 984 (internal quotation marks and citation omitted), and an administrative stay would not change that.  At the hearing, defense counsel conceded that the stay would not change the parties' rights.

Defendant cites multiple cases for the proposition that district courts are deprived of jurisdiction when administrative proceedings are reopened because a final agency action no longer exists.  ECF No. 95 at 23.  These cases are non-binding and inapposite.  They all involved the *agency's* sua sponte reopening of H1-B visa applications to seek further information and conduct further review, which rendered the denials non-final.  *See Utah Life Real Est. Grp., LLC v. U.S. Citizenship & Immigr. Servs.*, 259 F. Supp. 3d 1294, 1296–97, 1300 (D. Utah 2017); *Net-Inspect, LLC v. U.S. Citizenship & Immigr. Servs.*, No. C14-1514JLR, 2015 WL 880956, at *1, 4–5 (W.D. Wash. Mar. 2, 2015); *True Cap. Mgmt., LLC v. U.S. Dep't of Homeland Sec.*, No. 13-261 JSC, 2013 WL 3157904, at *1, 3 (N.D. Cal. June 20, 2013).[5]  In turn, the lack of finality caused the courts to lose jurisdiction.  *See Utah Life*, 259 F. Supp. 3d at 1300; *Net-Inspect*, 2015 WL 880956, at *5; *True Cap. Mgmt*, 2013 WL 3157904, at *4.

The policy underlying the deprivation of jurisdiction is sound, as judicial economy is not served by simultaneous review of agency decisions by two

---

[5]  In a memorandum disposition, the Ninth Circuit similarly concluded that where the United States Citizenship and Immigration Services vacated the denial of an I-130 visa petition and reopened the proceedings, the denial was no longer a "final agency action" pursuant to 5 U.S.C. § 704.  *See Bhasin v. U.S. Dep't of Homeland Sec.*, 413 F. App'x 983, 985 (9th Cir. 2011).  But as with the other cases, the circumstances are distinguishable because the agency voluntarily vacated its decision and reopened the proceedings.

governmental bodies, especially when conflicting rulings may issue. *See Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408–09 (9th Cir. 1996). But no such concerns exist here. The entry of the final judgment would be stayed at the Court's direction, for the purpose of maintaining the status quo, and would not reopen the labor certification application for further consideration. As later discussed, the APA contemplates such circumstances and authorizes relief pending a court's review of agency action. *See* 5 U.S.C. § 705.

Given the Court's determination that the labor certification denial would retain its finality even if the entry of final judgment is stayed,[6] granting this Motion would not deprive the Court of jurisdiction.[7]

---

[6] Even if the stay extinguished the finality of BALCA's decision, it is not clear that the Court would lose jurisdiction. A conflict exists within the Ninth Circuit about whether a lack of finality is a jurisdictional defect. *Compare Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002) (holding that "the fact that an agency decision is not final under the APA is not a defect in subject matter jurisdiction" (footnote omitted)), *abrogated on other grounds by Winter*, 555 U.S. 7, *and Bhasin*, 413 F. App'x at 985 (holding that a non-final agency action failed to state a claim under the APA), *with Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) ("Because finality is a jurisdictional requirement to obtaining judicial review under the APA, the district court correctly dismissed Fairbanks' action." (citation omitted)).

[7] Defendant submits that were the Court to grant the Motion, the appropriate remedy would be to reopen the labor certification action and remand to ensure that proper recruitment is conducted. ECF No. 95 at 23. Not only would this suggested remedy effectively amount to a "redo" at the administrative level, this additional step would deprive the Court of jurisdiction. Because the Court retains jurisdiction even if it grants Plaintiff's requested relief, there is no basis to remand.

II.     Plaintiff Is Entitled to Injunctive Relief

Plaintiff argues that she is entitled to the requested injunctive relief pursuant to the law of the case doctrine because the Ninth Circuit already granted her such relief during the pendency of her appeal.  ECF No. 84 at 4–5.  In addition, Plaintiff contends that she satisfies the *Winter v. Natural Resources Defense Council, Inc.* factors.  *Id.* at 5–6.

Defendant counters that the Court need not award the same injunctive relief because the law of the case doctrine is inapplicable at the preliminary injunction phase, where, as here, the Ninth Circuit made no conclusions on pure issues of law and did not consider whether Plaintiff is entitled to preliminary injunctive relief while pursuing the case on its merits.  ECF No. 88 at 2–6.  Defendant also challenges the availability of the requested relief.  ECF No. 95 at 13–15, 19.

A.     Law of the Case Doctrine

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case,'" *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (some internal quotation marks omitted) (quoting *Musacchio v. United States*, __ U.S. __, 136 S. Ct. 709, 716 (2016), and "applies most clearly where an issue has been decided by a higher court; in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in

13

doing so except in [certain] limited circumstances." *Id.* (citations omitted). "The doctrine encourages the conservation of limited judicial resources and promotes consistency by allowing court decisions to govern the same issues in subsequent stages of the same case." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1261 (9th Cir. 2020) (citation omitted).

Defendant relies on *Center for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013), for the proposition that the law of the case doctrine is inapplicable at the preliminary injunction phase. ECF No. 88 at 3–4. However, *Center for Biological Diversity* discussed the applicability of the doctrine where a prior Ninth Circuit panel affirmed the district court's denial of a preliminary injunction motion. 706 F.3d at 1090; *see also E. Bay Sanctuary Covenant*, 950 F.3d at 1262 ("Our review of district court orders denying or granting preliminary-injunction requests . . . does not typically become law of the case; the record before a later panel may materially differ from the record before the first panel, such that the first panel's decision eventually provides 'little guidance as to the appropriate disposition on the merits.'" (citation omitted)). Here, the Court did not issue a preliminary injunction order that was reviewed on appeal.[8] Instead, on the same record currently before the Court, the Ninth Circuit granted emergency injunctive

---

[8] Were that the case, additional facts could change the outcome at a later stage in the litigation.

14

relief pending the disposition of the appeal.  Plaintiff requests identical relief for the same reasons presented to the Ninth Circuit and Defendant's Opposition contains the same legal counter arguments, save for his jurisdictional argument.

The Court recognizes that the appeal was limited to Plaintiff's standing, and not the underlying merits.  But the parties both addressed the underlying merits, not standing, in evaluating Plaintiff's entitlement to injunctive relief.  Thus, whether or not the law of the case doctrine mandates the same outcome, the Court cannot disregard the Ninth Circuit's award of relief.  *Cf. E. Bay Sanctuary Covenant*, 950 F.3d at 1262 ("A later merits panel should not 'lightly overturn a decision made by a motions panel,' but 'we do not apply the law of the case doctrine as strictly in that instance as we do when a second merits panel is asked to reconsider a decision reached by the first merits panel on an earlier appeal.'" (citation omitted)).  Because the Ninth Circuit's order contains no analysis, it is unclear if the ruling was limited to Plaintiff's likelihood of success on appeal.  As such, the Court independently assesses Plaintiff's entitlement to injunctive relief, mindful of the Ninth Circuit's ruling in the affirmative.

B.    Availability of Requested Remedy

Defendant disputes the Court's authority to grant the requested relief, arguing that the relief is unrelated to Plaintiff's claims and barred by the APA. ECF No. 95 at 13–15, 19.  Although Defendant's position is significantly

undermined by the fact that the Ninth Circuit granted Plaintiff the identical relief she seeks now, the Court nevertheless addresses each contention.

1.   Relationship between Injunctive Relief and Claims

Mischaracterizing the nature of the relief sought, Defendant proffers that an extension of Plaintiff's H1-B visa pursuant to the American Competitiveness in the 21st Century Act ("AC21") § 106[9] is unrelated to her claims.  ECF No. 95 at 13–14.  In particular, Defendant contends that this action merely concerns the DOL's denial of the labor certification application and BALCA's affirmance of the denial and does not implicate AC21 § 106.  *Id.* at 14.  This assertion of unrelatedness is disingenuous, as Plaintiff unequivocally alleges throughout her FAC that Defendant's actions preclude UH from extending her employment — which it did for 13 years prior to 2019 — and her employment will be terminated as a result.  ECF No. 35 ¶¶ 54, 73.  Moreover, Plaintiff claims that she is unable to change employers — one sponsoring an H1-B visa or otherwise — because she is beyond

---

[9]  "[T]he provisions contained in this rule reflect a clear congressional mandate with respect to H-1B beneficiaries who are pursuing LPR status, but face long waits due to backlogs resulting from the statutory limits on immigrant visas or certain other adjudication or processing delays."  *See* Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers, 81 Fed. Reg. 82398, 82413 (Nov. 18, 2016).  By enacting AC21, "Congress authorized these individuals to remain in the United States beyond their initial 6-year period of authorized admission."  *Id.* (citing AC21 104(c) and 106(a) and (b)).

16

the H1-B visa's six-year limit, and she must receive annual extensions of the visa to remain employed. *Id.* at 6, 8 & ¶¶ 75, 115, 162, 170. Without the injunctive relief, UH has no mechanism to seek an extension of Plaintiff's employment, thereby depriving her of legal status, and disrupting her path to citizenship. *Id.* at 6 & ¶¶ 171–72. Therefore, this action clearly implicates UH's ability to request an extension of Plaintiff's H1-B visa and the Court accordingly rejects Defendant's unrelatedness argument.

The Court is likewise unpersuaded that it lacks the authority to grant the requested relief due to AC21 § 106's inapplicability. Defendant places undue emphasis on AC21 § 106 because Plaintiff does not seek relief thereunder and her ability to avail herself of the provision is irrelevant. Although AC21 § 106 may ultimately bear on Plaintiff's ability to remain in the United States — independent of this action — it is not a barrier to relief here.

Plaintiff asks the Court to stay the entry of judgment in the administrative proceedings pending the disposition of this action so that UH is able to request an extension of her H1-B visa.[10] Critically, absent injunctive relief, UH *cannot* seek an extension.

---

[10] Plaintiff explains that UH used the process provided under AC21 to extend her visa even before the denial of her labor certification application due to delays in processing the application. ECF No. 97 at 4.

2.   <u>APA</u>

Defendant further argues that the APA does not authorize Plaintiff's requested relief because such relief effectively resolves this litigation through an injunction.  ECF No. 95 at 19.  This argument is unfounded.

Contrary to Defendant's assertion, the APA authorizes the precise relief sought by Plaintiff and previously awarded by the Ninth Circuit.  Under the APA, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.  Courts apply the same factors to evaluate stays under § 705 and preliminary injunctions.  *See Immigrant Legal Res. Ctr. v. Wolf*, __ F.3d __, 2020 WL 5798269, at *4 (N.D. Cal. Sept. 29, 2020) (citing *City & County of San Francisco v. U.S. Customs & Immigr. Servs.*, 408 F. Supp. 3d 1057, 1078 (N.D. Cal. 2019)); *Bauer v. DeVos*, 325 F. Supp. 3d 74, 104–05 (D.D.C. 2018).

Plaintiff is not using this Motion to obtain relief on the merits.  She merely asks that her rights be preserved pending resolution of this action.  The APA clearly authorizes this relief, and directing the entry of a stay for the purpose of maintaining the status quo does not amount to a mandatory injunction.  The only "affirmative action" required of Defendant would be administrative, *i.e.*, reopening

the labor certification application, and for the sole purpose of maintaining the status quo and preventing Plaintiff from losing her immigration status pending final adjudication on the merits.[11]  Defendant would not be required to revisit or alter the substance of the agency decision.  Notably, if awarded, a preliminary injunction would maintain the status quo, not resolve the merits of this case.  *See Ramos*, 975 F.3d at 887 ("'A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment.'" (alteration in original) (citation omitted)).  And it would prevent Plaintiff from losing her immigration status pending final adjudication on the merits.

C.     *Winter* Factors/"Serious Questions" Standard

The Court now turns to the *Winter* factors and the Ninth Circuit's "serious questions" standard, the satisfaction of which will entitle Plaintiff to injunctive relief.

1.     Likelihood of Success on the Merits/Serious Questions Going to the Merits

Plaintiff argues that she is likely to succeed on the merits because:  (1) Defendant's denial of the labor certification application was arbitrary and capricious; (2) Defendant engaged in malfeasance resulting in due process

---

[11]  Counsel conceded at the hearing that the requested relief would maintain the status quo with respect to Plaintiff's immigration status.

violations; and (3) Defendant did not provide notice of changes to the en banc procedures.[12]  ECF No. 84 at 5.  Defendant criticizes Plaintiff's arguments as conclusory and deficient.  ECF No. 95 at 16–17.  However, Defendant is well aware of Plaintiff's core arguments in this case, pending since December 2018.  And not only is Plaintiff proceeding pro se, the FAC amply sets forth her allegations regarding the APA claims and the errors made by Defendant.

Under this prong, the Court considers whether there is a likelihood of success on the merits or alternatively, serious questions going to the merits, as well as the APA's requirements for the review of agency actions.  *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010).  Under the APA, an agency action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Earth Island*, 626 F.2d at 468.  "This standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'"  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007)

---

[12]  The second argument is irrelevant, as the Court dismissed Plaintiff's due process claim, and at the time the Court heard this Motion, Plaintiff had yet to amend the claim.  Because Plaintiff's APA claims are the thrust of this litigation and are directly related to the relief sought, the Court focuses on them in evaluating this Motion.

(citation omitted).  A court may not substitute the agency's judgment with its own.

*See Earth Island*, 626 F.3d at 468.  Instead,

> a decision may only be reversed as arbitrary and capricious "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Id.* at 468–69 (citation omitted).  Applying these standards, the Court finds that, at a minimum, Plaintiff raises "serious questions" on the merits of her APA claims.

Plaintiff alleges that BALCA abused its discretion by affirming the CO's denial of the labor certification application and failing to consider the complete administrative file.  ECF No. 35 ¶¶ 58–66.  Following UH's submission of the labor certification application, DOL responded with an audit notification requesting additional information.  Administrative Record ("AR"), ECF No. 80 at 139–41.[13]  UH initially provided an audit response on February 16, 2011.[14]  After UH inquired about the status of the application in February 2012, *id.* at 239–40, DOL asked UH to resubmit the audit response.  *Id.* at 135–36.  Included in the resubmitted response were documents outlined in 20 C.F.R. § 656.17(e) — copies

---

[13]  The pincites refer to the pagination assigned to filed documents by the Federal Judiciary's electronic case management system (CM/ECF).

[14]  This response is not included in the AR.  ECF No. 80 at 138.

of Sunday print advertisements placed in the Honolulu Star-Advertiser and printouts of advertisements placed on UH's website, on Craigslist, and with UH's Center for Career Development and Student Employment.  *Id.* at 41, 76–95.

The CO offered two reasons for denying the labor certification application. First, UH failed to provide adequate documentation of the job advertisement on its website pursuant to 20 C.F.R. § 656.17(e)(1)(ii)(B) (allowing documentation of recruitment on an employer's website through dated copies of pages from the site advertising the job opportunity) because the document submitted, titled "Work at UH Advertisement," did not appear to be from a website nor was there proof that it was posted to the website.  *Id.* at 36.  Second, this proof of UH's website offered a salary less favorable than that offered to Plaintiff, in violation of 20 C.F.R. § 656.17(f)(7) (prohibiting advertisements in newspapers of general circulation or professional journals from containing "wages or terms and conditions of employment that are less favorable than those offered to the alien").  *Id.*

UH sought reconsideration of the denial and included supporting documentation with its request.  *Id.* at 6–8.  In response to the first denial reason, UH represented that it advertises every position on the Work at UH website, and attached a printout containing the URL and the August 3, 2010 print date as proof of the job posting during the relevant period.  *Id.* at 6.  UH explained that the John A. Burns School of Medicine had not previously provided a copy to the Office of

22

Faculty and Scholar Immigration Services, which handled the filing of the labor

certification application, so the document submitted in response to the audit did not

include the URL and print date.  *Id.*  With respect to the second denial reason, UH

argued in pertinent part that additional recruitment steps, including advertisements

on an employer's website, need not comply with § 656.17(f)(7)'s prohibition on

advertising wages less favorable than those offered to the alien because

§ 656.17(f)(7) only applies to advertisements in newspapers of general circulation

or professional journals.  *Id.* at 6–7.

The CO denied reconsideration, concluding that UH did not overcome the

deficiencies identified in the denial.  Specifically:  (1) because UH failed to submit

the printout with URL and date with its audit response, despite having the

opportunity to do so, he could not consider the printout; (2) because the printout

submitted with the audit response was inadequate, the denial was valid; (3) as

UH's website is part of the recruitment effort, the advertisement is subject to

§ 656.17(f)(7); and (4) the published wage on the website was less than that

offered to Plaintiff, so the denial was valid.  *Id.* at 4–5.  The CO forwarded the case

to BALCA.  *Id.* at 5.

On November 16, 2016, BALCA issued a Decision and Order Affirming

Denial of Certification.  *Id.* at 171–78.  BALCA affirmed the CO's denial of the

application on the following grounds:  (1) UH's audit response failed to include

acceptable proof of its website advertisement pursuant to § 656.17(e)(1)(ii)(B); and

(2) the CO properly refused to accept the printout of the website advertisement

containing the URL and date, offered for the first time with the request for

reconsideration, because UH had the opportunity and responsibility to submit this

evidence in response to the audit.  *Id.* at 176 (citing 20 C.F.R.

§ 656.24(g)(2)(i)-(ii)).  BALCA also rejected UH's contention that the CO

considered the printout of the website advertisement with URL and date, which

placed the advertisement before BALCA.  *Id.* at 178.  It concluded that the CO in

fact refused to consider this printout due to UH's failure to produce it with the

audit response.  *Id.*  Having determined that the CO did not err in denying

certification, BALCA found it unnecessary to address the CO's second denial

reason.  *Id.* & n.7.

BALCA's affirmance of the CO's denial was arguably arbitrary and

capricious.  In the audit request, the CO requested documentation outlined in

§ 656.17(e).  *Id.* at 140.  Documentation of UH's website as a recruitment medium

could be satisfied "by providing dated copies of pages from the site that advertise

the occupation involved in the application."  20 C.F.R. § 656.17(e)(1)(ii)(B).

BALCA interprets "the documentation requirement of Section 656.17(e)(1)(ii)(B)

flexibly to afford employers the opportunity to document their efforts through

'reasonably equivalent alternative methods.'"  *Software Analysts Corp.*, 2015-

PER-00043, 2019 WL 350787, at *4 (Bd. Alien Lab. Cert. App. Jan. 23, 2019) (citations omitted).  Due to a website's "ephemeral" nature, "retention of reliable contemporaneous documentation of the status of a web page on the dates attested to in the Form 9089 is essential for an employer to be able to meet the PERM documentation requirement of dated copies of company website postings." *Id.* (internal quotation marks and citation omitted).  Employers must therefore "provide direct evidence (beyond the Form 9089) of the *content* of the advertisements and the *dates they ran*, either through dated copies of web pages or another reasonably equivalent method of proof." *Id.* at *5 (internal quotation marks and citations omitted) (emphasis added); *see also Spring Branch Indep. Sch. Dist.*, 2012-PER-01160, 2016 WL 1069767, at *4 (Bd. Alien Lab. Cert. App. Mar. 10, 2016) ("[T]he actual content of the advertisements is still necessary for the CO to determine whether the advertisement is for the occupation listed on the ETA Form 9089 and whether the advertisement was placed in good faith and the job was clearly open to U.S. applicants." (citations omitted)).

Here, UH's audit response included a copy of the website pages[15] — the actual content of the advertisement — and while it lacks a date stamp, the first

---

[15]  The CO surmised that the printout was a word document, and BALCA agreed that it did not appear to be printed copy of an advertisement from a website.  ECF No. 80 at 173 & n.4.

25

page includes the job posting date of August 2, 2010 and a closing date of

September 4, 2010.  ECF No. 80 at 80–83.  BALCA acknowledged as much.  *Id.* at

173 n.4.  This date range corresponds with the dates provided in the labor

certification application.[16]  *Id.* at 147.  Thus, even conducting a highly deferential

review, the CO's explanation, relied upon by BALCA, runs counter to the evidence

before them.

Further compounding the questionable rulings is the internal inconsistency

between the bases for the CO's denials.  "[A]n internally inconsistent analysis is

arbitrary and capricious."  *Nat'l Parks Conservation Ass'n v. EPA*, 788 F.3d 1134,

1141 (9th Cir. 2015) (citation omitted).  The first denial reason rested on the lack

of adequate proof of UH's website posting.  Yet the very evidence deemed

insufficient in the first denial reason serves as the basis for the second denial

reason.  It is unclear how a printout that fails to constitute evidence of the content

of the website posting can then serve to reveal a violation of

§ 656.17(f) due to the listed salary amount.

Even ignoring the contradiction, the CO's conclusion that UH violated

---

[16]  Moreover, although neither the CO nor BALCA considered the website job advertisement submitted with the request for reconsideration, the content is identical to the copy provided with the audit response, save for the closing date, which changed to August 17, 2010.  *Compare* ECF No. 80 at 12–14, *with id.* at 80–83.

§ 656.17(f) by advertising a wage less than Plaintiff's offered wage is questionable at best.  ECF No. 80 at 4–5, 36.  In its request for reconsideration, UH argued that § 656.17(f) is inapplicable to advertisements on its website.  *Id.* at 6.  The CO rejected this contention, stating that "the employer's website is one part of the recruitment effort used by the employer to test the labor market and must therefore contain the same information required of advertisements set forth in  . . . § 656.17(f)."  *Id.* at 4.  But by its plain terms, § 656.17(f) applies to "[a]dvertisements placed in newspapers of general circulation or in professional journals," 20 C.F.R. § 656.17(f), and "does not govern the content of online advertisements."  *Ediwatch, Inc.*, 2014-PER-00467, 2018 WL 889751, at *2  (Bd. Alien Lab. Cert. App. Feb. 7, 2018).  "[A] CO may not deny an application based on a petitioning employer's failure to comply with an unwritten requirement that has no basis in the clear text of the regulations."  *Id.*; *see Symantec Corp.*, 2011-PER-01856, 2014 WL 4473262, at *8 (Bd. Alien Lab. Cert. App. July 30, 2014) (en banc) ("[N]either BALCA nor the CO may disregard the plain text of the regulations for policy or other considerations." (citations omitted)).  In denying certification based on an unwritten requirement that is contrary to the application regulations, the CO's determination arguably had no reasonable basis and is not in accordance with the law.

27

For these reasons, there are serious questions going to the merits of Plaintiff's APA claims.[17]

### 2.   Irreparable Harm

Plaintiff claims that she will accrue illegal status and be forced to leave the United States without the requested injunctive relief.  ECF No. 84 at 6.  "A plaintiff seeking preliminary relief must 'demonstrate that irreparable injury is likely in the absence of an injunction.'"  *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (citation omitted).  "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).  As a prerequisite to injunctive relief, "a plaintiff must *demonstrate* immediate threatened injury"; a speculative injury is not irreparable. *Id.* (citations omitted).  "Irreparable harm is . . . harm for which there is no adequate legal remedy, such as an award of damages."  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted).

Defendant misapprehends the irreparable harm standard, inexplicably arguing that Plaintiff cannot establish irreparable harm — though admitted at the hearing that she will suffer irreparable harm — absent a showing that she will

---

[17]  Given this determination, the Court finds it unnecessary to address the APA claim regarding failure to provide notice of the change to the en banc rules.

receive an H1-B extension if the labor certification application is reopened.  ECF No. 95 at 18–19.  As explained above, Plaintiff must demonstrate an immediate threatened injury.  Satisfaction of this standard does not require a showing that the issuance of the requested injunction would result in an extension of her H1-B visa.  The converse is required — a likelihood of irreparable harm *in the absence of* the injunction.

Plaintiff plainly articulates the immediate harm she faces if the labor certification application remains closed — UH is unable to renew her H1-B visa, which expires on May 1, 2021.  ECF No. 84 at 6; ECF No. 92 at 3.  Plaintiff cannot legally work past that date and will become an undocumented immigrant subject to deportation.  ECF No. 92 at 3.  She would also lose the immigration priority date she has retained for over ten years.  *Id.*; ECF No. 97 at 9 ("[T]he Plaintiff has been waiting in line for 10 years for her opportunity for a green card and now the Defendant is asking her to give up her place.").  Thus, whether or not Plaintiff will ultimately obtain an H1-B visa extension is irrelevant.  The critical fact — ignored by Defendant — is that Plaintiff's presently closed labor certification application *precludes* UH from seeking an H1-B visa extension on her behalf.  The resulting consequences unquestionably expose Plaintiff to irreparable harm.

3.     Balance of Equities/Public Interest

Plaintiff contends that Defendant's conduct tips the equities in her favor because his closure of the administrative proceedings without a court order evidences his gamesmanship.  ECF No. 84 at 6–8.  She also argues that her requested injunctive relief is narrowly tailored and has no impact on the public interest.  ECF No. 84 at 6.

According to Defendant, the requested relief is inconsistent with the public interest because (1) AC 21 § 106 was not intended to be employed in this manner — conferring an immigration benefit upon Plaintiff while otherwise qualified aliens await processing of labor certification applications and immigrant petitions due to visa quota backlogs; (2) it would force DOL to act contrary to 8 U.S.C. § 1182(a)(5)(A)(i), which ensures that foreign workers will not adversely affect the employment, wages, and working conditions of workers in the United States; and (3) the government will be irreparably harmed by the micromanagement of its vested control over a statutory program.  ECF No. 95 at 20.

In assessing whether Plaintiff establishes that the balance of equities tip in her favor, "the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (alteration in original) (citation omitted).  "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties,

the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" *Id.* at 1138–39 (alterations in original) (citation omitted).  When an injunction's impact "reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* at 1139 (citations omitted).  "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted).  It also requires the Court to "'consider whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Cottrell*, 632 F.3d at 1138 (citation omitted); *see Stormans*, 586 F.3d at 1139 ("'[C]ourts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" (alteration in original) (citation omitted)).

Here, the equities tip sharply in Plaintiff's favor, and defense counsel conceded so at the hearing.  Defendant would suffer no real harm if ordered to stay the entry of final judgment/reopen the labor certification application.  At the Ninth Circuit's direction, Defendant already did so from October 11, 2019 until the entry

31

of the mandate on October 21, 2020.[18]  ECF No. 60.  Defendant mischaracterizes the requested relief as micromanagement of DOL's vested control over a statutory program.  Compliance with an injunction or stay here would effectively be ministerial.  It would not require DOL to refrain from effectuating its duties or force it to take action that is contrary to the administration of the labor certification process.

In contrast, Plaintiff will suffer significant harm if her H1-B visa expires. As detailed above, she would become unemployed, accrue illegal status, lose her priority date, and be subject to deportation.  The Court disagrees with Plaintiff's argument that the equities tip in her favor due to Defendant's gamesmanship, however.  Plaintiff views Defendant's conduct as "an affirmative action to casually administratively close the case again on a whim rather than a regulation or order from a court."  ECF No. 84 at 6.  While it may feel like gamesmanship to Plaintiff, Defendant's closure of the final decision was not improper.  The Ninth Circuit only required the final decision to remain open until the entry of the mandate.  It was temporary injunctive relief pending the disposition of the appeal and no further order was required to return the final decision to its prior status.

---

[18]  Defendant may have even done so beyond the entry date of the mandate.  ECF No. 84-2 (informing Plaintiff in a letter dated January 4, 2021 that 2021-PER-02131 was returned to a closed final decision).

With respect to the public interest, there is virtually no impact to non-parties and no public interest would be injured by granting the Motion. The requested relief is extremely narrow and pertains exclusively to Plaintiff's BALCA case. Defendant insists that Plaintiff is asking the Court to employ AC21 § 106 so she can obtain an extension of her H1-B visa. However, the Court already determined that Plaintiff is not seeking relief pursuant to AC21 § 106. She merely asks for the temporary removal of the barrier preventing UH from taking further steps that could preserve her status pending the disposition of this action. Whether Plaintiff obtains further relief will be determined by the appropriate agency. But without the requested relief, Plaintiff has no recourse.

In sum, Plaintiff has demonstrated that there are serious questions going to the merits of her APA claims, she will suffer irreparable injury if relief is not granted, the balance of hardships tip sharply in her favor, and the public interest will not be harmed. Serving its intended purpose, a preliminary injunction will preserve the status quo and prevent "the irreparable loss of rights before judgment." *See Ramos*, 975 F.3d at 887 (internal quotation marks and citation omitted). Accordingly, pursuant to FRCP 65(a) and 5 U.S.C. § 705, the Court orders Defendant to: (1) immediately stay entry of its final judgment in BALCA case number 2012-PER-02131 so that the labor certification application at issue remains pending until the resolution of this action, and (2) provide Plaintiff and

UH with written certification of the same within seven (7) days of the entry of this Order.

CONCLUSION

For the reasons stated herein, the Court GRANTS Plaintiff's Motion for Preliminary Injunction.  ECF No. 84.  Defendant is ordered to:  (1) immediately stay entry of its final judgment in BALCA case number 2012-PER-02131 so that the labor certification application at issue remains pending until the resolution of this action, and (2) provide Plaintiff and UH with written certification of the same within seven (7) days of the entry of this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 23, 2021.



Jill A. Otake
United States District Judge

Civil No. 18-00502 JAO-KJM, *Hsiao v. Stewart*; ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION